UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

TZIVA RAPOPORT-HECHT, individually on
behalf of herself and all others similarly
situated,

                                 Plaintiff,

v.

SEVENTH GENERATION, INC.

                                Defendant.

-------------------------------------------------------------------x

14-CIV-9087 (KMK)

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SEVENTH GENERATION INC.'S MOTION TO STRIKE CLASS ALLEGATIONS (FED. R. CIV. PROC. 23(d)(1)(D))**

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................1

II.  STATEMENT OF FACTS ..................................................................................1

III.  ARGUMENT ......................................................................................................2

    A.  Defendant's Motion to Strike Class Allegations is Timely ....................................2

    B.  NY GBL Sections 349 and 350 Do Not Apply To Consumers Who
        Purchased Products Outside of New York................................................................4

        1.  GBL Sections 349 and 350 Do Not Apply to Class Members
            Injured Outside of New York ................................................................4

        2.  New York Choice of Law Rules Preclude Plaintiff from Bringing
            Claims Under New York Law on Behalf of Out-of-State Class
            Members ................................................................................................8

    C.  Material Variations Among the Applicable State Laws Preclude
        Certification of a Nationwide Class Because Predominance Cannot Be
        Shown ....................................................................................................12

    D.  Plaintiff's Claims for Injunctive Relief on Behalf of a Rule 23(b)(2) Class
        Must Fail as a Matter of Law ................................................................19

IV.  CONCLUSION..................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Allstate Ins. Co.*,
    81 N.Y.2d 219 (1993) ................................................................................................8

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................................................13

*In re Am. Med. Sys., Inc.*,
    75 F.3d 1069 (6th Cir. 1995) ................................................................................15

*AroChem Int'l, Inc. v. Buirkle*,
    968 F.2d 266 (2d Cir. 1992) ...................................................................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................7

*AXA Versicherung AG v. N.H. Ins. Co.*,
    708 F. Supp. 2d 423 (S.D.N.Y. 2010)....................................................................9

*Belsito Communs., Inc. v. Dell, Inc.*,
    No. 12-CV-6255 (CS), 2013 U.S. Dist. LEXIS 130598 (S.D.N.Y. Sept. 12,
    2013) .........................................................................................................................3

*Blagman v. Apple Inc.*,
    No. 12 Civ. 5453 (ALC) (JCF), 2013 U.S. Dist. LEXIS 71280 (S.D.N.Y. May
    20, 2013) ...............................................................................................................2, 3

*In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*,
    288 F.3d 1012 (7th Cir. 2002) ..............................................................................14

*Cameo Curtains, Inc. v. Philip Carey Corp.*,
    416 N.E.2d 995 (Mass. App. Ct. 1981) ................................................................18

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
    Care, LLC*,
    433 F.3d 181 (2d Cir. 2005)..................................................................................19

*Chen-Oster v. Goldman, Sachs & Co.*,
    877 F. Supp. 2d 113 (S.D.N.Y. 2012)................................................................2, 19

*Chin v. Chrysler Corp.*,
    182 F.R.D. 448 (D.N.J. 1997) ..............................................................................10

*Clay v. Am. Tobacco Co.*,
    188 F.R.D. 483 (S.D. Ill. 1999) ...........................................................................18

*Crab House of Douglaston Inc. v. Newsday, Inc.*,
    No. 04 CV 558 (DRH) (WDW), 2013 U.S. Dist. LEXIS 45499 (E.D.N.Y.
    Mar. 29, 2013)....................................................................................................16

*Curley v. AMR Corp.*,
    153 F.3d 5 (2d Cir. 1998)......................................................................................8

*DaVito v. AmTrust Bank*,
    743 F. Supp. 2d 114 (E.D.N.Y. 2010) ...................................................................3

*Dungan v. Acad. at Ivy Ridge*,
    249 F.R.D. 413 (N.D.N.Y. 2008) ........................................................................18

*Evancha v. Sanofi-Aventis U.S. Inc.*,
    No. 07-2266, 2007 U.S. Dist. LEXIS 93215 (D.N.J. Dec. 19, 2007)......................3

*In re Frito-Lay North America, Inc.*,
    No. 12-MC-2413 (RRM) (RLM), 2013 U.S. Dist. LEXIS 123824 (E.D.N.Y.
    Aug. 29, 2013) .....................................................................................................5

*In re Ford Motor Co. Ignition Switch Prods. Liability Litig.*,
    174 F.R.D. 332 (D.N.J. 1997)........................................................................10, 11

*Gaidon v. Guardian Life Ins. Co. of Am.*,
    94 N.Y.2d 330 (1999) ........................................................................................4, 5

*GlobalNet Financial. Com, Inc. v. Frank Crystal & Co.*,
    449 F.3d 377 (2d Cir. 2006)..................................................................................9

*Goshen v. Mut. Life Ins. Co.*,
    98 N.Y.2d 314 (2002) ................................................................................. *passim*

*In re General Motors Corp. Dex-Cool Prods. Liability Litig.*,
    241 F.R.D. 305 (S.D. Ill. 2007) .....................................................................10, 14

*In re Grand Theft Auto Video Game Consumer Litig.*,
    251 F.R.D. 139 (S.D.N.Y. 2008) ................................................................. *passim*

*Hamilton v. Accu-Tek*,
    47 F. Supp. 2d 330 (E.D.N.Y. 1999) .....................................................................9

*In re Initial Pub. Offering Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006)..................................................................................13

*Jaffe v. Capital One Bank Servs.*,
No. 09 Civ. 4106 (PGG), 2010 U.S. Dist. LEXIS 18117 (S.D.N.Y. Mar. 1,
2010) .............................................................................................................................3

*Kalb, Voorhis & Co. v. Am. Fin. Corp.*,
8 F.3d 130 (2d Cir. 1993)................................................................................................9

*Kassman v. KPMG LLP*,
925 F. Supp. 2d 453 (S.D.N.Y. 2013)........................................................................1, 3

*Kaufman v. Sirius XM Radio, Inc.*
474 Fed. Appx. 5 (2d Cir. 2012) ....................................................................................5

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487 (1941) ........................................................................................................8

*Krock v. Lipsay*,
97 F.3d 640 (2d Cir. 1996).........................................................................................8, 9

*Las Vegas Fetish & Fantasy Halloween Ball, Inc. v. Ahern Rentals, Inc.*,
182 P.3d 764 (Nev. 2008) .......................................................................................11, 18

*Lynas v. Williams*,
454 S.E.2d 570 (Pa. Super. 2004) ................................................................................16

*Mazza v. American Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ..................................................................................13, 14

*McLaughlin v. Am. Tobacco Co.*,
522 F.3d 215 (2d Cir. 2008).....................................................................2, 15, 16, 17

*Melius v. Breslin*,
846 N.Y.S.2d 645 (N.Y. App. Div. 2007) ...................................................................18

*Myers v. Hertz Corp.*,
624 F.3d 537 (2d Cir. 2010)...................................................................................16, 17

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ......................................................................................................19

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
85 N.Y.2d 20 (1990) ......................................................................................................5

*Padula v. Lilarn Props. Corp.*,
84 N.Y.2d 419 (1994) .....................................................................................................9

*Pelman ex rel. Pelman v. McDonald's Corp.*,
396 F.3d 508 (2d Cir. 2005)..........................................................................................11

*People v. H & R Block Tax Serv. Inc.*,
  870 N.Y.S.2d 315 (App. Div.) ...................................................................7, 8

*People v Nat'l Home Prot., Inc.*,
  2009 N.Y. Misc. LEXIS 3667 (N.Y. Sup. Ct. Dec. 8, 2009)................................7, 8

*People v. Telehublink Corp.*,
  301 A.D.2d 1006 (3d Dept. 2003) ................................................................7

*Pilgrim v. Universal Health Card, LLC*,
  660 F.3d 943 (6th Cir. 2011) ...................................................................14

*Rahman v. Smith & Wollensky Restaurant Group, Inc.*,
  No. 06 Civ. 6198 (LAK) (JCF), 2008 U.S. Dist. LEXIS 2931
  (S.D.N.Y. Jan. 16, 2008).........................................................................3

*In re Relafen Antitrust Litig.*,
  221 F.R.D. 260 (D. Mass 2004) ................................................................10

*Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc.*,
  2007 WL 3409293 (Ala. Nov. 16, 2007) ........................................................11

*Rodriquez v. It's Just Lunch, Int'l*,
  300 F.R.D. 125 (S.D.N.Y. 2014) ...............................................................11

*In re Rezulin Prods. Liability Litig.*,
  210 F.R.D. 61 (S.D.N.Y. 2002) ................................................................17

*Sack v. Low*,
  478 F.2d 360 (2d Cir. 1973)......................................................................9

*Sam v. Beaird*,
  685 So. 2d 742 (Ala. Civ. App. 1996) ........................................................17

*Schatz v. Republican State Leadership Committee*,
  669 F3d 50 (1st Cir. 2012).........................................................................7

*Schultz v. Boy Scouts of Am.*,
  65 N.Y.2d 189 (1985) ...............................................................................9

*Smith v. Bayer Corp.*,
  131 S. Ct. 2368 (2011).............................................................................14

*Somers v. Apple, Inc.*,
  729 F3d 953 (9th Cir. 2013) .....................................................................7

*Streich v. Hilton-Davis*,
  692 P.2d 440 (Mont. 1984).......................................................................18

*Szymczak v. Nissan North America, Inc.*,
   No. 10 CV 7493 (VB), 2011 U.S. Dist. LEXIS 153011 (S.D.N.Y. Dec. 16,
   2011) ...........................................................................................................................6

*Thomas v. JPMorgan Chase & Co.*,
   811 F. Supp. 2d 781 (S.D.N.Y. 2011).....................................................................5

*Thompson v. Jiffy Lube Int'l, Inc.*,
   250 F.R.D. 607 (D. Kan. 2008) ..............................................................................10

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ...........................................................................................11

*Virgilio v. Motorola, Inc.*,
   307 F.Supp.2d 504 (S.D.N.Y. 2004).......................................................................13

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001)....................................................................................13

*Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*,
   84 N.Y.2d 309 (1994) .............................................................................................9

**Statutes**

Ala. Code § 8-19-10(a) (2008).............................................................................................17

Cal. Bus. & Prof. Code §17200 ...........................................................................................11

Colo. Rev. Stat. Ann. § 6-1-105(1)(u) (West 2008) ............................................................17

Conn. Gen. Stat. Ann. § 42-110g(a) (West 2007) ...............................................................17

Idaho Code Ann. § 48-608(1) (2008) ...................................................................................17

Nev. Rev. Stat. Ann. § 598.0979(1) (West 2008)................................................................17

N.Y. Gen. Bus. Law § 349................................................................................................. *passim*

N.Y. Gen. Bus. Law § 350................................................................................................. *passim*

Tex. Bus. & Com. Code § 17.50(a)(1)(B) (Vernon 2005)...................................................16

Wyo. Stat. Ann. § 40-12-108(a) (2008)...............................................................................16

**Other Authorities**

Fed. R. Civ. Proc. 23........................................................................................................ *passim*

Moore's Federal Practice § 23.145 (3d ed. 2007)..................................................................3

## I.     INTRODUCTION

Plaintiff Rapoport-Hecht's nationwide class allegations fail as pled and cannot be saved after any amount of discovery.  Defendant Seventh Generation, therefore, respectfully moves this Court to strike the nationwide class allegations pursuant to Fed. R. Civ. Proc. 23(d)(1)(D), which allows courts to issue orders that require the amendment of pleadings to "eliminate allegations about representation of absent persons."  *See Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 462 (S.D.N.Y. 2013).  Plaintiff purports to bring claims on behalf of a nationwide class (the "Putative Class") consisting of "all consumers in the United States who purchased any of the [specified] Seventh Generation Products at any time during the period within the applicable statute of limitations."  Compl. ¶ 45.  These allegations, however, fail as a matter of law.

First, the New York Court of Appeals has held that Sections 349 and 350 of New York's General Business Law do not apply to purchases made outside New York, and conflicts of law rules further preclude Plaintiff from applying New York law to the claims of non-New York consumers.  Second, the nationwide class fails Rule 23(b)(3) predominance requirements as a matter of law.  Because the claims of non-New York class members must be resolved under the materially conflicting laws of other states, class treatment is unfeasible and inappropriate here even without class discovery.  Third, certification of a Rule 23(b)(2) class is improper here because the named Plaintiff herself cannot establish standing for injunctive relief.

No amount of class discovery can cure these defects in Plaintiff's nationwide class claims, no matter how the factual record develops.  Permitting Plaintiff to take discovery on the certification of this flawed nationwide class would only increase the costs of this litigation without altering the merits or ultimate fate of her position.  The nationwide class allegations in the Complaint must therefore be dismissed with prejudice.

## II.    STATEMENT OF FACTS

Plaintiff's Complaint challenges labeling and advertising for five different Seventh Generation products by alleging that the word "natural" is deceptive or misleading because the

products ostensibly contain synthetic ingredients.  Compl. at ¶¶ 1, 7.  Plaintiff brings claims under New York consumer protection statutes (GBL §§349, 350), common law unjust enrichment, and for breach of warranty (express, implied/merchantability, and implied/particular purpose) on behalf of purchasers nationwide.  Compl. at ¶¶ 57-108, 44-53.  Plaintiff seeks monetary and punitive damages, attorney's fees, and injunctive relief.  Compl. at ¶ 108.

Plaintiff Tziva Rapoport-Hecht is a citizen of Dutchess County, New York.  Compl. at ¶ 33.  She alleges that she purchased the "Products" throughout 2014 at the Stop and Shop in Dutchess County and at the Walmart in Kingston, New York.  *Id.*  She allegedly purchased the products because she saw the label and read the package, including the terms "natural," "hypoallergenic," and "non-toxic."  *Id.*, at ¶ 34.  Defendant Seventh Generation is a corporation organized and with its principle place of business in Burlington, Vermont.  *Id.*, at ¶ 37.

## III.   <u>ARGUMENT</u>

### A.   **Defendant's Motion to Strike Class Allegations is Timely**

Although requests to strike class allegations are generally disfavored before a class certification motion is filed, where a defendant argues that "[p]laintiffs' class allegations fail *as a matter of law*," courts are "*obligated* to address [the] issue because 'when a claim cannot succeed as a matter of law, the Court should not certify a class on the issue.'" *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (quoting *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 228 (2d Cir. 2008)) (emphasis added); *accord Blagman v. Apple Inc.*, No. 12 Civ. 5453 (ALC) (JCF), 2013 U.S. Dist. LEXIS 71280, at *14 (S.D.N.Y. May 20, 2013) ("Where, as here, Defendants seek a motion to strike class allegations but also contend that Plaintiffs' class allegations *fail as a matter of law*, the Court is *obligated* to address the issue" under the standard for motions to dismiss) (emphasis added).

"[A] motion to strike that addresses issues 'separate and apart from the issues that will be decided on a class certification motion' is not procedurally premature."  *Chen-Oster*, 877 F.

Supp. 2d at 117 (quoting *Rahman v. Smith & Wollensky Restaurant Group, Inc.*, No. 06 Civ. 6198 (LAK) (JCF), 2008 U.S. Dist. LEXIS 2931 (S.D.N.Y. Jan. 16, 2008)).  *See also Kassman*, 925 F. Supp. 2d at 462 ("Pursuant to Rule 23(d)(1)(D), a party may move to strike class claims even before discovery….").  Where the basis for a motion to strike is distinct from the class certification factors, "[a] court may order deletion of portions of a complaint's class claims once it becomes clear that *plaintiffs cannot possibly prove* the deleted portions of those claims." *Rahman*, 2008 U.S. Dist. LEXIS 2931, at *11-12 (quoting 5 Moore's Federal Practice § 23.145 (3d ed. 2007)) (emphasis added).

While Plaintiff may protest that courts in this circuit have previously denied motions to strike class allegations as "premature," these decisions all did so where further discovery was necessary and relevant to the defendant's arguments.  *See, e.g.*, *Blagman*, 2013 U.S. Dist. LEXIS 71280, at *19 ("[D]ismissing [the] class allegations on a motion to dismiss would preempt the opportunity for discovery which is better suited for development of Plaintiff's claims…."); *Belsito Communs., Inc. v. Dell, Inc.*, No. 12-CV-6255 (CS), 2013 U.S. Dist. LEXIS 130598, at *36 (S.D.N.Y. Sept. 12, 2013) (denying motion to strike class allegations as premature where class discovery was ongoing and relevant to the defendant's arguments).  But where, as here, a defendant demonstrates that a class claim cannot succeed *as a matter of law*, courts may and should strike class allegations even before the certification inquiry.  *See, e.g.*, *Chen-Oster*, 877 F. Supp. 2d at 120-22 (denying certification of Rule 23(b)(2) class at pleading stage where defendant had demonstrated certification was improper "as a matter of law"); *DaVito v. AmTrust Bank*, 743 F. Supp. 2d 114 (E.D.N.Y. 2010) (granting motion to strike class allegations because plaintiffs could not "possibly establish a class action" even with further discovery); *Jaffe v. Capital One Bank Servs.*, No. 09 Civ. 4106 (PGG), 2010 U.S. Dist. LEXIS 18117, at *28-31 (S.D.N.Y. Mar. 1, 2010) (granting motion to strike class allegations as a matter of law at pleading stage); *Rahman*, 2008 U.S. Dist. LEXIS 2932, at *12-17 (same); *see also Evancha v. Sanofi-Aventis U.S. Inc.*, No. 07-2266, 2007 U.S. Dist. LEXIS 93215, at *5 (D.N.J. Dec. 19, 2007) (granting motion to strike class allegations relating to untenable state law claims).

3

**B.      NY GBL Sections 349 and 350 Do Not Apply To Consumers Who Purchased Products Outside of New York**

The Complaint seeks to bring claims under Sections 349 and 350 of the New York General Business Law and common law on behalf of the entire nationwide class.[1]  *See* Compl. ¶¶ 57-77, 102-108 (First, Second, and Sixth Causes of Action).   New York law, however, unequivocally bars Plaintiff from maintaining these claims on behalf of consumers who purchased the Products outside New York.  Not only has the Court of Appeals held that Sections 349 and 350 do not apply to deceptive acts or transactions that occurred outside New York, but New York's choice of law rules require courts to apply the consumer-protection laws of the state in which each class member purchased the products—especially where, as here, the defendant itself is not domiciled or otherwise based in New York.[2]  To the extent the Complaint raises claims under New York law on behalf of non-New York consumers, therefore, these class allegations must fail as a matter of law.

**1.      GBL Sections 349 and 350 Do Not Apply to Class Members Injured Outside of New York**

Under well-settled New York law, a plaintiff may not maintain claims under GBL §§ 349 and 350 unless "the transaction in which the consumer [was] deceived … occur[red] in New York."  *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 324 (2002).  In *Goshen*, the New York Court of Appeals held that the language of § 349, which prohibits "deceptive practices in 'the conduct of any business, trade or commerce or in the furnishing of any service *in this state*[,]' unambiguously evinces a legislative intent to address commercial misconduct occurring within New York."  *Id.* at 324-25 (emphasis in original).  *See also id.* at 325 (defining the "deceptive practice" as "the actual representation or omission to a consumer") (citing *Gaidon v. Guardian*

---

[1] Although not specified, the Complaint presumably grounds its claims for breach of warranty and unjust enrichment in New York law as well.  *Id.* ¶¶ 78-108.

[2] Any claim that Seventh Generation is domiciled or otherwise based in New York has no basis in fact and no amount of discovery can change that.  It is telling that Plaintiff's only allegation in the Complaint as to Seventh Generation's residence is that "Seventh Generation is a corporation organized and existing under the law of the State of Vermont, with its principal place of business at 60 Lake Street in Burlington, Vermont, 5401."  Compl. ¶ 37.

*Life Ins. Co. of Am.*, 94 N.Y.2d 330 (1999)); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20 (1990).  "[T]o qualify as a prohibited act under the statute, the deception of a consumer *must* occur *in New York*."  98 N.Y.2d at 325 (emphasis added).  "To apply the statute to out-of-state transactions," by contrast, "would lead to an unwarranted expansive reading of the statute, contrary to legislative intent, and potentially leading to the nationwide, if not global application of [§ 349]."  *Goshen*, 98 N.Y.2d at 325.  Nor can Plaintiff claim that a mere invention of a scheme or marketing strategy in New York is sufficient to tie an out of state company to the New York law:

> To the extent that plaintiffs allege that they were injured [outside of New York] by allegedly deceptive practices devised or originating in New York, plaintiffs' claim under section 349 also fails. "The phrase 'deceptive acts or practices' under the statute is not the mere invention of a scheme or marketing strategy, but the actual misrepresentation or omission to a consumer."  The statute "was not intended to police the out-of-state transactions of New York companies."  Instead, the legislative history of the statute makes clear that it was intended to protect consumers in the state of New York. To expand this protection to consumers in other states would subject New York businesses to almost unlimited liability. Not only is this a burden on the courts, but would undermine other states' initiatives to protect their consumers in a way they think most appropriate.

*Thomas v. JPMorgan Chase & Co*., 811 F. Supp. 2d 781, 800 (S.D.N.Y. 2011).

Courts have invoked *Goshen* in dismissing nationwide class claims under GBL §§ 349 and 350 as a matter of law before the class certification stage.  In *In re Frito-Lay North America, Inc.*, for example, the Eastern District of New York dismissed the plaintiffs' class claims under §§ 349 and 350 "to the extent … brought by and on behalf of non-New York plaintiffs and putative class members."  No. 12-MD-2413 (RRM) (RLM), 2013 U.S. Dist. LEXIS 123824, at *59 (E.D.N.Y. Aug. 29, 2013).  In so ruling, the court found the issue to be a pure question of law appropriate for a motion to dismiss, and rejected plaintiffs' argument that "whether they can maintain claims under the GBL is a question for class certification."  *Id.* at *58.  The Second Circuit reached a similar result in *Kaufman v. Sirius XM Radio, Inc.*, citing *Goshen* in affirming the district court's conclusion that the non-New York plaintiffs had failed to state a claim under GBL § 349.  474 Fed. Appx. 5, 7 (2d Cir. 2012).  This District has also relied on *Goshen* in striking plaintiffs' nationwide class claims under §§ 349 and 350.  *Szymczak v. Nissan North*

*America, Inc.*, No. 10 CV 7493 (VB), 2011 U.S. Dist. LEXIS 153011, at *36-37 (S.D.N.Y. Dec. 16, 2011).

Here, Plaintiff seeks exactly the result forbidden by the New York Court of Appeals and rejected by later decisions: the unwarranted "nationwide application" of GBL §§ 349 and 350 despite their expressly limited scope. *See Goshen*, 98 N.Y.2d at 325. The actionable transactions alleged in the Complaint are purchases by consumers who were "induced" by Defendant's allegedly misleading labeling and advertisements. *See* Compl. ¶¶ 57-77. To the extent that class members made these purchases *outside* the state, they may not, as a matter of law, raise their claims under §§ 349 and 350. Plaintiff's nationwide class claims must therefore be dismissed as to non-New York class members.

In her March 4, 2015 letter responding to Defendant's Pre-Motion Conference Request, Plaintiff attempts to rely on *Goshen* to support the proposition that "[c]onsumers who purchased the products outside of New York are covered by GBL §§ 349 and 350 if there are adequate contacts." (ECF No. 15, p. 2.) But Plaintiff uses language from *Goshen* out of context and ignores the underlying holding of that case. Plaintiff relies upon statements in *Goshen* that the analysis "does not turn on the *residency* of the parties," and that neither GBL 349 nor GBL 350 are "intended to function as a per se bar to out-of-state plaintiffs' claims of deceptive acts leading to *transactions within the state*." *Goshen*, 98 N.Y.2d 314, 325 (emphasis added). These findings were tangential to the court's main conclusions that "'hatching a scheme' or originating a marketing campaign in New York [does not] in and of itself constitute an actionable deceptive act," and that GBL §§ 349 and 350 "require that the consumer be deceived in New York." *Id.* at 324.

Put simply: under *Goshen*, the "transaction in which the consumer is deceived must occur in New York" in order for the New York statutes to apply. *Id.* Ultimately, the *Goshen* court found the deception at issue took place in Florida and resulted in a transaction in Florida, so the out-of-state Florida plaintiff could not state a cognizable claim under the New York statute. *Id.*

at 325-26.  Here, where Plaintiff brings claims not only on behalf of *residents* of other states, but of consumers who purchased Defendant's Products in those states, *Goshen* is directly applicable.

Nor can Plaintiff postpone the dismissal of its faulty nationwide class allegation simply by asserting a need for discovery of facts needed to sufficiently plead the class.  Based on *Twombly/Iqbal,* the opposite is true:  If Plaintiff's complaint is deficient, she is not entitled to discovery.  *See Ashcroft v. Iqbal,* 556 U.S. 662, 686 (2009); *Schatz v. Repub. State Leadership Committee,* 669 F3d 50, 56 (1st Cir. 2012) ("[T]o access discovery mechanisms, a plaintiff must *first* produce a complaint that passes the plausibility test….") (emphasis in original); *see Somers v. Apple, Inc.*, 729 F3d 953, 960 (9th Cir. 2013) (plaintiff's claim she "might later establish some set of undisclosed facts" establishing injury not enough to survive Rule 12(b)(6) motion).

Plaintiff cites several cases to support the proposition that courts interpreting *Goshen* have allowed recovery on behalf of out-of-state consumers, but each is distinguishable and inapplicable here.  In each of these cases, the named plaintiff was the New York Attorney General, which has the right "to recover on behalf of all aggrieved customers, including non-residents," in order to further the State of New York's "interest in securing an honest marketplace in which to transact business."  *People v Nat'l Home Prot., Inc.,* 2009 N.Y. Misc. LEXIS 3667, at *9 (N.Y. Sup. Ct. Dec. 8, 2009) (citing *People v. H & R Block Tax Serv., Inc.,* 870 N.Y.S.2d 315, 316 (App. Div.)); *People v. Telehublink Corp.*, 301 A.D.2d 1006, 1009 (3d Dept. 2003)).  Not one of these cases involved a *private* plaintiff seeking to bring a nationwide class action on behalf of consumers who not only *resided* outside New York, but who purchased goods and were *injured* outside the state, as well.

Further, each of these cases involved actual business conducted *in New York* that was far more direct and substantial than anything alleged in the Complaint.  For example, in *People v. Telehublink Corp.*, the defendant used a New York address to send and receive correspondence related to the allegedly deceptive marketing scheme.  301 A.D.2d at 1009.  Similarly, in *People v. H & R Block Inc.*, the defendant used a New York business to complete the deceptive transactions by administering their money market fund and advised customers that the New York

business would be their "authorized agent."  870 N.Y.S.2d at 316.  And in *People v Nat'l Home Prot., Inc.*, the defendant was a New York corporation, operated an office in New York, solicited business and serviced customers using telephones in New York, and directed rebate forms to its New York office.  2009 N.Y. Misc. LEXIS 3667, at *7.  Here, by contrast, Plaintiff has not pled that Seventh Generation engaged in any activity in New York to the *Twombly-Iqbal* standard, nor can she.  Neither has she presented one case where an out-of-state defendant is held liable under GBL for out-of-state transactions with out-of-state plaintiffs with zero connection to New York.  Her attempt to rely on *Goshen* and certain of its progeny is thus unavailing.

### 2. New York Choice of Law Rules Preclude Plaintiff from Bringing Claims Under New York Law on Behalf of Out-of-State Class Members

Plaintiff's nationwide class claims must also fail because—contrary to what the Complaint asserts—New York law does not and cannot govern most of these claims.  New York's conflicts law instead dictates that each class member's claims be resolved under the specific law of the state in which she purchased the Product.  Because the Complaint purports to raise claims under New York law on behalf of class members outside New York, these claims fail as a matter of law.

"It is well-settled that, in diversity cases, federal courts must look to the laws of the forum state to resolve issues regarding conflicts of law."  *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  Under New York's conflicts analysis, "the first step … is to determine whether there is an actual conflict between the laws of the jurisdictions involved."  *In re Allstate Ins. Co.*, 81 N.Y.2d 219 (1993); *see also Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998) (defining "actual conflict" as "[w]here the applicable law from each jurisdiction provides different substantive rules"). As further discussed below, there are many relevant differences in the states' consumer-fraud and warranty laws.  As these differences are relevant—and some outcome-determinative—an actual conflict in laws exists.

The next step of the New York conflicts analysis is based on the cause of action. Plaintiff's consumer fraud and unjust enrichment claims sound in tort under New York law. *See AXA Versicherung AG v. N.H. Ins. Co.*, 708 F. Supp. 2d 423, 429 (S.D.N.Y. 2010*); In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 148 n.11 (S.D.N.Y. 2008). New York has adopted an "interest analysis," which requires "the law of the jurisdiction having the greatest interest in the litigation … be applied.'" *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) (internal quotations omitted). This is determined by looking at (1) significant contacts and in which jurisdiction are they located; and (2) whether the purpose of the law is to regulate conduct or allocate loss." *Padula v. Lilarn Props. Corp.,* 84 N.Y.2d 419 (1994). "In all interest analyses, 'the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort.'" *Krock*, 97 F.3d at 646 (*quoting AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992)). In tort cases where "conduct-regulating standards are at issue," *In re Grand Theft Auto*, 251 F.R.D. at 149, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *GlobalNet Financial. Com, Inc. v. Frank Crystal & Co*., 449 F.3d 377, 384 (2d Cir. 2006). Thus, "[w]here the parties are domiciled in different states, *the locus of the tort will almost always be determinative* in cases involving conduct-regulating laws…." *Krock*, 97 F.3d at 646 (emphasis added).

With claims for breach of warranty, courts focus primarily on the law of the jurisdiction with the most significant contacts to the dispute, *i.e.,* the place or places where the parties negotiated, contracted, and performed their transaction, in addition to their domiciles or places of business. *See Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309 (1994). Both principles are consistent with the general rule that, "where the defendant's [wrongful] conduct and the plaintiff's injury occur in different states, 'the place of the wrong is considered to be the place where the last event necessary to make the actor liable occurred.'" *Hamilton v. Accu-Tek*, 47 F. Supp. 2d 330, 337 (E.D.N.Y. 1999) (quoting *Schultz v. Boy Scouts of Am.*, 65 N.Y.2d 189, 195 (1985)). *Accord Sack v. Low*, 478 F.2d 360, 365-66 (2d Cir. 1973).

9

"In analyzing putative, nationwide, consumer-protection class actions," "several courts have determined that the law of the state where each plaintiff resides and purchased the relevant product should apply." *In re Grand Theft Auto,* 251 F.R.D. at 146 (citing *In re Gen. Motors Corp. Dex-Cool Prods. Liability Litig.*, 241 F.R.D. 305, 316-19 (S.D. Ill. 2007); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 457 (D.N.J. 1997)). In *In re Grand Theft Auto*, the Southern District held that "New York's conflicts jurisprudence demand that the Court apply the law of the state wherein each [class] member purchased" the defendant's product, rather than New York. *Id.* at 149. Like the Plaintiff here, the *Grand Theft Auto* plaintiffs brought claims on behalf of a nationwide class under GBL § 349, UCC warranty provisions, and New York's unjust enrichment common law. *See id.* at 146. The court found "relevant conflicts" between New York law and the remaining states' consumer-fraud, warranty, and unjust enrichment laws, requiring the application of the interest analysis and significant contacts tests. *Id.* at 148. Applying the principles discussed above, the court determined that each "state of purchase" had the most significant contacts with the plaintiffs' consumer-protection claims—and thus the "greater interest" in applying its law to the dispute. *See id.* at 148-49. As the court explained,

> the actual deception occurred at the time that each plaintiff purchased [defendant's product]. Because the fraud at issue … occurred in the state of purchase, and as '[s]tates have a strong interest in protecting consumers with respect to sales within their borders, but they have a relatively weak interest, if any, in applying their policies to consumers or sales in neighboring states', the interest analysis favors the application of the consumer-fraud law of the state wherein each [class] member purchased [the defendant's product].

*Id.* at 149 (quoting *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 278 (D. Mass. 2004)).

Here, as in *Grand Theft Auto*, New York's conflicts rules require that the claims of non-New York class members be resolved under the laws of the states in which they purchased the Products. Just as the *Grand Theft Auto* court observed, "[m]ost of the courts that have addressed the issue have determined that the consumer-fraud and breach-of-warranty laws in the fifty states differ in relevant respects." *Id.* at 147 (citing *Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607 (D. Kan. 2008); *Dex-Cool*, 241 F.R.D. at 319-21; *Chin*, 182 F.R.D. at 457-61; *In re Ford Motor*

*Co. Ignition Switch Prods. Liability Litig.*, 174 F.R.D. 332, 347-48 (D.N.J. 1997)). This is distinguishable from a court applying the laws of various states to a single variant in states' laws. *See Rodriquez v. It's Just Lunch, Int'l*, 300 F.R.D. 125 (S.D.N.Y. 2014) (nationwide class applying different states' variant laws as to the *scienter* element of state law fraud claims allowed). Here, there is a plethora of differences in the various elements of the consumer protection laws and unjust enrichment claims. The attached Appendix summarizes some of these differences across jurisdictions.[3]  *See* Declaration of Michelle Gillette  in Support of Defendant Seventh Generation's Motion to Strike Class Allegations ("Gillette Decl."), Exh. B.

For example, while GBL §§ 349 and 350 do not require plaintiffs to prove reliance on the defendant's representations, many other states do. *Compare In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009) (holding that plaintiffs with Cal. Bus. & Prof. Code §17200 claims must demonstrate "actual reliance ... in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions"), *with Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) (reliance is not an element of GBL §§ 349 and 350); *see also In re Grand Theft Auto*, 251 F.R.D. at 156 ("[I]t appears that *many* states' consumer-fraud statutes require proof of reliance or proof of reliance-mimicking causation elements.") (emphasis in original). Similarly, "the states' formulations of the doctrine of unclean hands, which may be a defense to unjust enrichment, differ significantly." *See id.* at 148; *compare Las Vegas Fetish & Fantasy Halloween Ball, Inc. v. Ahern Rentals, Inc.*, 182 P.3d 764, 767 (Nev. 2008) (finding that unclean hands doctrine requires two-part inquiry into egregiousness of misconduct and seriousness of harm caused), *with Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc.*, 2007 WL 3409293, at *6 (Ala. Nov. 16, 2007) (finding that only "morally reprehensible, willful misconduct" gives rise to unclean hands defense). Eighteen states, including New York, require proof of privity for breach-of-warranty claims, but the other thirty-two do not. *See In re Grand Theft Auto*, 251 F.R.D. at 169. In short, the relevant New York

---

[3] The conflicts among the relevant state laws are discussed in further detail in Part II.B, *infra*.

laws conflict substantively and materially with the laws of other states, requiring an analysis of which state has the greater interest in the claim.

For class members who purchased the Products outside New York, the jurisdiction with the greater interest is indisputably the state of purchase.  *See id.* at 149 (finding "states have a strong interest in protecting consumers with respect to sales within their borders, but they have a relatively weak interest, if any, in applying their policies to consumers or sales in neighboring states") (internal citations omitted).  Each of the non-New York class members is domiciled outside of New York and the transactions at issue took place outside of New York.  These factors strongly tilt the analysis against New York—especially given that Seventh Generation has its domicile and principal place of business in Vermont, not New York.  *See* Compl. ¶ 30.   "New York's conflicts jurisprudence [therefore] demands that the Court apply the law of the state wherein each [class] member purchased" the Product. [4]  *In re Grand Theft Auto*, 251 F.R.D. at 149.  Accordingly, Plaintiff's class claims must fail to the extent they are brought under New York law but based on purchases outside the state.

### C.    Material Variations Among the Applicable State Laws Preclude Certification of a Nationwide Class Because Predominance Cannot Be Shown

The Complaint's failure to invoke any authority other than New York law[5] for its nationwide class claims should end the inquiry; Plaintiff is the master of her Complaint, and this

---

[4] Thus, even if Plaintiff contends that she is entitled to discovery as to Seventh Generation's conduct within New York, the point is mooted by New York's conflicts jurisprudence, which demands that the Court apply the laws of the state of purchase.  Even if Seventh Generation's allegedly deceptive marketing were conceived in New York—which, as asserted, it was not— "the actual deception occurred at the time that each plaintiff purchased [the product]." *Grand Theft Auto*, 251 F.R.D. at 149.  And because the state where the deception occurred has the "greatest interest at stake in the litigation," "the interest analysis favors the application of the consumer-fraud law of the state wherein each [class] member purchased [the product." *Id.* Finally, because Plaintiff purports to raise claims under New York law on behalf of non-New York consumers who purchased the products out of state, these claims fail as a matter of law— with or without discovery.

[5] The Complaint's solitary mention of "consumer protection statutes nationwide" (*see* Compl. ¶ 6) is insufficient to establish reliance on other states' consumer protection laws.  Nowhere else does the Complaint cite to other states' laws—consumer-protection or otherwise. *Id.*

Court has no duty to rescue her from her pleading errors. *See Virgilio v. Motorola, Inc.*, 307 F.Supp.2d 504, 513 (S.D.N.Y. 2004) (finding the well-pleaded complaint rule "creates a presumption that plaintiffs, as masters of their complaints, have chosen to characterize their claims as they have for reasons that they alone have the initial authority to weigh" and that "a court may not add or subtract from a complaint presented to it"). Even assuming, though, that Plaintiff *had* sought relief under the applicable law of each state, she may not, as a matter of law, certify a nationwide class based on these state laws because Plaintiff cannot satisfy Fed. R. Civ. Proc. 23(b)(3).[6]  The differences among the applicable state laws are so extensive and substantial as to make class treatment unfeasible and improper as a matter of law.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  In order to ultimately certify a class seeking monetary damages under Rule 23(b)(3), Plaintiff must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks and citations omitted), *abrogated in part on other grounds*, *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006).

Where, as here, choice of law rules require the application of materially different laws from each of the states in which prospective class members reside, courts have denied certification of nationwide classes under Rule 23(b)(3).  In *Mazza v. American Honda Motor Co.*, the Ninth Circuit reversed an order certifying a nationwide class under California's consumer protection and unjust enrichment laws after finding that the class contained members

---

[6] Fed. R. Civ. Proc. 23 requires a plaintiff to meet all requirements of 23(a) (numerosity, commonality, typicality, and adequacy of representation), as well as one of the three options under 23(b).  In her Complaint, Plaintiff chose to move under Fed. R. Civ. Proc. 23(b)(3), which requires, in part, that a plaintiff seeking class certification establish that the questions of law or fact common to class members predominate over any questions affecting only individual members.  *See* Compl. ¶ 51.

who purchased the defendant's product in different jurisdictions with materially different consumer protection laws.  *See* 666 F.3d 581, 589-90 (9th Cir. 2012).  Similarly, in *In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*, the Seventh Circuit decertified a nationwide class where choice of law rules dictated that the class claims be adjudicated under the laws of the 50 states, noting that "such differences [in state law] have led us to hold that other warranty, fraud or products-liability suits may not proceed as nationwide classes."  288 F.3d 1012, 1015 (7th Cir. 2002), *abrogated in part on other grounds*, *Smith v. Bayer Corp.*, 131 S. Ct. 2368 (2011); *accord In re GMC Dex-Cool Prods. Liability Litig.*, 241 F.R.D. 305, 324 (S.D. Ill. 2007) ("In view of the significant variations with respect to the law of warranty among the states in the proposed class, the Court's path is clear. … The variations in state law presented by this case defeat predominance and manageability….").

Courts may refuse certification under Rule 23(b)(3) even without waiting for class discovery or a certification motion where additional discovery will not mitigate the conflicts among the applicable state laws.  Under circumstances directly analogous to those here, the Sixth Circuit upheld a court's decision to strike a nationwide class before discovery.  *See Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011).  In *Pilgrim*, the conflicts among the applicable state laws were so material, the court reasoned, as to make certification of a nationwide class improper as a matter of law.  *See id.* at 947.  The *Pilgrim* Court held that, because the applicable "choice-of-law rules make clear that the consumer-protection laws of the State where each injury took place would govern [the plaintiffs'] claims," and "the consumer-protection laws of the affected States vary in material ways, no common legal issues favor[ed] a class-action approach to resolving [the] dispute," and no "potential common issues of fact [could] overcome this problem."  *Id.* at 947, citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1995) ("If more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law.").  The class "claims [were] governed by different States' laws, a largely legal determination, and no proffered or potential factual development offer[ed] any hope of altering that conclusion, one that [would] generally

14

preclude class certification." *Id.* at 949.  Additionally, the *Pilgrim* court did not find a motion to strike before the plaintiffs' motion to certify a class premature, especially in light of the instruction in Rule 23(c)(1)(A) that courts should decide whether to certify a class "[a]t any early practicable time."  *Id.*

While the Second Circuit has not yet followed the Sixth in denying certification of nationwide classes at the pleading stage, courts in this circuit have found, as a matter of law, that such variations in state law preclude certification.  In *In re Grand Theft Auto*, the Southern District refused to certify a nationwide settlement class on the ground that the differences among the applicable state laws—including the states' consumer protection statutes, warranty laws, and doctrines of unjust enrichment—defied class treatment.  *See* 251 F.R.D. at 154.  Notably, although the court undertook this analysis after the close of certification discovery, it did not base its decision on any facts in the record; the court instead canvassed the relevant state law before reaching the purely legal conclusion that their differences precluded certification.  *See id.*

For example, "because reliance [was] an element of consumer fraud in some states [but not in others], … the alleged uniformity of the defendants' fraudulent conduct [was] insufficient, on its own, to justify a finding of predominance."  *Id.* at 154.  In reaching this decision, the court relied on settled Second Circuit precedent holding that common issues do not "predominate" where plaintiffs must establish their reliance on the defendant's representations on an individualized, member-by-member basis.  *Id.*   *See also McLaughlin*, 522 F.3d at 223-25 ("[P]roof of misrepresentation—even widespread and uniform misrepresentation—only satisfies half of the equation; the other half, reliance on the misrepresentation, *cannot* be the subject of general proof.") (emphasis added).

In addition to reliance, the *Grand Theft Auto* decision identified several other elements of the relevant state laws that raised intractable individualized issues, including:

- the requirement in "[s]everal states … that plaintiffs demonstrate an ascertainable loss of money or property," especially when a "properly-functioning product" is at issue, *Grand Theft Auto,* 251 F.R.D. at 157;

- the requirement in many states that plaintiffs demonstrate *scienter*, *id.* at 160;

- the privity requirement in "eighteen states" for breach-of-warranty claims, *id.* at 160;

- the "unclean-hands defense" available to unjust enrichment claims in many states, *id.* at 158; and

- the prohibition in many states against using the class action vehicle in consumer protection suits, *id.* at 160.

As the court explained, "it is not at all clear that an individual who must prove reliance, or demonstrate an ascertainable loss, or show privity, should be grouped in the same class with another individual whose claims must meet none of these requirements." *Id.* at 161.

The same is true here.  As illustrated in the attached Appendix, the laws under which Plaintiff seeks relief differ materially from state to state.  *See* Gillette Decl., Ex. B.  The most damning, for Plaintiff's nationwide class claims, are:

**Reliance:**  While Plaintiff need not establish individualized reliance under Sections 349 and 350, many other states' consumer-protection statutes do require this showing.  *See* Tex. Bus. & Com. Code § 17.50(a)(1)(B) (Vernon 2005) (providing that consumer may maintain action for deceptive practice upon which he relied to his detriment); Wyo. Stat. Ann. § 40-12-108(a) (2008) ("A person relying upon an uncured unlawful deceptive trade practice may bring an action under this act…."); *Lynas v. Williams*, 454 S.E.2d 570, 597 (Pa. Super. 2004) (indicating that justifiable reliance is an element of deceptive practice).  As the Second Circuit held in *McLaughlin*, when individual reliance is at issue in a consumer fraud case, "individualized proof is needed to overcome the possibility that a member of the purported class purchased [the product] for some reason other than [a] belief [in the defendant's representations]."  522 F.3d at 223; *see also Crab House of Douglaston Inc. v. Newsday, Inc.*, No. 04 CV 558 (DRH) (WDW), 2013 U.S. Dist. LEXIS 45499, *43-45 (E.D.N.Y. Mar. 29, 2013) (finding no predominance where "reliance in this case [was] too individualized to be the subject of common proof"); *Myers*

*v. Hertz Corp.*, 624 F.3d 537, 551 (2d Cir. 2010) (finding no predominance where plaintiffs could not show "that more 'substantial' aspects of [the] litigation will be susceptible to generalized proof for all class members than any individualized issues").   Here, as in *McLaughlin*, the showing of reliance required in many states is "too individualized to admit of common proof" under Rule 23(b)(3).  522 F.3d at 224.

**Ascertainable Monetary Loss:**  "Several states require that plaintiffs demonstrate an ascertainable loss of money or property in order to state a claim for consumer fraud."  *Grand Theft Auto*, 251 F.R.D. at 157; *see also* Ala. Code § 8-19-10(a) (2008) (requiring showing of "monetary damage to another person"); Conn. Gen. Stat. Ann. § 42-110g(a) (West 2007) (requiring showing of "ascertainable loss of money or property"); Idaho Code Ann. § 48-608(1) (2008) (same).  "Like the reliance requirement, the ascertainable-loss requirement may create individualized issues that bar the certification of a consumer-fraud class action."  *Grand Theft Auto*, 251 F.R.D. at 157 (citing *In re Rezulin Prods. Liability Litig.*, 210 F.R.D. 61, 68-69 (S.D.N.Y. 2002)) (ascertainable-loss element requires individualized determination of whether particular class members "got their money's worth" from the defendant's product). Individualized inquiry is necessary to determine what value, if any, each of the class members obtained from the Products.  This is especially true where, as here, "the plaintiff[] ha[s] conceded that [Seventh Generation] purchasers obtained a properly-functioning product," albeit one that was allegedly mislabeled.  *Grand Theft Auto*, 251 F.R.D. at 157.

**Scienter:**  The defendant's knowledge or intent is not an element under Sections 349 and 350, but *scienter* remains a core requirement of other states' consumer protection laws.  *See, e.g.*, Colo. Rev. Stat. Ann. § 6-1-105(1)(u) (West 2008) (requiring showing of "inten[t] to induce the consumer to enter into a transaction"); Nev. Rev. Stat. Ann. § 598.0979(1) (West 2008) (requiring showing of knowledge); *Sam v. Beaird*, 685 So. 2d 742, 744 (Ala. Civ. App. 1996) (finding showing of "some knowledge of false or deceptive conduct" required).  Each class member from a *scienter* state, therefore, will face an inherently different burden than those in states with no *scienter* requirement.  *See Grand Theft Auto*, 251 F.R.D. at 160.

**Privity:**   While the Complaint seeks to bring its warranty claims generally under the "Uniform Commercial Code," *see* Compl. ¶¶ 78-84, different states have incorporated the UCC's warranty provisions to materially different degrees.   Most importantly, while New York and several other states require that a warranty plaintiff establish privity, many others do not.  *See, e.g., Streich v. Hilton-Davis*, 692 P.2d 440, 448 (Mont. 1984); *Cameo Curtains, Inc. v. Philip Carey Corp.*, 416 N.E.2d 995, 998 (Mass. App. Ct. 1981).   As discussed in Defendant's Motion to Dismiss for Failure to State a Claim, filed concurrently herewith, since most consumers did not purchase the Products directly from Seventh Generation but instead from third-party retailers, the inquiry into whether each class member may bring a warranty claim will be highly fragmented.

**Unjust Enrichment:**   Plaintiff's claims for unjust enrichment may "give rise to the potential defense of unclean hands in at least some states."  *Grand Theft Auto*, 251 F.R.D. at 158. *See also Las Vegas Fetish*, 182 P.3d at 766-67 (finding that unclean hands could be defense to unjust enrichment claim); *Melius v. Breslin*, 846 N.Y.S.2d 645, 647 (N.Y. App. Div. 2007) (holding that claim for unjust enrichment was barred by doctrine of unclean hands).   "[T]he unclean hands defense undoubtedly introduces significant individualized issues into this litigation."   *Grand Theft Auto*, 251 F.R.D. at 158 (citing *Clay v. Am. Tobacco Co.,* 188 F.R.D. 483, 500-01 n.5 (S.D. Ill. 1999) (the unclean hands defense requires individualized inquiry into whether particular class members are barred from recovery because they acted inequitably)).   These differences among class members are only exacerbated by the fact that unjust enrichment requires an inherently individualized determination of whether each class member's situation warrants relief as a matter of equity.  *See Dungan v. Acad. at Ivy Ridge*, 249 F.R.D. 413, 427 (N.D.N.Y. 2008) ("Plaintiffs' claims of unjust enrichment will require individualized proof as to each plaintiff's situation and an individualized analysis of 'equity' and 'good conscience.'").

In sum, notwithstanding the Complaint's conclusory assertion that "no inquiry into individual conduct is necessary" here, *see* Compl. ¶ 51, Plaintiff's nationwide class claims will

raise individualized issues that predominate over the remaining common issues.  Because no amount of class discovery can erase the fundamental differences among the relevant state laws, these individualized inquiries make class treatment unworkable as a matter of law.

      **D.**     **Plaintiff's Claims for Injunctive Relief on Behalf of a Rule 23(b)(2) Class Must Fail as a Matter of Law**

Plaintiff's request to certify an injunctive relief class under Rule 23(b)(2) must likewise fail as a matter of law.  Courts have struck Rule 23(b)(2) class allegations for lack of Article III standing at the pleading stage where, as here, the named plaintiffs did not properly plead that they faced any immediate threat of further injury.  *See, e.g., Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 199 (2d Cir. 2005) (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)) ("The Supreme Court has held that if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendant, none may seek relief on behalf of himself or any other member of the class."); *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d at 120 (holding that motion to strike Rule 23(b)(2) class allegations for lack of standing was "not procedurally premature because one way in which a claim for class certification can fail as a matter of law is for lack of standing").

Here, Plaintiff has not alleged that she intends to purchase any of the products at issue in the future.  Nor can she plausibly plead that she is at risk of ongoing injury or "deception" now that she is aware that the Defendant's advertisements are allegedly false.  Plaintiff therefore lacks standing as a matter of law to seek injunctive relief, either on her own behalf or on behalf of the putative nationwide class under Rule 23(b)(2).

**IV.**    <u>**CONCLUSION**</u>

As demonstrated, Plaintiff's nationwide class allegations fail as a matter of law for a number of reasons, each of which is an independent basis for striking the class allegations: 1) under New York law, Plaintiff's GBL §§ 349 and 350 claims do not apply to purchases made

outside of New York; 2) New York's conflicts of law rules preclude Plaintiff from applying New York law to the claims of non-New York consumers; 3) Plaintiff's nationwide class fails the Rule 23(b)(3) predominance requirements; and 4) Plaintiffs class allegations under Rule 23(b)(2) fail because she herself cannot establish standing for injunctive relief.  Based on the foregoing, Defendant respectfully requests the Court strike the nationwide class allegations in the Complaint with prejudice.

DATED:  May 15, 2015

MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO PC


By: ____/s/ Michelle Gillette_____
    Daniel J. Herling (admitted *pro hac vice*)
    djherling@mintz.com
    Michelle Gillette (admitted *pro hac vice*)
    mgilette@mintz.com
    Joshua Thomas Foust (JF7049)
    jtfoust@mintz.com
    44 Montgomery St., 36th Floor
    San Francisco, California  94104
    Telephone: (415) 432-6000
    Facsimile:  (415) 432-6001

    Francis J. Earley
    fjearley@mintz.com
    666 Third Avenue
    New York, New York 10017
    Telephone: (212) 935-3000
    Facsimile:  (212) 983-3115

    Counsel for Defendant
    SEVENTH GENERATION, INC.