UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
TZIVA RAPOPORT-HECHT, individually
on behalf of herself and all others similarly
situated,                                                                    14-CV-9087 (KMK)

          Plaintiff,

    -against-

SEVENTH GENERATION, INC.,

         Defendant.
--------------------------------------------------------X


**Memorandum of Law in Opposition to Defendant Seventh
Generation, Inc.'s FRCP 12(b)(6) Motion to Dismiss for
Failure to State a Cause of Action**


Joseph Lipari, Esq. (Bar ID #: JL3194)
Jason P. Sultzer, Esq. (Bar ID #: JS4546)
The Sultzer Law Group, P.C
85 Civic Center Plaza, Suite 104
Poughkeepsie, New York
Tel: (845) 483-7100
Fax: (888) 749-7747
liparij@thesultzerlawgroup.com
sultzerj@thesultzerlawgroup.com

*Counsel for Plaintiff and the Class*

# TABLE OF CONTENTS

TABLE OF CONTENTS……………………...…………………………………..I

TABLE OF AUTHORITIES………………………....................................................II-VI

INTRODUCTION…………………………………………………………………....1

    A. Summary of Argument……………………………………………...………..1

    B. Pleading Standards………………………………………………….………….2

    C. Numerous Courts Have Previously Addressed the Issue, and Have Held a Viable Claim Where, as in the Case at Bar, a Defendant's Products were Falsely Labeled "Natural"….4

ARGUMENT……………………………………………………………………....6

    A. The Alleged Breach of Express Warranty (Plaintiff's Third Cause of Action) States a Viable Claim……………………………………………………………...…..6

        i. The Elements of the Cause of Action for Breach of an Express Warranty are Well-Pled……………………………………...………………6

        ii. Under New York Law, it is Not an Element of the Cause of Action for Breach of Express Warranty that Notice of Breach be Given Prior to the Institution of Suit……………………………………………….……..11

    B. The Alleged Breaches of Implied Warranties (Plaintiff's Fourth and Fifth Causes of Action) State Viable Claims……………………………………….…………….18

    C. The Alleged Breach of GBL §349 (Plaintiff's First Cause of Action) States a Viable Claim……………………………………………………….……………19

    D. Plaintiff Has Properly Sought Injunctive Relief to Put an End to Defendant's Deceptive Marketing Practices……………………………………………...…………20

    E. Plaintiff Has Properly Sought Injunctive Relief…………………...……………22

CONCLUSION……………………………………………………………..24

I

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Abraham v. Volkswagen of America*,
        795 F.2d 238 (2d Cir. 1986)…………………………………………………………….9

*Ackerman v. Coca-Cola Co*.,
        2010 U.S. Dist. LEXIS 73156, * 9, n. 5 (E.D.N.Y. July 21, 2010)…………………....19

*Ackerman v. Coca-Cola Co*.,
        2013 U.S. Dist. LEXIS 184232, 56 (E.D.N.Y. July 17, 2013)…………………………..20

*Addeo v. Metro. Bottling Co.*,
        39 Misc. 2d 474, 475 (Appellate Term, 1st Dep't 1963)…………………………………8

*Ashcroft v. Iqbal*,
        556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)……………………………………………..2

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
        2012 WL 2990766, at *7 (N.D. Cal. 2012)……………………………………………….5

*Ault v J.M Smucker Co.*,
        2014 U.S. Dist. LEXIS 67118 (SDNY May 15, 2014)………………………………7, 8

*Bednarski v. Hideout Homes & Realty, Inc.*,
        709 F. Supp. 90, 93 (M.D. Pa. 1988)…………………………………………………….16

*Begley v. Jeep Corp*.,
        491 F. Supp. 63 (W.D. Va. 1980)………………………………………………………..14

*Belfiore v. P&G*,
        2015 U.S. Dist. LEXIS 38170 (E.D.N.Y. Mar. 20, 2015)……………………………….20

*Bell Atlantic Corp. v. Twombly*,
        550 U.S. 544, 570 (2007)…………………………………………………………………2

*CBS v. Ziff-Davis Publ. Co*.,
        75 N.Y.2d 496, 503, 554 N.Y.S.2d 449 (1990)………………………………………...7

*Codling v. Paglia*,
        32 N.Y.2d 330, 345 N.Y.S.2d 461 (1973)……………………………………….....9

*County of Westchester v. General Motors Corp.*,
        555 F. Supp. 290 (1983)…………………………………………………………………..9

*Dash v Seagate Tech. (US) Holdings, Inc.*,
    2014 U.S. Dist. LEXIS 88780, at *9-10 (E.D.N.Y June 30, 2014)………………….…19

*Davidson v. Wee*,
    379 P. 2d 744 (Arizona 1963)………………………………………………………16

*Denny v. Ford Motor Co.*,
    87 N.Y.2d 248, 259, 639 N.Y.S.2d 250 (1995)…………………………………………18

*DiBartolo v. Abbott Laboratories*,
    914 F. Supp. 2d 601 (SDNY 2012)……………………………………………….…9

*Ebin v. Kangadis Food Inc.*,
    2013 U.S. Dist. Lexis 174174 (SDNY 2013)………………………………………8, 9

*Erickson v. Pardus*,
    551 U.S. 89, 93-94 (2007)…………………………………………………………...2

*Fagan v. Neutrogena Corp.*,
    2014 WL 92255, at *2 (C.D. Cal. 2014)……………………………………………..5

*Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*,
    689 F.Supp.2d 585, 604 (S.D.N.Y. 2010)………………………………………...6

*Fischer v. Mead Johnson Laboratories*,
    41 AD 2d 737, 737-738 (2d Dep't 1973)……………………………………...12, 13, 14

*Gelb v. Am. Tel. & Tel. Co.*,
    150 F.R.D. 76, 77 n.3 (S.D.N.Y. 1993)…………………………………………..21

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
    2014 U.S. Dist. LEXIS 47180 (S.D.N.Y Mar. 27, 2014)……………………………..5, 19

*Hayden v. Paterson*,
    594 F.3d 150, 160 (2d Cir. 2010)………………………………………………….2

*Hampton v. Gebhardt's Chili Powder Co.*,
    294 F. 2d 172, 173 (9th Circuit 1961)……………………………………………...16

*Hebron v. American Isuzu Motors, Inc.*,
    60 F.3d 1095 (4th Cir. 1995)………………………………………………………15

*Henderson Tire & Rubber Co. v. Wilson & Son*,
    235 N. Y. 489, 500. 266 App.Div. at 9……………………………………………..12

III

*Hishon v. King*,
    467 U.S. 69, 73 (1984)…………………………………………………………………2

*In re Frito-Lay N. Am., Inc.*,
    2013 U.S. Dist. LEXIS 123824, (E.D.N.Y. Aug. 29, 2013)………………………………6

*In Re Hydroxycut Marketing & Sales Practices Lit.*,
    801 F. Supp. 2d 993 (S.D. Cal. 2011)……………………………………………………16

JD&K Associates v. Selective Insurance Group,
    118 A.D.3d 1402, 988 N.Y.S.2d 749 (4th Dep't 2014)…………………………………22

*Kennedy v. Woolworth Co.*,
    (205 App. Div. 648)………………………………………………………………….…13

*Koehler v. Litehouse, Inc.*,
    No. 12 CV 04055, 2012 U.S. Dist. LEXIS 176971, at *6 (N.D. Cal. Dec. 13, 2012)…...21

*Koenig v. Boulder Brands, Inc.*,
    995 F.Supp.2d 274 (S.D.N.Y. 2014)……………………………………………….....8, 9

*Langan v. Johnson & Johnson Consumer Companies, Inc.*, Dist. Court, Conn.,
    Docket No 13-cv-01470, Docket Entry 47 (March 31, 2015)……………………………4

*Larsen v. Trader Joe's Co.*,
    No. 11 CV 05188, 2012 U.S. Dist. LEXIS 162402, at *4 (N.D. Cal. June 14, 2012)…...21

*Marine Midland Bank v Carroll*,
    98 A.D.2d 516……………………………………………………………………………10

*Mazzuocola v. Thunderbird Prods. Corp.*,
    1995 U.S. Dist. LEXIS 6883 (E.D.N.Y. May 16, 1995)…………………………………7

*Murphy v. Mallard Coach Co.*,
    179 A.D.2d 187, 582 N.Y.S.2d 528 (3d Dep't 1992)……………………………..9, 10, 11

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
    85 N.Y.2d 20, 24-25 623 N.Y.S.2d 529 (1995)………………………………….....20, 22

*Panda Capital Corp. v. Kopo Int'l, Inc.*,
    242 A.D.2d 690, 662 N.Y.S.2d 584 (2d Dep't 1997)……………………………………14

*Randy Knitwear, Inc. v. Am. Cyanamid Co.*,
    11 N.Y.2d 5, 12 (1962)……………………………………………………………..8, 11

IV

*Shooshanian v. Wagner,*
    672 P. 2d 455 (Alaska 1983)…………………………………………………...…16

*Silverstein v. R.H. Macy & Co.,*
    266 App.Div. 5, 40 N.Y.S.2d 916 (1st Dep't 1943)……………………………….12

*Strzakowlski v. General Motors Corporation,*
    2005 U.S. Dist. LEXIS 18111 (D.NJ 2005)………………………………………17

*Weinstein v. Natalie Weinstein Design Assocs.,*
    86 A.D.3d 641, 644, 28 N.Y.S.2d 305 (2d Dep't 2011)…………………………22

*Williams v. Citigroup Inc.,*
    659 F. 3d 208 (2d Cir. 2011)………………………………………………………24

*Williams v. Gerber Products,*
    552 F.3d 934, 939-940 (9th Cir. 2008)……………………………………………...4

*Wilner v. Allstate Ins. Co.,*
    71 A.D.3d 155, 167, 893 N.Y.S.2d 208 (2d Dep't 2008)…………………………22

*Wilner v Allstate Ins. Co.,*
    71 A.D.3d 155, 167 [893 N.Y.S.2d 208 (2d Dep't 2010)])……………………...22

*Ural v Encompass Ins. Co.,*
    97 A.D.3d 562, 565, 948 N.Y.S.2d 621 (2d Dep't 2012)…………………………22

<u>Statutes</u>

FRCP 12(b)(6)………………………………………………………………………...19

GBL §349…………………………………………………………………2, 19, 22, 23, 24

GBL §350…………………………………………………………………………....1, 19

General Business Law §349……………………………………………………….20, 22

Rule 23(a)………………………………………………………………………...21

U.C.C. §1-201……………………………………………………………………15, 16

U.C.C. §2-313………………………………………………………………….9, 10, 11

U.C.C. §2-318………………………………………………………………....9, 11

U.C.C. §2-607……………………………………………………12, 13, 14, 15, 16, 17

U.C.C. §2-607(3)(a)…………………………………………………………………………16, 17

Uniform Commercial Code §9-5……………………………………………………………...10

Plaintiff Tziva Rapoport-Hecht, individually on behalf of herself and all others similarly situated, hereby opposes defendant Seventh Generation, Inc.'s motion to dismiss for failure to state a cause of action. For the reasons that follow, it is respectfully submitted that defendant's motion must be denied in its entirety.

## Introduction

### A.      Summary of Argument

Many courts have had an opportunity to consider whether the labeling of products as "natural" or "all natural," where the products actually contain synthetic chemical compounds, gives rise to deceptive-marketing claims. As will be demonstrated herein, the courts that have considered the issue have uniformly held that such claims state a viable cause of action. The case at bar is another such action.

Defendant Seventh Generation marketed its cleaning products as "natural," "safe," "non-toxic," and "hypoallergenic," yet the products contain benzisothiazolinone and methylisothiazolinone, two synthetic inorganic chemical compounds. Aside from being synthetic – *i.e.*, non-natural – they are also, as alleged (¶¶ 18-26), toxic and allergenic. In moving to dismiss, the defendant does not deny that their products contain these synthetic chemical compounds and that they were nonetheless marketed as "natural." Moreover, we note that defendant Seventh Generation has not sought dismissal of the False Advertising claim, GBL § 350,[1] thereby acknowledging that a colorable claim has been stated that holding out its products to the public as being "natural" constitutes an actionable wrong. It has also failed to move to dismiss the claim for unjust enrichment, thereby acknowledging that a colorable claim

---

[1] General Business law § 350, entitled "False Advertising Unlawful," provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

has been stated that it has unjustly profited by marketing its products as "natural." And given that the allegations in the plaintiff's complaint are, in all material respects, identical to allegations in similar cases, wherein the courts have held such allegations sufficient to state viable causes of action, it is respectfully submitted that defendant Seventh Generation's motion to dismiss the First (Violation of GBL § 349), Third (Breach of Express Warranty), Fourth (Breach of Implied Warranty of Merchantability) and Fifth (Breach of Implied Warranty of Fitness for a Particular Purpose) causes of action, as well as the prayers for injunctive relief and punitive damages, must be denied.

### B.    Pleading Standards

In deciding a motion to dismiss for failure to state a claim, a court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in [plaintiffs'] favor." *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (alteration in original, original quotation marks omitted). To withstand a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *Iqbal* makes clear that it is the claim for relief – when considered in light of all of the allegations – that must be plausible, not any specific allegation itself. For purposes of a pleading, "[s]pecific facts are not necessary; the statements need only give the defendants fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). When deciding a motion to dismiss, the court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Hishon v. King*, 467 U.S. 69, 73 (1984).

Here, there is nothing remotely implausible about the allegations that defendant Seventh Generation, which marketed products labeled "natural," deceived purchasers into believing the products were free of synthetic inorganic chemical compounds. There is nothing implausible about the allegation that the plaintiff, and those similarly situated, were deceived into paying far more for defendant Seventh Generation's products than she would otherwise have paid if she'd known that the products were not in fact "natural." Indeed, it is alleged in the complaint (see ¶42) that the products that defendant Seventh Generation holds out as being "natural" sell at a very substantial premium over similar products that are not falsely held out as being "natural." Whereas Arm & Hammer detergents cost between $0.06 and $0.10 per fluid ounce, defendant Seventh Generation's products are sold at a premium of $0.20 per ounce. And the complaint plainly gives the defendant fair notice of the claims against it. To the extent that the defendant argues that the plaintiff must differentiate the "what, where and when" of her purchases of the different products marketed and sold by the defendant, this can be clarified through the discovery process. At the pleading stage, it is entirely improper for defendant Seventh Generation to present factual argument in a memorandum of law that the labeling of certain of its products changed during the class period, and that it is therefore necessary, at this juncture to nail down the precise "what, where and when" details. Suffice it to say that defendant Seventh Generation does not deny that its products were marketed as "natural" and "hypoallergenic." If their marketing at some earlier time were not held out to be natural and hypoallergenic, the plaintiffs will certainly flesh out through discovery why they changed their marketing campaign.

3

C.    **Numerous Courts Have Previously Addressed the Issue, and Have Held a Viable Claim Where, as in the Case at Bar, a Defendant's Products were Falsely Labeled "Natural."** [2]

In *Williams v. Gerber Products*, 552 F.3d 934, 939-940 (9th Cir. 2008), defendant Gerber held out its juice as being "made with real fruit juice and all natural ingredients." Inasmuch as the juice contained mainly corn syrup and sugar, the Ninth Circuit held that the district court had erred in determining as a matter of law that the packaging was not deceptive:

> [R]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. The ingredient list on the side of the box appears to comply with FDA regulations and certainly serves some purpose. We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. ***Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.***

*Williams v. Gerber Products*, 552 F.3d 934, 939-940 (9th Cir. 2008) (emphasis added).

In *Langan v. Johnson & Johnson Consumer Companies, Inc.*, Dist. Court, Conn., Docket No 13-cv-01470, Docket Entry 47 (March 31, 2015),[3] defendant Johnson & Johnson marketed sunscreen products as "natural," in that they provide "natural protection" and contain "100% naturally-sourced sunscreen ingredients." The plaintiff alleged these phrases constituted representations to the reasonable consumer that the sunscreen products contained only natural ingredients. But in fact they contained unnatural synthetic ingredients. The plaintiff alleged that she paid a premium for what she believed to be an all-natural product. In denying defendant

---

[2] This point is specifically responsive to point B on page 8 of defendant Seventh Generation's memorandum of law. It is also responsive, generally, to all of the defendant's arguments.

[3] As yet, there is no Lexis cite for the decision; however, the decision can be found at: http://www.gpo.gov/fdsys/pkg/USCOURTS-ctd-3_13-cv-01470/pdf/USCOURTS-ctd-3_13-cv-01470-0.pdf

Johnson & Johnson's 12(b)(6) motion to dismiss, and citing to several cases wherein the courts

found the marketing of products using "natural" language, if you will, the district court stated:

> Plaintiff claims that defendant's use of the phrases "natural protection" and
> "100% naturally-sourced sunscreen ingredients" on its sunscreen product labels is
> actually deceptive because these phrases lead reasonable consumers to believe
> that the sunscreens contain only natural ingredients when the products actually
> contain numerous unnatural ingredients. Defendant disagrees, and argues that
> these statements merely convey the "unambiguous and truthful message ... that
> the ingredients that provide protection from the sun are naturally sourced."
> Defendant further argues that any ambiguity in the meaning of these phrases is
> dispelled by the detailed ingredient list found elsewhere on the product packaging.
>
> Whether the phrases on defendant's sunscreen packaging are deceptive is a
> question of fact that is not readily susceptible to resolution on a motion to dismiss.
> "Defendant's argument that the representations are literally true because the term
> '100%' only applies to the ingredients in the products that provide protection
> from the sun (and not to other ingredients in the lotions that serve other purposes)
> rests on one possible interpretation of the language, but it is not the only possible
> interpretation." *Fagan v. Neutrogena Corp.*, 2014 WL 92255, at *2 (C.D. Cal.
> 2014). Indeed, it seems perfectly reasonable to me that a typical consumer might
> interpret the phrase "100% naturally-sourced sunscreen ingredients" on a
> sunscreen product label to mean that the whole product was natural. After all, the
> entire product—everything in the container—is applied by a consumer as a
> sunscreen, and it seems unlikely that a reasonable consumer would distinguish
> between the active "sunscreen ingredients" and the "non-sunscreen ingredients"
> inside a container. I have little difficulty rejecting defendant's argument that these
> phrases should be deemed not deceptive as a matter of law. See *Astiana v.
> Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766, at *7 (N.D. Cal. 2012)
> (denying motion to dismiss because "it is [not] implausible under Twombly and
> Iqbal that a reasonable consumer might . . . understand the term" "'All Natural
> Flavors' to mean 'all natural ingredients'").

In another "natural"-products case, *Goldemberg v. Johnson & Johnson Consumer Cos.*,

2014 U.S. Dist. LEXIS 47180 (S.D.N.Y Mar. 27, 2014), Mr. Goldemberg alleged that the

trademarked term "Active Naturals" was deceptive because it conveyed to consumers that the

product was "completely natural," yet the products at issue contained synthetic ingredients.

Johnson & Johnson argued that the plain language of the phrase "Active Naturals" conveys to

consumers that the products contain active, natural ingredients — not that they are "100%

Natural" and contain no synthetic ingredients. The court rejected defendant's argument and

declared "[we] cannot find as a matter of law that no reasonable consumer could be misled by these advertisements into believing the products contain exclusively natural ingredients." Id. at * 27.

Further, the case *In re Frito-Lay N. Am., Inc.*, 2013 U.S. Dist. LEXIS 123824, (E.D.N.Y. Aug. 29, 2013), concerned "what a reasonable consumer would believe the term 'natural' to mean on a food label…." The court held that the issue "cannot be resolved on [a] motion [to dismiss]," as it is a "factual dispute." *Id.* at * 48-49.

In view of the well-settled case law holding that the mislabeling of products as being "natural," where such products actually contain synthetic ingredients, gives rise to deceptive-marketing claims, the arguments made by defendant Seventh Generation in support of its motion to dismiss can be addressed in abbreviated form.

### Argument

**A.    The Alleged Breach of Express Warranty (Plaintiff's Third Cause of Action) States a Viable Claim.**

Initially, we note that, in moving to dismiss, defendant Seventh Generation addresses the plaintiff's causes of action out of sequence. This memorandum will track the defendant's motion; that is, we will first address whether plaintiff's third cause of action – breach of express warranty – states a viable claim.

**(i)    The Elements of the Cause of Action for Breach of an Express Warranty are Well-Pled.**

"A prima facie claim for breach of express warranty requires the plaintiff to show that there was an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon to the plaintiff's detriment." *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp*., 689 F.Supp.2d 585, 604 (S.D.N.Y. 2010) (citation omitted).

Here, it is alleged in the complaint that (a) defendant held out to consumers that its products were made with naturals ingredients (see ¶¶ 8, 10, 39), when, in fact, they contained synthetic ingredients (see, e.g., ¶¶ 16, 28, 40-41, 89); (b) defendant promised that its products were "safe" and "hypoallergenic," when, in fact, they contained ingredients that are known toxins and allergens (see, e.g., ¶¶ 11, 15-28, 43); (c) plaintiff relied on defendant's promises in deciding to purchase the products at a premium (see ¶¶ 33-34); and (d) defendants' promises were false (see ¶¶ 39-41 & passim).[4]

In *Ault v J.M Smucker Co.*, 2014 U.S. Dist. LEXIS 67118 (SDNY May 15, 2014), which defendant Seventh Generation calls an "outlier" case, the court held that a representation relative to whether a product is "natural" constitutes "an actionable warranty," and "that privity between Plaintiff and Defendant is not required." Rather, "a buyer may bring a claim against a manufacturer from whom he did not purchase a product directly, since an express warranty may include specific representations made by a manufacturer in its sales brochures or advertisements." *Id.* at *20-21.

In sum, defendant Seventh Generation's warranty runs with its packaging. As noted in *CBS v. Ziff-Davis Publ. Co.*, 75 N.Y.2d 496, 503, 554 N.Y.S.2d 449 (1990), "[t]he critical question," in express warranty actions, "is not whether the buyer believed in the truth of the warranted information, … but whether [he] believed [he] was purchasing the seller's promise as to its truth." While contractual in nature, express warranties do not always require a direct contract. "It may once have been true that the warranty which really induced the sale was

---

[4] "In any event, whether Defendants made statements which constitute an express warranty involves a question of fact. See *Mazzuocola v. Thunderbird Prods. Corp.*, 1995 U.S. Dist. LEXIS 6883 (E.D.N.Y. May 16, 1995) (the question of whether the warranties in the defendant's brochure were express warranties should be submitted to the jury).Thus, any questions that remain are factual issues which the Court cannot resolve on a motion to dismiss.

normally an actual term of the contract of sale. Today, however, the significant warranty, the one which effectively induces the purchase, ***is frequently that given by the manufacturer through mass advertising and labeling to ultimate … consumers with whom he has no direct contractual relationship***." *Randy Knitwear, Inc. v. Am. Cyanamid Co.*, 11 N.Y.2d 5, 12 (1962) (emphasis added).

As in *Randy Knitwear*, and in *Ault v. J.M. Smucker*, and in the case at bar, there was an express warranty by virtue of the product labeling and marketing: "The world of merchandising is, in brief, no longer a world of direct contract; it is, rather, a world of advertising and, when representations expressed and disseminated in the mass communications media and on labels (attached to the goods themselves) prove false and the user or consumer is damaged by reason of his reliance on those representations, it is difficult to justify the manufacturer's denial of liability on the sole ground of the absence of technical privity." *Randy Knitwear,* 11 N.Y.2d at 12 (1962). "[T]he Court of Appeals took a giant step in the case of *Randy Knitwear* []. The traditional privity limitation was dispensed with in an action for breach of express warranty by a remote purchaser against a manufacturer who induced the purchase by representing the quality of the goods in public advertising and on labels which accompanied the goods." *Addeo v. Metro. Bottling Co.*, 39 Misc. 2d 474, 475 (Appellate Term, 1st Dep't 1963).

This is to say, far from being an "outlier" case, *Ault v. J.M. Smucker* falls squarely within New York's past fifty years of jurisprudence. Much as defendant Seventh Generation pines for the resurrection of the citadel of privity, all the kings horses and all the kings men cannot put it back together again, and defendant Seventh Generation's reliance upon *Koenig v. Boulder Brands, Inc.*, 995 F.Supp.2d 274 (S.D.N.Y. 2014), *Ebin v. Kangadis Food Inc.*, 2013 U.S. Dist.

Lexis 174174 (SDNY 2013), and *DiBartolo v. Abbott Laboratories*, 914 F. Supp. 2d 601 (SDNY 2012), is thus misplaced.[5]

The *Koenig* and *Ebin* courts misconstrued New York law. Under the U.C.C. § 2-313, a representation made by a seller on a product label constitutes a warranty. "Express warranties by the seller are created as follows: (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise. …"

As in *Codling v. Paglia*, 32 N.Y.2d 330, 345 N.Y.S.2d 461 (1973), it is sometimes the case that the person bringing suit never even saw the warranties made by the seller. In such case, the injured plaintiff may nonetheless maintain suit against the original seller, because he sustained actual physical injuries, even though he had no actual awareness of the express warranty. It is in such case that U.C.C. § 2-318, entitled "Third Party Beneficiaries of Warranties Express or Implied," is triggered: "A seller's warranty whether express or implied extends to any natural person if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty."

---

[5] While defendant Seventh Generation cites to several *federal* cases for the proposition that there cannot be a claim of breach of an express warranty under New York law without a physical injury where privity is lacking, these cases – *incestuously*, so to speak – cite only to federal cases for this proposition. The federal cases cited do not actually analyze New York case law. Perhaps this was due to an oversight by the parties therein, in failing to bring New York state court precedent to the federal courts' attention. And because of the finality rule – the rule that decisions on motions to dismiss are not appealable if any cause of action remains – these decisions stand as bad law; they cannot be reconciled with New York case law, such as the *Murphy v. Mallard Coach* case. The other cases cited by defendant – *Abraham v. Volkswagen of America*, 795 F.2d 238 (2d Cir. 1986), and *County of Westchester v. General Motors Corp.*, 555 F. Supp. 290 (1983) – principally concerned implied warranties; there were no express representations at issue in those cases.

Plaintiff Rapoport-Hecht is not herself a third-party beneficiary, for example, of the contract between defendant Seventh Generation and Walmart. Rather, a guest or family member of plaintiff Rapoport-Hecht would be treated as a third-party beneficiary, if the product purchased by Ms. Rapoport-Hecht caused injury, such as a severe allergic reaction to the toxins in Seventh Generation's products.

This analysis is corroborated by the case of *Murphy v. Mallard Coach Co.*, 179 A.D.2d 187, 582 N.Y.S.2d 528 (3d Dep't 1992), which would have had an entirely different outcome had defendant Seventh Generation's view been correct, that direct privity is required to maintain suit absent a personal injury. There, plaintiff Murphy purchased from a retailer – defendant R.V. America – a motor home that was manufactured by defendant Mallard Coach, which warranted that the motor home was "free of substantial defects in materials and workmanship attributable to [Mallard Coach]." The motor home, however, had defective plumbing.

In upholding the claim of breach of an express warranty, though there was neither privity nor a personal injury, the court stated, "we believe that while the warranty was technically handed over after plaintiffs paid the purchase price, the fact that it was given to plaintiffs at the time they took delivery of the motor home renders it sufficiently proximate in time so as to fairly be said to be part of the basis of the bargain (compare, U.C.C. § 2-313, Comment 7; 1 White and Summers, Uniform Commercial Code § 9-5, at 448-445 [3d ed]; *cf.*, *Marine Midland Bank v Carroll*, 98 A.D.2d 516)." *Murphy v. Mallard Coach*, 179 A.D.2d at 193. Because of the written representations – and notwithstanding the lack of privity and lack of personal injury – plaintiff Murphy was able to maintain her suit for breach of an express warranty. There was a written warranty that the motor home would be free of substantial defects. Under U.C.C. § 2-313, written representations on a product label constitute a warranty.

10

In *Murphy v. Mallard Coach*, the representation was that the motor home was free of substantial defects.[6] The notion that a consumer cannot sue for breach of express warranty absent direct privity unless he has sustained a personal injury is flatly wrong. Ms. Murphy did not sustain a personal injury, yet she was permitted to maintain a claim for breach of an express warranty against Mallard Coach, even though she was not in direct privity with the manufacturer. The written representations run with the product. Thus, *Murphy v. Mallard Coach* falls squarely within the parameters of *Randy Knitwear v. American Cyanamid*, supra, and it cannot be fairly said that Randy Knitwear was somehow abrogated by U.C.C.§ 2-318.

The other cases cited by defendant Seventh Generation for the proposition that, absent privity, there can be no claim of breach of warranty without an injury involved claims of breach of implied warranty. They will therefore be addressed in the next section.

**(ii)**      **Under New York Law, it is Not an Element of the Cause of Action for Breach of Express Warranty that Notice of Breach be Given Prior to the Institution of Suit.**

In support of the argument that notice of a potential claim must be filed prior to institution of a breach-of-warranty cause of action, defendant Seventh Generation cites to federal cases, rather than New York case law. It would appear that no New York State case has upheld defendant's view of the law. To the contrary, the New York cases that have addressed the issue both before and after the adoption of the UCC, hold that a lawsuit itself may constitute the timely

---

[6] While defendant Seventh Generation might argue in reply that defendant Mallard Coach had used the word "warranty" in its written materials, we note that the word "warranty," of course, is superfluous: The holding would have been no different had Mallard Coach merely represented that the motor home was defect-free, because U.C.C. § 2-313 makes any such affirmation a warranty, even without the use of the word "warranty."

notice of a breach of warranty. (The relevant language of UCC § 2-607 is set forth in the margin.[7])

In the pre-UCC case of *Silverstein v. R.H. Macy & Co*., 266 App.Div. 5, 40 N.Y.S.2d 916 (1st Dep't 1943), the plaintiff purchased a chin-up bar from Macy's, which made representations that it was safe, and could be installed in a doorframe without fasteners, but instead locked into place using pressure, by rotating the bar and thereby expanding it into the doorframe. The plaintiff was injured when the bar came loose, causing him to fall. He brought suit alleging solely breach of warranty, in that the chin-up bar was represented as safe. Defendant Macy's argued that prior to his filing suit, the plaintiff failed to give it notice of the breach. To this, the First Department stated, "the commencement of this action would seem to afford sufficient notice of breach of warranty. (*Henderson Tire & Rubber Co. v. Wilson & Son*, 235 N. Y. 489, 500.)" 266 App.Div. at 9.[8]

More recently, and post-adoption of the UCC, the Appellate Division, Second Department held in *Fischer v. Mead Johnson Laboratories*, 41 AD 2d 737, 737-738 (2d Dep't

---

[7] UCC § 2-607 (3) provides: "Where a tender has been accepted … (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy …."

[8] In the *Henderson* case, decided in 1923, the Court of Appeals stated: "There was no necessity for the plaintiff to give notice under section 146 of the Personal Property Law. But if it be assumed that such notice were required, it gave all the notice that was necessary when it commenced this action within a very short time after the defendants had taken the position that they would not perform. The law does not require something to be done for the mere form of it, since it looks to substance. If a notice were to be given, it was for a purpose. No purpose could here have been served because defendants had announced they would give no further specifications and accept no further deliveries. Under such circumstances what could possibly have been accomplished by giving a notice, assuming that one were required? (Citation omitted). When a notice is required to be given, it is for the purpose of enabling the person to whom given to act." In light of this, plaintiff Rapoport-Hecht notes that defendant Seventh Generation has failed to argue that it would have changed its packaging and marketing if only it had received notice prior to institution of suit that it was in breach.

1973), that the filing of a complaint itself may constitute the timely notice of breach

contemplated by UCC § 2-607:

> Mead Johnson claimed that the notice provision of section 2-607 of the Uniform
> Commercial Code was not complied with in that the first time that Mead Johnson
> received notice of the alleged breach was in the complaint in the prior action,
> served upon it a minimum of three years after the cause had accrued and plaintiffs
> had become aware of the problem. Special Term held this inordinate length of
> time to be in excess of the time period contemplated by the framers of the
> Uniform Commercial Code as a matter of law and accordingly dismissed that
> cause of action. We think this was error. The prescription of timely notice under
> the code provision is to be applied, if at all, differently in commercial and retail
> sales situations. In *Kennedy v. Woolworth Co*. (205 App. Div. 648) the Appellate
> Division, First Department, held that the similar provision of section 130 of the
> Personal Property Law, which was the predicate for section 2-607 of the Uniform
> Commercial Code, was not applicable in situations involving goods sold for
> human consumption. Speaking for the court, Justice McAvoy stated (pp. 649-
> 650): "The reason for the rule has no relevant application to the circumstances of
> such a case. That section apparently has to do with the sales of goods whose
> inspection or use discloses a defect of quality, lack of conformance to sample,
> failure to comply with description, or other cognate circumstances which causes
> money damage to the vendee. To require a complaint which, whatever its
> nomenclature of form, is really grounded on tortious elements, to indicate a notice
> of rejection or claim of damage within a reasonable time on account of defect of
> edible goods in a retail transaction, would strain the rule beyond a breaking point
> of sense or proportion to its intended object." We think that *Kennedy* is clearly in
> point and relevant to the case at bar and directs that we overlook the question as to
> whether timely notice was given within the meaning of section 2-607 of the
> Uniform Commercial Code, as that requirement does not apply in a case such as
> this.

So too, the case at bar involves retail purchases of defendant Seventh Generation's

products, rather than a sale of the products to sophisticated business customers. Additionally, the

claims are "really grounded on [the] tortious elements" of deceptive trade practice, implicating

not a mere innocent, non-negligent breach, but an intentional misrepresentation made to retail

customers. While defendant Seventh Generation may argue, in reply, that *Fischer* involved an

oral contraceptive, rather than cleaning products, which are obviously not intended for

consumption, it has been alleged – and such allegations must be taken as true at this stage of the

proceedings – that the synthetic inorganic chemical compounds contained in its products are both toxic and allergenic.

In any event, *Fischer*'s analysis was expanded beyond the retail context, and beyond ingested products, in *Panda Capital Corp. v. Kopo Int'l, Inc.*, 242 A.D.2d 690, 662 N.Y.S.2d 584 (2d Dep't 1997). There, the defendant agreed to deliver steel products to the plaintiff, who brought suit alleging various breaches. The defendant argued that it had not received timely notice of the alleged breaches, as required by UCC § 2-607. To this, the Second Department stated:

> This argument overlooks the fact that the complaint and subsequent amended complaint in this action themselves constituted such notice, and that the plaintiff had repeatedly made its objections to Kopo's pattern of deficient performance known prior to the shipments reflected in the invoices. Under these circumstances, it is at the very least an issue of fact as to whether reasonably timely notice of breach was given (citations omitted).

Plaintiff Rapoport-Hecht respectfully submits that there is nothing in UCC § 2-607 to suggest that pre-suit notice of breach is an element of a claim of breach of warranty that must be pleaded and proved, under New York law. These cases establish quite clearly that pre-suit notice need not be pled as an element of the cause of action. Rather, as written, the statute merely allows a defendant to assert, as a factual defense, that it did not receive timely notice of the breach. The purpose of the statute is, manifestly, to give the seller an opportunity to cure the breach.

This section has been held to mean that a buyer must notify a seller fairly promptly after delivery if there are any defects in the material. Otherwise, the buyer will lose the right to claim breach of contract or breach of warranty. *Begley v. Jeep Corp.*, 491 F. Supp. 63 (W.D. Va. 1980) (whether the plaintiffs gave reasonably timely notice of breach of warranty to the seller is ordinarily a question of fact reserved for the jury; however, if the evidence is clear, the court can

14

rule as a matter of law that a party failed to give timely notice); *Hebron v. American Isuzu Motors, Inc.*, 60 F.3d 1095 (4th Cir. 1995) (a two-year delay in giving notice was unreasonable as a matter of law where no explanation for the delay was provided and actual prejudice was sustained).

Section § 2-607 cannot be read in a vacuum. UCC §1-201 makes very clear that defendant Seventh Generation acquired timely "notice" of the breach of warranty. The words "notice" and "notify" are defined and explained in UCC § 1-201 as follows:

(25)   A person has "notice" of a fact when

(a) he has actual knowledge of it; or

(b) he has received a notice or notification of it; or

(c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists.

A person "knows" or has "knowledge" of a fact when he has actual knowledge of it. "Discover" or "learn" or a word or phrase of similar import refers to knowledge rather than to reason to know. The time and circumstances under which a notice or notification may cease to be effective are not determined by this Act.

(26)   A person "notifies" or "gives" a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it. A person "receives" a notice or notification when

(a) it comes to his attention; or

(b) it is duly delivered at the place of business through which the contract was made or at any other place held out by him as the place for receipt of such communications.

(27)   Notice, knowledge or a notice or notification received by an organization is effective for a particular transaction from the time when it is brought to the attention of the individual conducting that transaction, and in any event from the time when it would have been brought to his attention if the organization had exercised due diligence. An organization exercises due diligence if it maintains reasonable routines for communicating significant information to the person conducting the transaction and there is reasonable compliance with the routines. Due diligence does not require an individual acting for the organization to communicate information unless such communication is part of his regular duties or unless he has

reason to know of the transaction and that the transaction would be materially affected by the information.

Taking the sections together, one U.S. District Court, interpreting Pennsylvania law stated: "It is thus clear that nothing in section 1201 or 2607 [*i.e.*, Pennsylvania's corresponding UCC §§ 1-201 & 2-607] specifically prohibits a civil complaint from serving as notice of a breach of warranty." *Bednarski v. Hideout Homes & Realty, Inc.*, 709 F. Supp. 90, 93 (M.D. Pa. 1988). Another federal court, the Ninth Circuit, held that such notice need not precede the commencement of suit, but may precede the filing of a supplemental complaint, so long as it is reasonably timely. *Hampton v. Gebhardt's Chili Powder Co.*, 294 F. 2d 172, 173 (9th Circuit 1961) ("The district court in its construction of California authorities ruled that notice must precede filing of the original complaint. Judgment was rendered in favor of the defendants and the plaintiff has appealed. We have concluded that the district court was in error."); see also *In Re Hydroxycut Marketing & Sales Practices Lit.*, 801 F. Supp. 2d 993 (S.D. Cal. 2011) ("The Court declines to require Plaintiff to provide more specific facts regarding notice at this time because pre-litigation notice is not strictly required under the laws of a number of states. A significant body of case law from around the country holds that the reasonable notice requirements of UCC § 2-607(3)(a) should be judged under a relaxed standard when the suit is brought by a retail consumer of the product." (Internal quotes, punctuation and citations omitted)); *Shooshanian v. Wagner*, 672 P. 2d 455 (Alaska 1983) ("We hold that, by filing a complaint and serving process on Borden, the Shooshanians satisfied the notice requirement of AS 45.02.607(c)(1)."); *Davidson v. Wee*, 379 P. 2d 744 (Arizona 1963) (Where the complaint itself gives notice, there is no need for additional parallel notice. Notice need not take any special form, since no particular mode of notice is required by the statute, and what constitutes notice is

16

liberally construed. Moreover, the defendants made no claim that they were prejudiced by that they were prejudiced.)

Addressing a point that defendant Seventh Generation might make in reply – whether pre-suit notice is necessary in order to facilitate good-faith bargaining – the U.S. District Court in New Jersey rejected the idea in *Strzakowlski v. General Motors Corporation*, 2005 U.S. Dist. LEXIS 18111 (D.NJ 2005) *14:

> GM asserts that permitting notice-by-suit would undermine the purpose of the UCC's notice requirement by disallowing the seller an opportunity to cure an alleged breach without the necessity for litigation. This characterization of section 2-607(3)(a)'s purpose ignores Comment 4 of that section, which provides in part:
>
> > The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched. There is no reason to require that the notification which saves the buyer's rights under this section must include a clear statement of all the objections that will be relied on by the buyer . . . . Nor is there reason for requiring the notification to be a claim for damages or of any threatened litigation or other resort to a remedy. The notification which saves the buyer's rights under this Article need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation.
>
> Uniform Commercial Code § 2-607, Comment 4 (emphasis added). Thus, Comment 4 indicates that the purpose of the notice requirement is simply to spearhead settlement through negotiation. This, however, does not necessarily mean that negotiation and simultaneous litigation are mutually exclusive. Rather, common pre-trial practices suggest that the opposite is true. For these reasons, GM's motion to dismiss for failure to state a claim as to the breach of warranty issue is denied.

*Strzakowlski*, 2005 U.S. Dist. LEXIS 18111 at *14.

Under New York law, the complaint itself provided defendant Seventh Generation notice of its alleged breaches of warranty. To the extent that the defendant wishes to argue otherwise, it is an issue that it may present to the jury, in its defense.

**B.    The Alleged Breaches of Implied Warranties (Plaintiff's Fourth and Fifth Causes of Action) State Viable Claims.**

Breaches of implied warranties also concern buyer disappointment, but the assessment of the buyer's disappointment includes an assessment of the product's performance, not just the express promises that the seller made. "While the strict products concept of a product that is 'not reasonably safe' requires a weighing of the product's dangers against its over-all advantages, the U.C.C.'s concept of a 'defective' product requires an inquiry only into whether the product in question was fit for the ordinary purposes for which such goods are used. The latter inquiry focuses on the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners. The cause of action is one involving true 'strict' liability, since recovery may be had upon a showing that the product was not minimally safe for its expected purpose – without regard to the feasibility of alternative designs or the manufacturer's 'reasonableness' in marketing it in that unsafe condition. "This distinction between the 'defect' analysis in breach of implied warranty actions and the 'defect' analysis in strict products liability actions is explained by the differing etiology and doctrinal underpinnings of the two distinct theories. The former class of actions originates in contract law, which directs its attention to the purchaser's disappointed expectations; the latter originates in tort law, which traditionally has concerned itself with social policy and risk allocation by means other than those dictated by the marketplace." *Denny v. Ford Motor Co*., 87 N.Y.2d 248, 259, 639 N.Y.S.2d 250 (1995) (citation omitted).

Here, it has been alleged that defendant Seventh Generation's products, as sold, were a disappointment to the plaintiff, because they are not safe and non-toxic. That is, regardless of the labeling – as to which, there is a claim of breach of express warranty if the products, as sold, are

not as advertised – the plaintiff alleges that the products were disappointing, because they are not safe and non-toxic. Accordingly, the claim of breach of implied warranty must stand.

### C. The Alleged Breach of GBL § 349 (Plaintiff's First Cause of Action) States a Viable Claim.

The law in New York is well settled: "injury is adequately alleged under GBL §§ 349 or 350 by stating that a plaintiff paid a premium for a product based on defendants' inaccurate representations." *Ackerman v. Coca-Cola Co*., 2010 U.S. Dist. LEXIS 73156, * 9, n. 5 (E.D.N.Y. July 21, 2010). And, in *Goldemberg v Johnson & Johnson Consumer Cos*., 2014 U.S. Dist. LEXIS 47180 * 33 (S.D.N.Y March 27, 2014), the court explained that even a bare allegation that the plaintiff paid a premium for the product is sufficient to survive FRCP 12(b)(6) scrutiny. Further, in *Dash v Seagate Tech. (US) Holdings, Inc.*, 2014 U.S. Dist. LEXIS 88780, at *9-10 (E.D.N.Y June 30, 2014), the court held that where a plaintiff pleads that a deceptive practice caused him to pay a premium, the injury is sufficiently well-pled. The two statutes bar deceptive trade practices – GBL § 349 generally applies to deceptive trade practices, and GBL § 350 to false advertising.

As noted above, in the case at bar plaintiff Rapoport-Hecht alleged that she paid a substantial premium for defendant Seventh Generation's products, well over what she would otherwise have paid if she'd known that the products were not in fact "natural." Plaintiff respectfully reminds the court that it is alleged in the complaint (see ¶42) that the products that defendant Seventh Generation holds out as being "natural" sell at a very substantial premium over similar products that are not falsely held out as being "natural," and sell for over 100% more than similar products that are not misrepresented as being natural. Accordingly, the plaintiff's GBL § 349 claim must stand.

### D.    Plaintiff Has Properly Sought Injunctive Relief to Put an End to Defendant's Deceptive Marketing Practices.

Defendant argues that plaintiff lacks standing for injunctive relief. But, as explained in

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 24-25 623

N.Y.S.2d 529 (1995), the New York Court of Appeals stated: (emphasis added)

> Section 349 (a) of the General Business Law declares as unlawful "[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state," with no further elaboration of the prohibited conduct. As enacted in 1970, the statute entrusted sole enforcement power to the Attorney-General. ***A decade later, the Legislature added a private right of action for "any person who has been injured by reason of any violation of this section," allowing injunctive relief and damages, as well as reasonable attorney's fees*** (General Business Law § 349 [h]; see also, Note, New York Creates a Private Right of Action to Combat Consumer Fraud: Caveat Venditor, 48 Brook L Rev 509).

> As shown by its language and background, section 349 is directed at wrongs against the consuming public. General Business Law article 22-A, of which section 349 is a part, is entitled "Consumer Protection from Deceptive Acts and Practices." The structure of the law, with the Attorney-General initially wielding sole enforcement power in the name of the State, speaks to its public focus. Finally, the Governor's Memorandum approving the bill (L 1970, ch 43) lauds its consumer-protective purpose:

>> "Consumers have the right to an honest market place where trust prevails between buyer and seller. The power to obtain injunctions against any and all deceptive and fraudulent practices will be an important new weapon in New York State's long standing efforts to protect people from consumer frauds" (Mem of Governor Rockefeller, 1970 NY Legis Ann, at 472).

Likewise, in *Ackerman v. Coca-Cola Co*., 2013 U.S. Dist. LEXIS 184232, 56 (E.D.N.Y.

July 17, 2013), the court stated, "courts have consistently held that plaintiffs have standing to

seek injunctive relief based on the allegation that a product's labeling or marketing is misleading

to a reasonable consumer. To hold otherwise would effectively bar any consumer who avoids the

offending product from seeking injunctive relief." Further, in *Belfiore v. P&G*, 2015 U.S. Dist.

LEXIS 38170 (E.D.N.Y. Mar. 20, 2015), the court explained that that if it were to deviate from

the holding in *Ackerman* (relative to injunctive relief and standing), it would effectively

"denigrate the New York consumer protection statute, designed as a major support of consumers who claim to have been cheated." Accordingly, the court explained that "an injunction in connection with a class action is designed to afford protection of future consumers from the same fraud. It does this by permitting the plaintiff to sue on their behalf. Given plaintiff's dissatisfaction with (defendant's product), it is unlikely he will re-purchase the product again. No information to the contrary has been provided. Based on the law as interpreted, he has standing." See also, *Koehler v. Litehouse, Inc.*, No. 12 CV 04055, 2012 U.S. Dist. LEXIS 176971, at *6 (N.D. Cal. Dec. 13, 2012) (concluding that the plaintiff had standing to sue for injunctive relief even though he admitted he did not intend to make another purchase of the product in question because the product did not "boost immunity" as advertised); see also *Larsen v. Trader Joe's Co.*, No. 11 CV 05188, 2012 U.S. Dist. LEXIS 162402, at *4 (N.D. Cal. June 14, 2012) (holding that plaintiffs had standing to seek injunctive relief even though they would not purchase the food items in question again because of their synthetic ingredients); *Gelb v. Am. Tel. & Tel. Co.*, 150 F.R.D. 76, 77 n.3 (S.D.N.Y. 1993) ("The fact that Plaintiff is now an 'inactive' cardholder does not strip him of standing to sue nor does he fail to fulfill the 'typicality' or 'adequacy' requirements of Rule 23(a) for this reason.

In the case at bar, the plaintiff alleges that defendant Seventh Generation's products are marketed to consumers and to the plaintiff in particular (see, e.g., ¶¶ 4, 9, 17, 18, 28, 29, 33, 34, 39, 41, 54). The defendant marketed its products as being made from "natural" ingredients (see ¶¶ 8, 10, 39), when, in fact, they contained synthetic ingredients (see, e.g., ¶¶ 16, 28, 40-41, 89). Defendant's representations were false (see ¶¶ 39-41 & passim). Indeed, the defendant marketed its products as "safe" and "hypoallergenic," when, in fact, they contain ingredients that are known toxins and allergens (see, e.g., ¶¶ 11, 15-28, 43). And plaintiff Rapoport-Hecht relied on

21

defendant's promises in deciding to purchase the products at a premium (see ¶¶ 33-34). She thus sustained an actionable injury, and thus has a private right of action, under GBL § 349, to seek injunctive relief, as the New York Court of Appeals noted in *Oswego Laborers' Local 214,* supra.

### E.      Plaintiff Has Properly Sought Punitive Damages.

Plaintiffs have sufficiently alleged a claim for punitive damages stemming from defendant Seventh Generation's willful, wanton and reckless violations of GBL § 349. "[A] claim for punitive damages may be asserted in the context of a cause of action predicated upon an alleged violation of General Business Law § 349." *Ural v Encompass Ins. Co.*, 97 A.D.3d 562, 565, 948 N.Y.S.2d 621 (2d Dep't 2012); *JD&K Associates v. Selective Insurance Group*, 118 A.D.3d 1402, 988 N.Y.S.2d 749 (4th Dep't 2014).

It is erroneous to dismiss punitive damages claims that stem from allegations of deceptive acts and practices in violation of GBL § 349 that involve conduct that transcends mere carelessness. *Weinstein v. Natalie Weinstein Design Assocs.*, 86 A.D.3d 641, 644, 28 N.Y.S.2d 305 (2d Dep't 2011). As stated in *Weinstein*:

> The plaintiffs' ninth cause of action asserted against Natalie and Design Associates seeks to recover punitive damages. … [W]ith respect to Design Associates, to the extent the plaintiffs' punitive damages claim stems from the allegations of deceptive trade practices and false advertising, "such conduct may be considered to be so flagrant as to transcend mere carelessness" (*Wilner v Allstate Ins. Co.*, 71 A.D.3d 155, 167 [893 N.Y.S.2d 208 (2d Dep't 2010)]). As such, the punitive damages claim should not have been dismissed insofar as asserted against Design Associates.

Thus, as noted in *Weinstein* (citing *Wilner*), a punitive damages award is warranted where, as is alleged in the case at bar, the defendant's conduct evinces willful or wanton negligence or recklessness or a high degree of moral culpability. *Wilner v. Allstate Ins. Co.*, 71 A.D.3d 155, 167, 893 N.Y.S.2d 208 (2d Dep't 2008).

Plaintiffs sufficiently alleged that defendant Seventh Generation wantonly and recklessly engaged in deceptive acts and practices in violation of GBL § 349. The defendant has held out to consumers that it has "clinically tested" its products, and has "clinically proven" them to be hypoallergenic (¶ 11), and willfully and deceptively marketed its products as "natural" (see, e.g., ¶¶ 8, 10, 39-41 & passim), when, in fact, they contained synthetic ingredients and known allergens (see, e.g., ¶¶ 11, 15-28, 40-41, 43, 89). Furthermore, defendant Seventh Generation did this intentionally so that users would pay a premium of 100%, and more, for its products, as compared to comparable products that are not held out as being natural and hypoallergenic. The plaintiff clearly alleged that defendant was more than willing to mislead and jeopardize the health of consumers in order to increase its bottom line. Accordingly, the plaintiff has sufficiently alleged claims for punitive damages pursuant to GBL § 349, and defendant's motion to dismiss plaintiff's claim therefor must be denied.

## Conclusion

For the reasons set forth above, plaintiff Tziva Rapoport-Hecht, individually on behalf of herself and others similarly situated, respectfully requests that the court deny defendant Seventh Generation, Inc.'s motion to dismiss the First (Violation of GBL § 349), Third (Breach of Express Warranty), Fourth (Breach of Implied Warranty of Merchantability) and Fifth (Breach of Implied Warranty of Fitness for a Particular Purpose) causes of action, as well as the prayers for injunctive relief and punitive damages, must be denied. In the event, however, that the court finds any deficiency in the complaint, it is respectfully submitted that leave to replead must be granted, in accordance with *Williams v. Citigroup Inc.*, 659 F. 3d 208 (2d Cir. 2011).

Dated: June 19, 2015

Respectfully submitted,

Joseph Lipari /s/

_____

Joseph Lipari, Esq. (Bar ID #: JL3194)
Jason P. Sultzer, Esq. (Bar ID #: JS4546)
The Sultzer Law Group, P.C
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY
Tel: (845) 483-7100
Tax: (888) 749-7747
liparij@thesultzerlawgroup.com
sultzerj@thesultzerlawgroup.com

*Counsel for Plaintiff and the Class*
