UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
TZIVA RAPOPORT-HECHT, individually on ) 14-CIV-9087 (KMK)
behalf of herself and all others similarly )
situated, )
 )
 ) **ORAL ARGUMENT**
                                   Plaintiff, ) **REQUESTED**
 )
v. )
 )
SEVENTH GENERATION, INC. )
 )
                                   Defendant. )
---------------------------------------------------------------x

# DEFENDANT SEVENTH GENERATION INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS (FED. R. CIV. PROC. 12(b)(6))

Daniel J. Herling (*Admitted Pro Hac Vice*)
Djherling@mintz.com
Michelle Gillette (*Admitted Pro Hac Vice*)
Mgillette@mintz.com
Joshua T. Foust (NY Bar ID #4736781)
Jtfoust@mintz.com
MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO PC
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
Telephone #: (415) 432-6000
Facsimile #: (415) 432-6001

Francis J. Earley (SBN 2941680)
fjearley@mintz.com
MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO PC
Chrysler Center
666 Third Avenue
New York, NY 10017
Telephone #: (212) 935-3000
Facsimile #: (212) 983-3115

Counsel for Defendant
SEVENTH GENERATION, INC.

Defendant Seventh Generation, Inc. respectfully submits this Reply in response to Plaintiff's Opposition [ECF No. 28] to its Motion to Dismiss Plaintiff's Complaint [ECF No. 23] pursuant to Fed. R. Civ. P. 12(b)(6).

Despite 23 pages of argument, Plaintiff's Opposition 1) fails to establish that her allegations satisfy the pleading standard articulated by *Twombly/Iqbal*; 2) fails to overcome the privity and notice that are required for express warranty claims and lacking from her allegations; 3) fails to even address the cases cited to in the Motion regarding the pleading requirements for her express warranty, implied warranty, and GBL § 349 claims; 4) fails to circumvent the Supreme Court's standing requirement for her injunctive relief claims; and 5) fails to demonstrate that her vague allegations meet the heightened pleading standard for punitive damages relief. Seventh Generation's Motion should be granted.

## I.    Plaintiff Misstates the *Twombly/Iqbal* Pleading Standard

This Motion boils down to one underlying fact: Plaintiff has not sufficiently pled allegations so as to satisfy the pleading standard articulated by *Twombly*, *Iqbal*, and their extensive progeny. Plaintiff dances around this standard in her Opposition and puts forth her own unsubstantiated standard: "it is the claim for relief – when considered in light of all of the allegations – that must be plausible, not any specific allegation itself." (Opp. at 2). But the actual standard under *Twombly/Iqbal* "creates a 'two-pronged approach'" that <u>first</u> analyzes whether plaintiff has plead *sufficient factual allegations* that provide "'more than an unadorned, the-defendant-unlawfully-harmed-me accusation'" and then, only "when there are well-pleaded factual allegations," the court can "determine whether they plausibly give rise to an entitlement to relief." *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Ultimately, "[t]o survive a motion to dismiss, a complaint must contain *sufficient factual matter* … to 'state a claim [for]

1

relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plaintiff must first plead sufficient factual content and then, based on these factual allegations, the court determines whether Plaintiff's claim is facially plausible.  *Id.* (finding a claim is facially plausible "when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

Plaintiff is correct that, in deciding a motion to dismiss, a court must accept all *well-pleaded* factual allegations as true (Opp. at 2), but recitals of the elements of a cause of action, supported by mere conclusory allegations are not "entitled to a presumption of truth." *D.S. v. City of Peekskill*, 581 F. App'x 65, 67 (2d Cir. 2014) (citing to *Iqbal*, 556 U.S. at 681).  Facts pled that are merely consistent with a defendant's liability "stop[] short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 681.  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.* at 570.

As demonstrated in the Motion and reiterated below, Plaintiff's conclusory allegations are not entitled to the presumption of truth and fail to nudge Plaintiff's claims across the line between possible and plausible.  In fact, her allegations are so vague and conclusory that they fail to even give Seventh Generation "fair notice…of what the…claim is and the grounds upon which it rests," as required by Federal Rule of Civil Procedure 8(a)(2). *See Twombly*, 550 U.S. at 555.  Plaintiff attempts to gloss over the fact that she fails to allege which products she purchased, when she purchased them, and where she purchased each product by arguing that this information can be "clarified through the discovery process." (Opp. at 3).  But, under Rule 8(a)(2), Seventh Generation is owed fair notice, upon commencement of the suit, of Plaintiff's

2

claims and facts about the products at issue are at the core of those claims. The Complaint must, therefore, be dismissed.

### II. Plaintiff's Express Warranty Claim Fails Due to Lack of Privity and Notice

The Complaint lacks sufficient factual allegations of privity and pre-suit notice, which are required to sustain Plaintiff's express warranty claim. *See Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014); *Ebin v. Kangadis Food, Inc.*, 2013 U.S. Dist. LEXIS 174174 (S.D.N.Y. Dec. 19, 2013), *DiBartolo v. Abbott Labs*, 914 F. Supp. 2d 601 (S.D.N.Y. 2012). Plaintiff attempts to dismiss the *Koenig*, *Ebin*, and *DiBartolo* decisions by suggesting that they "misconstrue[] New York law" and "incestuously" cite only to other federal cases.[1] (Opp. at 9). Yet it is Plaintiff who misconstrues both these cases and the underlying New York law pertaining to express warranty claims.

First, contrary to Plaintiff's assertion that *Koenig*, *Ebin*, and *DiBartolo* "do not actually analyze New York case law," all three of these SDNY cases expressly reference New York law. *Koenig* and *DiBartolo* expressly cite to N.Y.U.C.C. § 2-313 and § 2-318, which govern express warranty claims, and find that, under the N.Y.U.C.C., privity is required to assert a breach of express warranty claim absent allegations of personal injury. *See Koenig*, 995 F. Supp. 2d at 290; *DiBartolo*, 914 F. Supp. 2d at 624-25. *Ebin*, meanwhile, not only references New York law, but outright distinguishes the New York state court case Plaintiff attempts to rely on, *Randy Knitwear*, stating: "Plaintiffs contend that in New York, privity is no longer required as a result of Judge Fuld's decision in *Randy Knitwear*…. However, plaintiffs neglect to mention that *Randy Knitwear* preceded the enactment of the UCC, which displaced it." *Ebin*, 2013 U.S. Dist.

---

[1] Plaintiff's repeated assertion that Defendant incorrectly "cites to federal cases, rather than New York case law" (Opp. at 11), apart from being incorrect under the *Erie* Doctrine (federal courts in diversity actions apply the substantive law of the state in which they sit) and principles of *stare decisis*, is belied by her own reliance on federal law throughout her Opposition.

3

LEXIS 174174, at *16-17.  Plaintiff's attempt to dismiss these cases as somehow irrelevant or incorrect is unavailing.  These cases, among others, clearly demonstrate that privity is still a requirement for breach of express warranty claims in New York.  This is what makes the *Ault* case an outlier.  Not only does the *Ault* decision run against the majority view in this district to require privity, but the decision's brief discussion of the issue lacks analysis.  Further, *Ault*, in finding that privity is not a requirement, cites to another S.D.N.Y. case (*Goldemberg v. Johnson & Johnson Consumer Cos.*) which, in turn, bases its decision on a New York state case (*Arthur Glick Leasing, Inc. v. William J. Petzold, Inc.*) that relies on *Randy Knitwear*.  As highlighted by the court in *Ebin*, *Randy Knitwear* predates enactment of the U.C.C., which displaced it.  *Id*.

Second, Plaintiff misunderstands the New York cases she cites to that interpret the pre-lawsuit notice requirement for express warranty claims.  She argues that "New York cases that have addressed the issue…hold that a lawsuit itself may constitute the timely notice of a breach of warranty."  (Opp. at 11-12).  As with the privity requirement inquiry, the cases cited predating enactment of the UCC (i.e., *Silverstein v. R.H. Macy & Co.*) are irrelevant as moot.  *See Ebin*, 2013 U.S. Dist. LEXIS 174174, at *16-17.  The primary case Plaintiff relies on, *Fischer v. Mead Johnson Laboratories*, represents a narrow exception to the notice requirement of N.Y.U.C.C. § 2-607 for cases involving tortious personal injury and products meant for immediate consumption.  *See, e.g., Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 273 (N.Y. 1995) (Simons, J., dissenting) (suggesting that a requirement of timely notice should not be imposed in cases involving "tortious personal injury," and citing *Fischer*).  Plaintiff even acknowledges this distinguishing characteristic of *Fischer* and attempts to triage by claiming that, though not meant for consumption, the Seventh Generation products are allegedly "toxic and allergenic."  (Opp. at

13-14).  Yet that does not place Plaintiff's claims within the *Fischer* exception because Plaintiff has alleged neither personal injury, nor that the products were meant for immediate consumption.

Similarly, *Panda Capital Corp. v. Kopo Intl., Inc.*, 662 N.Y.S.2d 584 (2d Dep't 1997), does not stand for the proposition for which Plaintiff cites it—that a complaint always satisfies the § 2-607 notice requirement.  While the court in Panda did find that "the complaint and subsequent amended complaint in this action themselves constituted … notice" (*id.* at 586-87), it also observed that the seller "had repeatedly made its objections to [the buyer's] pattern of performance" known prior to bringing suit.  *Id.* at 587.  Thus, Panda Capital cannot be read as establishing a per se rule that a complaint, without other forms of pre-suit notice, is sufficient to satisfy the § 2-607 notice requirement, especially given that the purpose of the notice requirement is "to inform the seller that, even though his tender has been accepted by the buyer, his performance is nonetheless considered a breach of contract." *In re Frito-Lay N. Am., Inc.*, 2013 U.S. Dist. LEXIS 123824, at *86 (E.D.N.Y. Aug. 29, 2013).

As cases such as *In re Frito-Lay N. Am., Inc.* demonstrate, Plaintiff cannot maintain an action for breach of express warranty without complying with the notice requirement of N.Y.U.C.C. § 2-607(3)(a).  Plaintiff's excessive tangent on U.C.C. § 1-201 and her reference to case law from various non-New York states does not change this fact.  Because Plaintiff has not alleged facts beyond conclusory statements regarding notice,[2] including when and how notice was given, her express warranty claim should be dismissed for lack of pre-lawsuit notice.

---

[2] The Complaint includes vague and conclusory statements regarding notice: "Defendant was given opportunities to cure its default but refused to do so" (Compl. ¶ 83); "Within a reasonable amount of time after [Plaintiff] discovered that the Products contain synthetic ingredients that are associated with human toxicity, [she] notified the Defendant of such breach" (Compl. ¶ 91).  If Plaintiff's stance is actually that her Complaint serves as the notice required by N.Y.U.C.C. § 2-607, that begs the question – why did she choose to allege notice in her Complaint, albeit insufficiently?  This suggests that Plaintiff, recognizing the insufficiency of her allegations

### III. Plaintiff's Breach of Express Warranty Claim is Not Sufficiently Pled

As the Motion demonstrates, allegations of an express warranty based in vague and abstract terms (i.e. that the product is "safe") do not meet the plausibility standard to state a claim for breach of express warranty. *See, e.g., Prue v. Fiber Composites, LLC*, 2012 U.S. Dist. LEXIS 54027, at *10 (E.D.N.Y. Apr. 17, 2012); *Bertini v. Smith & Nephew, Inc.*, 2012 U.S. Dist. LEXIS 171021, at *5 (E.D.N.Y. July 15, 2013). Plaintiff fails to address the cases cited to in the Motion and, instead, attempts to amend her express warranty allegations by rewording the allegations in her Opposition. (Opp. at 7). This she cannot do. *See, e.g., Fattoruso v. Hilton Grand Vacations Co., LLC*, 873 F. Supp. 2d 569, 578 (S.D.N.Y. 2012) ("[I]t is well-established that a plaintiff may not amend his pleading with allegations in an opposition to a motion to dismiss...."). The allegations in the Complaint are too vague to support Plaintiff's breach of express warranty claim and her attempted amendment of these allegations cannot now save her claim from dismissal.

### IV. Plaintiff's Implied Warranty Claims Must Fail

First, Plaintiff's implied warranty claims must fail for lack of privity. Though Plaintiff alludes to the privity requirement as it relates to implied warranty claims (Opp. at 11), she fails to actually address the well-developed Second Circuit precedent establishing that privity is an essential element for implied warranty claims. *See Ebin*, 2013 U.S. Dist. LEXIS 174174, at *6; *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 249 (2d Cir. 1986); *Westchester Cnty. v. Gen. Motors Corp.*, 555 F. Supp. 290, 294 (S.D.N.Y.). Plaintiff has failed to allege privity with Seventh Generation and her implied warranty claims should be dismissed on this basis alone.

---

regarding notice, has turned to "Plan B"—arguing that the Complaint is notice enough. Such inconsistencies in Plaintiff's positioning should inform the Court's analysis on this point.

Second, Plaintiff attempts to base her implied warranty of merchantability and implied warranty of fitness for particular purpose claims on mere "disappointment" with Defendant's products. (Opp. at 18). Yet these causes of action each require something more than mere "disappointment." The implied warranty of merchantability "requires that a product [not] be fit for the ordinary uses for which such goods are intended." *Llewellyn v. North Am. Trading*, 1997 U.S. Dist. LEXIS 22142, *24-25 (S.D.N.Y. Dec. 29, 1997). The implied warranty of fitness for a particular purpose requires "a seller know[] or [have] reason to know the particular purpose for which a buyer requires goods, [] know[] or [have reason to] know that the buyer is relying on his special knowledge," and the product not be fit for that purpose. *Abraham*, 795 F.2d 249. Plaintiff's cursory allegations that Defendant's products are advertised as "natural" but contain synthetic ingredients cannot support her implied warranty claims. She has not alleged that the products were not fit for their intended purpose—to *clean*—or that they were not fit a particular purpose for which Plaintiff purchased them (and Defendant had knowledge of). These allegations are lacking from the Complaint and her cursory attempt at arguing that mere "disappointment" should suffice evidences the weakness of her claims.

V.     **Plaintiff's GBL § 349 Allegations Are Not Sufficiently Pled**

Plaintiff's defense of her GBL § 349 solely focuses on whether she has properly alleged injury under GBL § 349, discussing her price premium allegations, and avoids discussing whether she has sufficiently alleged the deceptive scheme that is at the core of such a claim. As demonstrated in the Motion, to state a claim under GBL § 349, Plaintiff must allege 1) a *materially-misleading deceptive act or practice*, 2) which is directed at consumers, 3) that injured Plaintiff as a result. *See Maurizio v. Goldsmith,* 230 F.3d 518, 521 (2d Cir. 2000). Even if Plaintiff has put forth sufficient allegations regarding the injury element of her GBL § 349 claim, which Defendant does not concede, she has failed to allege the essential element of this

7

claim—a deceptive act or practice—and her vague and conclusory claims, sounding in false advertising, do not satisfy this element. *See, e.g., Woods v. Maytag Co.*, 2010 U.S. Dist. LEXIS 116595, at *2 (E.D.N.Y. Nov. 2, 2010). The Opposition fails to speak to these issues at all.

## VI.   Plaintiff Lacks Standing For Her Injunctive Relief Claim

Plaintiff does not deny that she has failed to allege an "immediate threat of further injury," as required for Article III standing, in that she has not pled that she intends to purchase the products again now that she is aware of their alleged mislabeling. Plaintiff instead cites to various decisions, including the Eastern District's decision in *Ackerman v. Coca-Cola Co.*, for the general proposition that "courts have consistently held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer." *Ackerman,* 2013 U.S. Dist. LEXIS 184232, at *57-58 (E.D.N.Y. July 18, 2013) (collecting decisions from California federal courts).

To the extent *Ackerman* and the remaining district court decisions cited to by Plaintiff suggest that plaintiff need not plead a "real and immediate threat of repeated injury" in order to possess standing for injunctive relief claims, they are in tension with established Supreme Court precedent on standing. The Constitution specifically limits the power of federal courts, unlike their state counterparts, to hear disputes in which the plaintiff does not have an immediate individual stake. As the Supreme Court has explained:

> The Article III requirement that a party invoking the jurisdiction of a federal court seek relief for a personal, particularized injury serves vital interests going to the role of the Judiciary in our system of separated powers.… [S]tanding in federal court is a question of federal law, not state law. And no matter its reasons, the fact that a State thinks a private party should have standing to seek relief for a generalized grievance cannot override our settled law to the contrary.

*Hollingsworth v. Perry*, 133 S.Ct. 2652, 2667 (2013); *accord City of Los Angeles v. Lyons*, 461 U.S. 95, 102 ("[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the

8

threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy.… The plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' … and the injury or threat of injury must be both 'real and immediate,' not conjectural or hypothetical.") (citations omitted); *see also Garrison v. Whole Foods Mkt. Grp., Inc.*, 2014 WL 2451290, at *5 (N.D. Cal. June 2, 2014) ("It may very well be that the legislative intent behind California's consumer protection statutes would be best served by enjoining deceptive labeling…. But the power of federal courts is limited, and that power does not expand to accommodate the policy objectives underlying state law.").

Recognizing this principle, other courts in this circuit have declined to follow *Ackerman*, instead finding that "a plaintiff lacks standing to seek injunctive relief if his injury is not ongoing and he faces no threat of future injury." *Nicosia v. Amazon.com, Inc.*, 2015 U.S. Dist. LEXIS 13560, at *36-37 & n.10 (E.D.N.Y. Feb. 4, 2015) ("This Court declines to follow [*Ackerman*] because [*City of Los Angeles v. Lyons*] remains binding precedent.") (citing *Carver v. City of New York*, 621 F.3d 221, 228 (2d Cir. 2010); *Robidoux v. Celani*, 987 F.2d 931, 938 (2d Cir. 1993)); *see also Tomasino v. Estee Lauder Companies Inc.*, 2014 U.S. Dist. LEXIS 119747, at *2-3 (E.D.N.Y. Aug. 26, 2014) (finding that plaintiff, who alleged she "remain[ed] a potential...customer and [wa]s likely to be misled again," nonetheless failed to allege "a sufficient future injury to establish standing to assert her claims for injunctive relief" because she did not allege she was likely to purchase the products at issue again). Plaintiff's reliance on *Ackerman* thus does not change the conclusion here, under Supreme Court precedent, that she lacks Article III standing to seek injunctive relief because she has not pled that she faces threat of future injury.

//

### VII. Plaintiff Has Not Met the Heightened Standard for Punitive Damages

Plaintiff does not disagree that the pleading standard for punitive damages is heightened, nor does she refute the Second Circuit cases in the Motion establishing this standard. Under this standard, Plaintiff must allege that there were "circumstances of aggravation and outrage such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called willful or wanton." *Miteva v. Third Point Mgmt. Co.*, 323 F. Supp. 2d 573, 587 (S.D.N.Y. 2004). Rather, Plaintiff argues that her allegations satisfy the standard because they "stem from allegations of deceptive acts and practices in violation of GBL § 349." (Opp. at 22). However, Plaintiff has merely put forth vague and conclusory allegations that sound in false advertising in order to support her GBL § 349 claim. As demonstrated in the Motion, these allegations are woefully insufficient to state a claim for relief under GBL § 349, so they are likewise insufficient to support punitive damages—which applies an even more demanding pleading standard.

Specifically, Plaintiff points to the following allegations in support of punitive damages: 1) that Defendant represents its products to be hypoallergenic, 2) that Defendant marketed its products as "natural," and 3) that the products contain synthetic ingredients. (Opp. at 23). She urges that, on the back of these allegations alone, the Court find that she has plead the requisite "evil motive" necessary for punitive damages. *See Miteva*, 323 F. Supp. 2d at 587. But these allegations—too vague to support *any* of her causes of action—simply cannot support a claim that Defendant acted with "a high degree of moral turpitude or wanton dishonesty" required to support a remedy for punitive damages. *See Brown Rudnick, LLP v. Surgical Orthomedics, Inc.*, No. 13-CV-4348, 2014 U.S. Dist. LEXIS 96097, at *33 (S.D.N.Y. July 15, 2014) (quotations and citations omitted).

DATED:  July 9, 2015

Respectfully submitted,
MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO PC


By:  */s/ Francis J. Earley*
Daniel J. Herling (*Admitted Pro Hac Vice*)
Djherling@mintz.com
Michelle Gillette (*Admitted Pro Hac Vice*)
Mgillette@mintz.com
Joshua T. Foust (NY Bar ID #4736781)
Jtfoust@mintz.com
MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO PC
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
Telephone #: (415) 432-6000
Facsimile #: (415) 432-6001

Francis J. Earley (NY Bar ID #2941680)
fjearley@mintz.com
MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO PC
Chrysler Center
666 Third Avenue
New York, NY 10017
Telephone #: (212) 935-3000
Facsimile #: (212) 983-3115

Counsel for Defendant
SEVENTH GENERATION, INC.

42249919v.3