**THE SULTZER LAW GROUP, P.C.**
Jason P. Sultzer, Esq.
*sultzerj@thesultzerlawgroup.com*
Joseph Lipari, Esq.
85 Civic Center Plaza, Suite 104
Poughkeepsie, New York 12601
Telephone: (854) 705-9460
Facsimile: (888) 749-7747

**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Attorneys for Plaintiffs*
[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TZIVA RAPOPORT-HECHT, MAGGIE TSAN, and ERICA WILDSTEIN, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SEVENTH GENERATION, INC,<br><br>Defendant. | Case No. <u>7:14-CV-09087-KMK</u><br><br><u>AMENDED CLASS ACTION COMPLAINT:</u> |

Plaintiff Tziva Rapoport-Hecht, Meggie Tsan, and Erica Wildstein ("Plaintiffs") file this Class Action Complaint on behalf of themselves and others similarly situated, against Seventh Generation, Inc. ("Defendant") demanding a trial by jury, and allege as follows:

## SUMMARY OF THE ACTION

1.      This is a proposed class action complaint brought on behalf of a "Nationwide Class," "California Class," a "Florida Class," and a "Multi-State Class," all defined below, of individuals who purchased Defendant's cleaning and personal care products labeled as "Seventh Generation" and "natural," "non-toxic," and/or "hypoallergenic" ("Seventh Generation" or "Products" as defined below). Defendant falsely represents the Products' are "natural," when, in fact, they contain non-natural ingredients. This lawsuit seeks to enjoin Defendant's false and misleading practices and recover damages and restitution on behalf of the class under the applicable state laws.

2.      Defendant manufactures, markets, and sells natural cleaning supplies, paper products, and personal care products. Defendant professes that its products "are healthy solutions for the air, surfaces, fabrics, pets and people within your home and for the community and environment outside of it."[1] To that end, Defendant describes itself as "a leading brand of green household and personal care products . . . we remain committed to creating products that are mindful solutions for pets, people, communities and the environment."[2]

3.      Twenty-three of Defendant's individual cleaning and personal care products (the "Products" or individually, "Product") are deceptively labeled as natural, non-toxic, and/or

---

[1] Seventh Generation, http://www.seventhgeneration.com/about (last visited Apr. 25, 2016).

[2] Seventh Generation, http://www.seventhgeneration.com/sites/default/files/assets/pdf/SeventhGeneration_Background er.pdf (last visited Aug 28th 2013).

hypoallergenic, despite containing non-natural ingredients, some of which are hazardous to human health. The following products all contain multiple synthetic and/or highly processed ingredients:

A.   All Purpose Cleaner

B.   Automatic Dishwasher Gel

C.   Baby Foaming Shampoo & Wash

D.   Baby Lotion

E.   Baby Natural 4X Laundry Detergent

F.   Baby Natural Laundry Stain & Spot Spray

G.   Baby Shampoo & Wash

H.   Bubble Bath

I.   Glass & Surface Cleaner

J.   Hand Soap

K.   Laundry Powder

L.   Liquid Fabric Softener

M.   Natural 2X Concentrated Baby Laundry Liquid

N.   Natural 4X Concentrated Baby Laundry Liquid

O.   Natural 2X Concentrated Liquid Laundry Detergent

P.   Natural 4X Concentrated Liquid Laundry Detergent

Q.   Natural Bottle & Dish Liquid

R.   Natural Dish Liquid

S.   Natural Dish Liquid – Hand Care Formula

T.   Natural Laundry Detergent Packs

U.      Natural Laundry Stain Remover

V.      Natural Nursery & Toy Cleaner

W.      Shower Cleaner

4.      The word "natural" is prominently displayed on the front label of each and every Products' packaging.

5.      To the detriment of the consumer, the Products are not, in fact, natural. All of the Products contain at least one or more of the following non-natural ingredients: benzisothiazolinone ("BIT"), methylisothiazolinone ("MIT"), laureth-6, sodium lauryl sulfate, lauramine oxide, sodium citrate, glycerin, and sodium hydroxide.

6.      As guidance of what a reasonable consumer may think is synthetic, in 2013, the USDA issued a Draft Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic (Natural). In accordance with this decision tree, a substance is natural−as opposed to synthetic−if: (a) it is manufactured, produced, or extracted from a natural source (i.e. naturally occurring mineral or biological matter); (b)it has not undergone a chemical change (i.e. a process whereby a substance is transformed into one or more other distinct substances) so that it is chemically or structurally different than how it naturally occurs in the source material; or (c) the chemical change was created by a naturally occurring biological process such as composting, fermentation, or enzymatic digestion or by hearing or burning biological matter.[3]

7.      As further guidance of what a reasonable consumer may think is natural, the United States Department of Agriculture ("USDA") in the United States Code of Federal

_____

[3] USDA, *Draft Guidance Decision Tree Classification of Materials as Synthetic or Nonsynthetic*, *available at* https://www.ams.usda.gov/sites/default/files/media/NOP-Synthetic-NonSynthetic-DecisionTree.pdf.

Regulations ("US CFR") specifically classifies the following ingredients as synthetic substances: sodium citrate; glycerin; and sodium hydroxide.[4]

8.      As yet further guidance of what a reasonable consumer may think is natural, the Natural Products Association ("NPA"), a respected industry trade group, refuses to certify as natural any products that contain: laureth-6 or sodium lauryl sulfate—ingredients found in Defendant's natural Products.

9.      Finally, in an obscure document on its website, Defendant admits that BIT and MIT are synthetic.[5]

10.     To label the Products as natural creates consumer deception and confusion. A reasonable consumer purchases the Products believing they are natural based on the Products' labeling. However, a reasonable consumer would not deem the Products natural if he/she knew that the ingredients contained in the Products are synthetic, highly processed and/or non-natural.

11.     In addition to misleading and deceiving consumers into believing that its Products are natural, Defendant also misleads and deceives consumers with false claims about the safety of its so-called natural Products, representing the Products to be non-toxic and hypoallergenic.

12.     However, to the detriment of consumers, a number of the Products contain BIT and/or MIT, both of which are toxic to human skin, to the human immune system, and cause contact dermatitis−an allergic reaction. Thus, Defendant has made false claims about the safety and content of its Products, describing them as non-toxic and hypoallergenic.

13.     The additional fact that there is significant evidence indicating that the Products'

---

[4] 7 C.F.R. § 205.605(b).

[5] Seventh Generation, http://www.seventhgeneration.com/ingredients (last visited Apr. 25, 2016).

synthetic contents are also hazardous to human health—contradicting Defendant's representation that the Products are non-toxic and hypoallergenic—only serves to highlight the deception perpetrated by Defendant.

14.     Defendant's misrepresentations about the Products were uniform and were communicated to Plaintiffs, and every other member of the Classes, at every point of purchase and consumption.

## PARTIES

15.     Plaintiff Tziva Rapoport-Hecht is a citizen of New York, residing in Dutchess County. During the class period,[6] Plaintiff Rapoport-Hecht purchased the Products from Stop and Shop in Dutchess County and Walmart in Kingston, New York. Plaintiff Rapoport-Hecht purchased the Products because she believed they were natural, non-toxic, and hypoallergenic products. Plaintiff Rapoport-Hecht believes that natural products do not contain synthetic, highly processed, and/or non-natural ingredients. Plaintiff Rapoport-Hecht would not have spent money and purchased Defendant's Products had she known that they were not natural. However, if Defendant's labeling was truthful, Plaintiff Rapoport-Hecht would have continued purchasing the Products.

16.     Plaintiff Maggie Tsan is a citizen of California, residing in San Mateo County California. During the class period, Plaintiff Tsan purchased Seventh Generation's Laundry Detergent, Hand Soap, and All Purpose Cleaner from her local Target and Walmart. Plaintiff Tsan purchased the Products because she believed they were natural products. Plaintiff Tsan believes that natural products do not contain synthetic, highly processed, and/or non-natural

---

[6] The Class Period shall encompass all sales from November 14, 2008 through the date of entry of class certification (the "Class Period").

ingredients. Plaintiff Tsan would not have spent money and purchased Defendant's Products had she known that they were not natural. However, if Defendant's labeling was truthful, Plaintiff Tsan would have continued purchasing the Products.

17.     Plaintiff Erica Wildstein is a citizen of Florida, residing in Broward County Florida. During the class period, Plaintiff Wildstein purchased Seventh Generation's Natural Dish Liquid, Natural Dishwasher Detergent Gel, and Natural Laundry Detergent from Publix and Target in Cooper City, Florida. Plaintiff Wildstein purchased the Products because she believed they were natural products. Plaintiff Wildstein believes that natural products do not contain synthetic, highly processed, and/or non-natural ingredients. Plaintiff Wildstein would not have spent money and purchased Defendant's Products had she known that they were not natural. However, if Defendant's labeling was truthful, Plaintiff Wildstein would have continued purchasing the Products.

18.     Defendant Seventh Generation ("Defendant") is a corporation organized under the laws of the State of Vermont, with its principal place of business at 60 Lake Street, Burlington, VT 05401. Seventh Generation is thus a citizen of the State of Vermont.

## JURISDICTION

19.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff Rapoport-Hecht is a citizen of the State of New York and Defendant is a citizen of the State of Vermont; and (3) the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.

## VENUE

20.     Pursuant to 28 U.S.C. section 1391(d), venue is proper in this District because

transactions giving rise to the claims occurred in Duchess County, New York.

## SUBSTANTIVE ALLEGATIONS

A.      **Defendant deliberately deceives consumers by falsely labeling the Products as Natural.**

21.     Each year consumers purchase billions of dollars' worth of natural products. In 2009, U.S. consumers purchased $10.9 billion worth of natural/organic personal care and household products; up from $10.4 billion in 2008.[7] Given this strong demand for natural products, it is not surprising that Defendant would label the Products as natural.

22.     Defendant is a producer and marketer of household cleaners, paper products and personal care products.

23.     In order to capture this growing market, Defendant has developed an extensive line of natural products and considers itself to be a "leading brand of household and personal care products."[8]

24.     Each and every one of the Products prominently professes that it is natural on the front label. (*See*, Exs. 2 & 5.)

---

[7] Natural Products Association,
http://www.npainfo.org/NPA/About_NPA/NPA/AboutNPA/AbouttheNaturalProductsAssociation.aspx?hkey=8d3a15ab-f44f-4473-aa6e-ba27ccebcbb8 (last visited Apr. 25, 2016).

[8] Seventh Generation,
http://www.seventhgeneration.com/sites/default/files/assets/pdf/SeventhGeneration_Backgrounder.pdf (last visited Apr. 25, 2016).




25.     In addition to labeling the Products as natural, the following Products claim they are non-toxic and hypoallergenic, when, in fact, they contain ingredients that are toxic to human skin and the human immune system, and are known contact allergens:

26.     Natural Laundry Detergent

27.     Natural 4X Concentrated Laundry Detergent

28.     Ultra Power Plus Natural Laundry Detergent

29.     Natural Dish Liquid

30.     Ultra Power Plus Natural Dish Liquid

31.     Each of these Products' labels state "It's natural!" and also claims that these Products are "non-toxic" and "clinically *proven* to be hypoallergenic," except for the "Natural 4X Concentrated Laundry Detergent," which is labeled as "non-toxic" and "clinically *tested* to be hypoallergenic."

**B.      Defendant's intent to falsely persuade consumers that the Products are natural is confirmed on its website.**

32.     Defendant's marketing of the Products on the Seventh Generation website,

http://www.seventhgeneration.com/, highlights the Products' alleged natural quality.

33.     The Seventh Generation website makes numerous representations to bolster Defendant's claims that the Products are natural. These representations include, but are not limited to, the following:

    A.    A link to a video entitled "natural fragrances from Seventh Generation;" [9]

    B.    A scrolling banner entitled "Our Values," with one panel stating "Nurture Nature: Nature got it right. We know it. That's why we aspire to design products from plants not petroleum, from fields not factories."[10]

    C.    "Natural dish detergent: Get sparkling results from plants, not petroleum;"[11] and

    D.    "Our natural laundry detergents hang wash-day worries out to dry!"[12]

34.     Thus, Defendant's marketing and website confirm its intent to create consumer belief that the Products are natural.

    **C.    The Products are not natural because they contain synthetic, highly processed, and/or non-natural ingredients, and a reasonable consumer would not deem the Products to be natural.**

35.     Despite Defendant's labels and its representations regarding the natural quality of the Products, the truth is the Products are not natural. Defendant uses multiple ingredients: BIT, MIT, laureth-6, sodium lauryl sulfate, lauramine oxide, sodium citrate, glycerin, and sodium

---

[9] Seventh Generation, http://www.seventhgeneration.com/ (last visited Aug. 29, 2013).

[10] *Id*.

[11] Seventh Generation, http://www.seventhgeneration.com/dish-detergent (last visited Aug. 29, 2013).

[12] Seventh Generation, http://www.seventhgeneration.com/laundry-detergent (last visited Aug. 29, 2013).

hydroxide in its products that do not meet the USDA, NPA and/or its own definition of natural, and a reasonable consumer would not deem the Products natural.

36.     Using the USDA and NPA standards as guidance, reasonable consumer would not deem any of the Products containing these ingredients as natural.

37.     BIT is a synthetic preservative that is derived from either petroleum or natural gas and is therefore synthetic by its very nature.[13] BIT is used as an antimicrobial.[14] Seventh Generation admits that BIT is a synthetic preservative on its website, but fails to include this information on the packaging of its products.[15,16]

38.     MIT is derived from either petroleum or natural gas and is therefore synthetic by its very nature.[17] MIT is an EPA registered pesticide.[18] It is used to control slime-forming bacteria, fungi, and algae.[19] Seventh Generation admits, on its website, that MIT is a synthetic preservative.[20] It is produced through the chlorine-induced cyclization of 3.3'-

---

[13] Seventh Generation, http://www.seventhgeneration.com/products/about.

[14] Scientific Committee on Consumer Safety, Opinion on Bexisothiazolinone 8 (2012), *available at* http://ec.europa.eu/health/scientific_committees/consumer_safety/docs/sccs_o_099.pdf.

[15] *See* source cited *supra* note 5.

[16] The following products contain BIT: All Purpose Cleaner; Automatic Dishwasher Gel; Baby Natural 4X Laundry Detergent; Baby Natural Laundry Stain & Spot Spray; Glass & Surface Cleaner; Hand Soap; Liquid Fabric Softener; Natural 2X Concentrated Baby Laundry Liquid; Natural 4X Concentrated Baby Laundry Liquid; Natural 2X Concentrated Liquid Laundry Detergent; Natural 4X Concentrated Liquid Laundry Detergent; Natural Bottle & Dish Liquid; Natural Dish Liquid; Natural Dish Liquid – Hand Care Formula; Natural Laundry Stain Remover; Natural Nursery & Toy Cleaner.

[17] Seventh Generation, http://www.seventhgeneration.com/products/about.

[18] EPA, R.E.D. Facts: Methylisothiazolinone (1998), *available at* http://www.epa.gov/oppsrrd1/REDs/factsheets/3092fact.pdf.

[19] *Id.*

[20] *See* source cited *supra* note 5.

dithiodipropionamides.[21] MIT is a known neurotoxin and is prohibited by the NPA from being included in products that are certified as natural.[22,23]

39.     Laureth-6 (also known as PEG-6 Lauryl Ether) is a synthetic chemical that is produced through an extensive chemical process that involves reacting an alkyl alcohol such as lauryl alcohol with a metal hydroxide such as potassium hydroxide.[24] The product of this reaction is an alkoxide chain which is then reacted with either ethoxide or propoxide and then the solution is mixed with hydrochloric acid to stop the reaction.[25] This process is used to create many varieties of alkyl PEG and PPG ethers.[26] This synthetic process has caused the NPA to ban Laureth-6 from approved natural products.[27,28]

---

[21] Mary Ann Liebert, Inc., *Final Report on the Safety Assessment of Methylisothiazolinone and Methylchloroisothiazolinone*, 11 J. of the Am. Coll. Of Toxicology 75, 79 (1992), *available at* http://legacy.library.ucsf.edu/documentStore/p/h/r/phr77d00/Sphr77d00.pdf

[22] Nat'l Prods. Ass'n, NPA Standard and Certification for Personal Care Products (2010), *available                                                                                                          at* http://www.npainfo.org/App_Themes/NPA/docs/naturalseal/The%20Natural%20Sandard%2004 1112%20final.pdf.

[23] The following products contain MIT: All Purpose Cleaner; Automatic Dishwasher Gel; Baby Natural 4X Laundry Detergent; Baby Natural Laundry Stain & Spot Spray; Glass & Surface Cleaner; Hand Soap; Liquid Fabric Softener; Natural 2X Concentrated Baby Laundry Liquid; Natural 4X Concentrated Baby Laundry Liquid; Natural 2X Concentrated Liquid Laundry Detergent; Natural 4X Concentrated Liquid Laundry Detergent; Natural Bottle & Dish Liquid; Natural Dish Liquid; Natural Dish Liquid – Hand Care Formula; Natural Laundry Stain Remover; Natural Nursery & Toy Cleaner.

[24] Cosmetic Ingredient Review, Safety Assessment of Alkyl PEF-PPG Ethers as Used in Cosmetics (2013), *available at* http://www.cir-safety.

org/sites/default/files/PEG%20PPG%20ethers032013SLR.pdf.

[25] *Id.*

[26] *Id.*

[27] Nat'l Prods. Ass'n, NPA Standard andCertification for Personal Care Products (2010), *available                                                                                                          at* http://www.npainfo.org/App_Themes/NPA/docs/naturalseal/The%20Natural%20Standard%2004 1112%20final.pdf.

40. Sodium Lauryl sulfate ("SLS") is manufactured in a multi-step, non-natural process. First, the coconut oil fatty acids are reduced into lauryl alcohol.[29] Sulfur trioxide or chlorosulfonic acid is added to the lauryl alcohol by a sulfation process.[30] The mixture is then neutralized, often using sodium hydroxide, sodium carbonate, or sodium bicarbonate to form SLS.[31] The SLS is then purified with one or more solvents, such as n-butanol, diethyl ether, or ethanol.[32] Due to this extensive chemical processing, the USDA and FDA consider SLS to be a synthetic substance.[33,34]

41. Lauramine oxide is synthesized by mixing the amine with hydrogen peroxide, then heating.[35] The chemical product is then mixed with either sodium sulfate or manganese

---

[28] The following products contain Laureth-6: Baby Natural 4X Laundry Detergent; Baby Natural Laundry Stain & Spot Spray; Laundry Powder; Natural 4X Concentrated Baby Laundry Liquid; Natural 2X Concentrated Liquid Laundry Detergent; Natural 4X Concentrated Liquid Laundry Detergent; Natural Laundry Detergent Packs; Natural Laundry Stain Remover; Natural Nursery & Toy Cleaner; Shower Cleaner.

[29] ICF Consulting for the USDA Nat'l Organic Program, *Technical EvaluationReport: Sodium Lauryl Sulfate* (2006), *available at* http://www.pharmsolutionsinc.com/docs/NationalOrganicProgramReportonSodiumLaurylSulfate.pdf.

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id. see also* Oral Health Care Drug Product for Over-the-Counter Human Use; Antigingivitis/Antiplaque Drug Products; Establishment of a Monograph; Proposed Rules, 68 Fed. Reg. 32232, 32263.

[34] The following products contain SLS: Baby Natural 4X Laundry Detergent; Natural 2X Concentrated Baby Laundry Liquid; Natural 4X Concentrated Baby Laundry Liquid; Natural 2X Concentrated Liquid Laundry Detergent; Natural 4XConcentrated Liquid Laundry Detergent; Natural Bottle & Dish Liquid; Natural Dish Liquid; Natural Dish Liquid – Hand Care Formula; Natural Laundry Detergent Packs.

[35] *Final Report on the Safety Assessment of Lauramine Oxide and Stearamin* Oxide, 13 J. Am. C. Toxicology 231, (1994), http://online.personalcarecouncil.org/ctfa-static/online/lists/cir-pdfs/pr87.pdf.

dioxide, and filtered.[36] The resulting product is the chemical composition lauramine oxide.[37] It is used in detergents as a surfactant.[38]

42.     Sodium citrate is manufactured by the neutralization of citric acid with either synthetic potassium hydroxide or synthetic sodium hydroxide.[39] The resulting product of this chemical reaction is sodium citrate.[40] Due to its production from synthetic ingredients, it is classified by the USDA as a synthetic.[41,42]

43.     On information and belief, the glycerin contained in the Products is manufactured through chemical processing. In the traditional alkali process, the natural fats and oils are hydrolyzed with a solution of sodium carbonate, sodium hydroxide, or potassium hydroxide.[43] This produces synthetic glycerin and fatty acids.[44] Due to this extensive processing, the US CFR lists glycerin as a synthetic substance.[45,46]

---

[36] *Id*.

[37] *Id*.

[38] The following products contain Lauramine Oxide: All Purpose Cleaner; Natural Bottle & Dish Liquid; Natural Dish Liquid; Natural Dish Liquid – Hand Care Formula.

[39] USDA, TAP Reviewer Comment Form: Potassium Citrate (1995), *available at* http://www.ams.usda.gov/AMSv1.0/getfile?dDocName=STELPRDC5068132.

[40] *Id*.

[41] 7 C.F.R. 205.605(b)

[42] The following products contain Sodium Citrate: Automatic Dishwasher Gel; Baby Natural 4X Laundry Detergent; Baby Natural Laundry Stain & Spot Spray; Laundry Powder; Natural 2X Concentrated Baby Laundry Liquid; Natural 4X Concentrated Baby Laundry Liquid; Natural 2X Concentrated Liquid Laundry Detergent; Natural 4X Concentrated Liquid Laundry Detergent; Natural Laundry Detergent Packs; Natural Laundry Stain Remover.

[43] Draco Natural Prods. to USDA, *Glycerin Petition*, , *available at* http://www.ams.usda.gov/AMSv1.0/getfile?dDocName=STELPRDC5101924.

[44] *Id*.

[45] 7 C.F.R. § 205.605(b).

44.     Sodium hydroxide is produced through the process of electrolysis of a solution of concentrated sodium chloride.[46] Through the process of electrolysis, chlorine gas is released and sodium hydroxide is left in solution.[48] Sodium hydroxide is commonly referred to as caustic soda or lye and is extremely caustic.[49] Because of the chemical reaction and processing used to synthesize sodium hydroxide, the USDA has declared sodium hydroxide to be synthetic.[50,51]

45.     Accordingly, a reasonable consumer would not deem the Products to be natural. Thus, by labeling the Products as natural, Defendant deceives and misleads reasonable consumers.

**D.     A reasonable consumer would not deem the Products to be non-toxic and hypoallergenic because they contain BIT and MIT.**

46.     Despite Defendant's labels and its representations regarding the non-toxic and hypoallergenic quality of the Products, the truth is the Products are not non-toxic and hypoallergenic. Defendant uses BIT and MIT in its Products which are toxic to human skin, to

---

[46] The following products contain Glycerin: Automatic Dishwasher Gel; Baby foaming Shampoo & Wash; Baby Lotion; Baby Natural 4X Laundry Detergent; Baby Natural Laundry Stain & Spot Spray; Baby Shampoo & Wash; Bubble Bath; Hand Soap; Natural 2X Concentrated Baby Laundry Liquid; Natural 4X Concentrated Baby Laundry Liquid; Natural 2X Concentrated Liquid Laundry Detergent; Natural 4X Concentrated Liquid Laundry Detergent; Natural Bottle & Dish Liquid; Natural Dish Liquid; Natural Dish Liquid – Hand Care Formula; Natural Laundry Stain Remover.

[47] USDA, TAP Reviewer Comment Form: Sodium Hydroxide (1995) at 7, *available at* https://www.ams.usda.gov/sites/default/files/media/Sodium%20Hydroxide%20TR.pdf.

[48] *Id.*

[49] *Id.*

[50] 7 C.F.R. 205.605(b).

[51] The following products contain Sodium Hydroxide: Automatic Dishwasher Gel; Baby Natural 4X Laundry Detergent; Baby Natural Laundry Stain & Spot Spray; Natural 2X Concentrated Baby Laundry Liquid; Natural 4X Concentrated Baby Laundry Liquid; Natural 2X Concentrated Liquid Laundry Detergent; Natural 4X Concentrated Liquid Laundry Detergent.

the human immune system, and cause contact dermatitis−an allergic reaction−and thus a reasonable consumer would not deem the Products non-toxic and hypoallergenic.

47.     Both BIT and MIT have been associated with skin toxicity, immune system toxicity, and allergic reactions, and have been identified as possible neurotoxins.[52]

48.     The Environmental Protection Agency has concluded, based on "acute toxicity studies" that MIT is "moderately to highly acutely toxic in oral, dermal, eye irritation, dermal irritation, and inhalation."[53]

49.     The United Nations Globally Harmonized System of Classification and Labeling of Chemicals has classified MIT as a "strong allergen."[54]

50.     In 2013 the American Contact Dermatitis Society named MIT the "Contact Allergen of the Year" because of the preservative's known allergenic properties.[55]

51.     Furthermore, in a March 2014 report by the European Union's Scientific Committee on Consumer Safety ("SCCS") concluded that "current clinical data ... demonstrate[s] a rapidly increasing frequency of contact allergy to [MIT]."[56]

52.     Three recent studies on the issue indicate that MIT causes contact allergy.[57]

---

[52]   *See, e.g.,*http://www.ewg.org/skindeep/ingredient/703935/METHYLISOTHIAZOLINONE; http://www.ewg.org/skindeep/ingredient/716930/BENZISOTHIAZOLINONE/.

[53]   EPA, *R.E.D. Fact: Methylisothiazolinone* (Oct. 1998), *available at* https://archive.epa.gov/pesticides/reregistration/web/pdf/3092fact.pdf.

[54]   Mari Paz Castandeo-Tardana & Kathryn A. Zug, *Methylisothiazolinone*, AMERICAN CONTACT DERMATITIS SOCIETY 24 (Jan./Feb. 2013).

[55]   S*ee* source cited *supra* note 54.

[56]   Scientific Committee on Consumer Safety, *Opinion on: Methlysothiazolinone (P94) Submission II (Sensitisation only)*, EUROPEAN COMMISSION (27 Mar. 2014) at 14, *available at* http://ec.europa.eu/health/scientific_committees/consumer_safety/docs/sccs_o_145.pdf.

[57]   S*ee* source cited *supra* note 54.

53.     Scientific studies cited by the SCCS indicate that BIT is a significant irritant and elicits contact dermatitis-an allergic reaction-in human test subjects.[58]

54.     Because of their allergenic and toxic properties, the use of both BIT and MIT have been restricted in both Japan and Canada.[59]

55.     Accordingly, a reasonable consumer would not deem the Products containing BIT and MIT to be non-toxic and hypoallergenic. Thus, by labeling the Products as non-toxic and hypoallergenic, Defendant deceives and misleads reasonable consumers.

**E.     Reasonable consumers purchase the Products because they have been deceived to believe they are natural.**

56.     Defendant's labeling of the Products as natural unequivocally demonstrates its intent to persuade consumers that the Products are natural because they contain only natural ingredients. However, the Products do not contain only natural ingredients. As described above, some of the ingredients are the result of complex, multi-step processes that involve the use of toxic chemicals. The end products are substances which do not exist in nature, and which could not exist without the complex chemical processes described above.

57.     Defendant's advertising is so blatantly false that the Advertising Self-Regulatory Council (ASRC)−a program of the Council of Better Business Bureaus−issued a decision regarding Defendant's natural claims. The ASRC concluded that Defendant's

> . . . use of natural on the listed products should be qualified to explain that included surfactants are plant-derived or plant based. However, NAD [National Advertising Division] determined that the reference to "naturally" – in the context

---

[58] Scientific Committee on Consumer Safety, *Opinion on: Benzisothiazolinone*, EUROPEAN COMMISSION (26-27 June 2012), *available at* http://ec.europa.eu/health/scientific_committees/consumer_safety/docs/sccs_o_099.pdf.

[59] GoodGuide.com, Methylisothiazolinone Information, http://www.goodguide.com/ingredients/53090-methylisothiazolinone.

of the advertising at issue – be discontinued and that the advertiser avoids conveying the unsupported message that its product is all natural.[60]

58.     Despite the inclusion of synthetic and highly processed substances, Defendant labels and markets the Products as natural.

59.     Reasonable consumers, including Plaintiffs, purchased the Products based upon their belief that they are natural. However, a reasonable consumer would not deem the Products natural if he/she knew that they contained synthetic, highly processed and/or non-natural ingredients.

60.     Hence, Defendant's claims that the Products are natural are false and misleading.

**F.      Reasonable consumers purchase the Products because they have been deceived to believe they are non-toxic and hypoallergenic.**

61.     Defendant's labeling of the Products as non-toxic and hypoallergenic unequivocally demonstrates its intent to persuade consumers that the Products are non-toxic and hypoallergenic because they do not contain synthetic ingredients which are hazardous to human health. However, the Products do not contain synthetic ingredients which are hazardous to human health; specifically BIT and MIT which are toxic to human skin, toxic to the human immune system, and cause contact dermatitis-an allergic reaction.

62.     Despite the inclusion of synthetic ingredients which are hazardous to human health, Defendant labels and markets the Products as non-toxic and hypoallergenic.

63.     Reasonable consumers, including Plaintiffs, purchased the Products based upon their belief that they are non-toxic and hypoallergenic. However, a reasonable consumer would

---

[60] Advertising Self-Regulatory Council, Envtl. Dig., Aug. 24, 2010, at 8, *available at* http://www.asrcreviews.org/wp-content/uploads/2013/02/ASRC-Environmental-Claims-Digest-9-28-12-pdf.pdf.

not deem the Products non-toxic and hypoallergenic if he/she knew that they contained synthetic ingredients which are hazardous to human health.

64.    Hence, Defendant's claims that the Products are non-toxic and hypoallergenic are false and misleading.

**G.    Defendant's claims have damaged consumers.**

65.    Defendant has profited enormously from its false and misleading marketing of the Products. Consumers either would not have purchased the Products had they known the Products' had they known they were not natural, non-toxic and hypoallergenic or would have purchased a less expensive product. By way of example, Defendant currently sells 32 ounce bottle of All Purpose Cleaner for $2.99.[61] Consumers can purchase a 32 ounce bottle of Scrubbing Bubbles® Heavy Duty All Purpose Cleaner for $2.59, or a 32 ounce bottle of Green Works All Purpose Cleaner for $2.69.[62]

## CLASS ALLEGATIONS

66.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23. Plaintiffs seek to represent the following classes:

> A.    The "Nationwide Class," which consists of: All consumers within the United States who purchased the Products during the applicable liability period for their personal use, rather than for resale or distribution. Excluded from the Nationwide Class are Defendant's current or former officers, directors, and employees;

---

[61] Target, http://www.target.com/p/seventh-generation-free-clear-all-purpose-natural-cleaner-32-oz/-/A-15172078#prodSlot=medium_1_2&term=seventh+generation+all+purpose (last visited Apr. 25, 2016).

[62] Target, http://www.target.com/p/scrubbing-bubbles-heavy-duty-all-purpose-cleaner-with-fantastik-32-oz/-/A-12972770#prodSlot=medium_1_8&term=all+purpose+cleaner (last visited Apr. 25, 2016); Target, http://www.target.com/p/green-works-all-purpose-cleaner-32-oz/-/A-16755093#prodSlot=medium_1_1&term=Green+Works+All+Purpose+Cleaner (last visited Apr. 25, 2016).

counsel for Plaintiffs and Defendant; and the judicial officer to whom this lawsuit is assigned.

B.     The "California Class," which consists of: All consumers within the State of California who purchased the Products during the applicable liability period for their personal use, rather than for resale or distribution. Excluded from the California Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiffs and Defendant; and the judicial officer to whom this lawsuit is assigned.

C.     The "Florida Class," which consists of: All consumers within the State of Florida who purchased the Products during the applicable liability period for their personal use, rather than for resale or distribution. Excluded from the Florida Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiffs and Defendant; and the judicial officer to whom this lawsuit is assigned.

D.     The "Multi-State Class," which consists of: All consumers in Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Georgia, Hawaii, Idaho, Illinois, Indiana, Kansas, Kentucky, Maine, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, or Wyoming who purchased the Products during the applicable liability period for their personal use, rather than for resale or distribution. Excluded from the Multi-State Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiffs and Defendant; and the judicial officer to whom this lawsuit is assigned.

67.     The requirements of Federal Rule of Civil Procedure 23 are satisfied because:

A.     <u>Numerosity</u>: The members of each class are so numerous that joinder of all members is impracticable. While the exact number of class members is presently unknown to Plaintiffs, based on Defendant's volume of sales, Plaintiffs estimate that each class numbers in the thousands.

B.     <u>Commonality</u>: There are questions of law and fact that are common to the class members and that predominate over individual questions. These include the following:

i.   Whether Defendant materially misrepresented to the class members that the Products are "natural;"

ii.   Whether Defendant's misrepresentations and omissions were material to reasonable consumers;

iii.   Whether Defendant's labeling, marketing, and sale of the Products constitutes an unfair, unlawful, or fraudulent business practice;

iv.   Whether Defendant's labeling, marketing, and sale of the Products constitutes false advertising;

v.   Whether Defendant's conduct described above constitutes a breach of warranty;

vi.   Whether Defendant's conduct injured consumers and, if so, the extent of the injury; and

vii.   The appropriate remedies for Defendant's conduct.

C.   Typicality: Plaintiffs' claims are typical of the claims of the class members because Plaintiffs suffered the same injury as the class members—*i.e.*, Plaintiffs purchased the Products based on Defendant's misleading representations that the Products are natural.

D.   Adequacy: Plaintiffs will fairly and adequately represent and protect the interests of the members of each class. Plaintiffs do not have any interests that are adverse to those of the class members. Plaintiffs have retained competent counsel experienced in class action litigation and intend to prosecute this action vigorously.

E.   Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class action treatment will permit a large

number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Since the damages suffered by individual class members are relatively small, the expense and burden of individual litigation make it virtually impossible for the class members to seek redress for the wrongful conduct alleged, while an important public interest will be served by addressing the matter as a class action.

68.     The prerequisites for maintaining a class action for injunctive or equitable relief under Federal Rule of Civil Procedure 23(b)(2) are met because Defendant had acted or refused to act on grounds generally applicable to each class, thereby making appropriate final injunctive or equitable relief with respect to each class as a whole.

### FIRST CAUSE OF ACTION
**(Violation of the California Consumers Legal Remedies Act – By the California Class)**

69.     Plaintiff Tsan incorporates by reference the allegations set forth above.

70.     Plaintiff Tsan and the California Class members are "consumers" under the California Consumers Legal Remedies Act ("CLRA"), California Civil Code section 1761(d).

71.     The Products are "goods" under California Civil Code section 1761(a).

72.     The purchases by Plaintiff Tsan and the California Class members of the Products are "transactions" under California Civil Code section 1761(e).

73.     As alleged above, Defendant has violated California Civil Code sections 1770(a)(5), (a)(7), and (a)(9) by making false representations on the Product packaging and in marketing (as detailed herein) that the Products are natural, when in fact they contain synthetic and/or highly processed ingredients, which are not natural.

74.     Plaintiff Tsan and the California Class members relied on the representations by Defendant. Plaintiff Tsan and the California Class members would not have purchased the

Products at the price offered if they had known that, contrary to Defendant's representations, the Products are not, in fact, natural. Plaintiff Tsan and the California Class members suffered damages equal to the purchase price of the Products.

75.     CLRA SECTION 1782 NOTICE. On October 15, 2013, a CLRA demand letter was sent to Defendant that provided notice of Defendant's violation of the CLRA and demanded that Defendant correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and/or deceptive practices complained of herein. The letter also stated that if Defendant refused to do so, a complaint would be filed seeking damages in accordance with the CLRA. Defendant has failed to comply with the letter. Accordingly, pursuant to California Civil Code section 1780(a)(3), Plaintiff Tsan, on behalf of herself and all other members of the California Class, seeks compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendant's acts and practices.

76.     Pursuant to California Civil Code sections 1780 and 1782, Plaintiff Tsan and the California Class members seek damages in an amount to be proven at trial; an injunction to bar Defendant from continuing its deceptive advertising practices; and reasonable attorneys' fees and costs.

### SECOND CAUSE OF ACTION
**(Violation of the California False Advertising Law – By the California Class)**

77.     Plaintiff Tsan incorporates by reference the allegations set forth above.

78.     The California False Advertising Law ("FAL"), California Business and Professions Code section 17500 *et seq.*, makes it unlawful for a person, firm, corporation, or association to induce the public to buy its products by knowingly disseminating untrue or misleading statements about the products.

79.     Defendant's labeling and advertisings includes untrue and misleading statements

that the Products are natural. These representations were likely to deceive a reasonable consumer. If consumers knew the true facts regarding the Products, as detailed in the Substantive Allegations above, they would not have purchased the Products. Defendant knew, or reasonably should have known, that its representations concerning the Products are untrue and misleading, since they know how the Products and their ingredients are manufactured. Defendant made the representations at issue with the intent to induce Plaintiff Tsan and the California Class members to purchase the Products. Plaintiff Tsan and the California Class members purchased the Products in reliance on the untrue and misleading representations by Defendant.

80.     Pursuant to California Business & Professions Code section 17535, Plaintiff Tsan and the California Class members seek restitution of the purchase price paid for the Products and an injunction barring Defendant from continuing its deceptive advertising practices.

### **THIRD CAUSE OF ACTION**
**(Violation of the California Unfair Competition Law – By the California Class)**

81.     Plaintiff Tsan incorporates by reference the allegations set forth above.

82.     The California Unfair Competition Law, California Business and Professions Code section 17200 *et seq.*, prohibits any unlawful, unfair, or fraudulent business act or practice.

83.     Defendant's conduct is unlawful because it violates the CLRA, the FAL, as well as California Health & Safety Code section 111730, which states: "Any cosmetic is misbranded if its labeling is false or misleading in any particular."

84.     Defendant's conduct is fraudulent because, as alleged in the Substantive Allegations above, Defendant's representations concerning the Products were false and misleading, and Plaintiff Tsan and the California Class members relied on those representations in purchasing the Products.

85.     Plaintiff Tsan and the California Class members have suffered injury in fact and

lost money as a result of Defendant's conduct, since they purchased the Products in reliance on Defendant's misrepresentations and would not have purchased the Products if they had known the true facts about the Products.

86.     Pursuant to California Business and Professions Code section 17203, Plaintiff Tsan and the California Class members seek restitution of the purchase price paid for the Products, plus an injunction barring Defendant from continuing its deceptive advertising practices.

**FOURTH CAUSE OF ACTION**
**(Violation of the Florida Deceptive and Unfair Trade Practices Act – Fla. Stat. § 501.201, *et seq.* – By the Florida Class)**

87.     Plaintiff Wildstein incorporates by reference the allegations set forth above.

88.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

89.     The stated purpose of FDUTPA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

90.     Plaintiff Wildstein and the Florida Class members are "consumer[s]" as defined by Fla. Stat. § 501.203.

91.     The Products are "goods" within the meaning of FDUTPA.

92.     The sales of the Products at issue in this case were "consumer transaction[s]" within the scope of FDUTPA.

93.     Defendant is engaged in trade or commerce within the meaning of FDUTPA.

94.     Section 501.204(1), Florida Statutes, declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

95.     Defendant has violated FDUTPA by engaging in the unfair and deceptive business acts and/or practices, as set forth in detail above, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

96.     Plaintiff Wildstein and the Florida Class have been aggrieved by Defendant's unfair and deceptive practices in that they paid more for the Products than they otherwise would have as a result of Defendant's representations. Indeed, Plaintiff Wildstein and the Florida Class purchased the Products in reliance on Defendant's false and misleading representations. Plaintiff Wildstein and the Florida Class would not have purchased the Products had they known that Defendant's representations were false.

97.     Pursuant to Fla. Stat. § 501.211(1), Plaintiff Wildstein and the Florida Class seek a declaratory judgment and Court order enjoining the above-described wrongful acts and practices of Defendant, as well as for restitution and disgorgement.

98.     Additionally, pursuant to Fla. Stat. §§ 501.211(2) and 501.2105, Plaintiff Wildstein and the Florida Class are entitled to damages, attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
### (Violation of the New York GBL § 349 – By the Nationwide Class)

99.     Plaintiff Rapoport-Hecht incorporates by reference the allegations set forth above.

100.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state ..."

101.    The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff Rapoport-Hecht and Nationwide Class members seek monetary damages and the entry of preliminary and permanent injunctive relief against Seventh Generation, enjoining it from inaccurately

describing, labeling, marketing, and promoting its Products.

102.    There is no adequate remedy at law.

103.    Defendant misleadingly, inaccurately, and deceptively presents its Products to consumers.

104.    Defendant's improper consumer-oriented conduct-including labeling and advertising the Products as natural, and misrepresenting that its Products are safe and non-toxic—is misleading in a material way in that it, *inter alia,* induced Plaintiff Rapoport-Hecht and Nationwide Class members to purchase and pay a premium for Defendant's Products and to use those Products when it otherwise would not have.

105.    Plaintiff Rapoport-Hecht and the Nationwide Class members have been injured inasmuch as they paid a premium for products that were-contrary to Defendant's representations-not natural, not safe, and not non-toxic. Accordingly, Plaintiff Rapoport-Hecht and the Nationwide Class members received less than what they bargained and/ or paid for.

106.    Defendant's advertising and Product labeling induced the Plaintiff Rapoport-Hecht and the Nationwide Class members to buy Defendant's Products.

107.    Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff Rapoport-Hecht and the Nationwide Class members have been damaged thereby.

108.    As a result of Defendant's recurring "unlawful" deceptive acts and practices, Plaintiff Rapoport-Hecht and Nationwide Class members are entitled to monetary damages, injunctive relief, restitution, and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorney's fees and costs.

## SIXTH CAUSE OF ACTION
**(Violation of the New York GBL § 350 – By the Nationwide Class)**

109.    Plaintiff Rapoport-Hecht incorporates by reference the allegations set forth above.

110.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

111.    N.Y. Gen. Bus. Law § 350a(l) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual ...

112.    Defendant's labeling and advertisement contain untrue and materially misleading statements concerning Defendant's Products inasmuch as they misrepresent that the Products contain natural ingredients, and they misrepresent that the Products are safe and non-toxic.

113.    Plaintiff Rapoport-Hecht and Nationwide Class members have been injured inasmuch as they relied upon the labeling and advertising and paid a premium for products that−contrary to Defendant's representations−were not natural, not safe, and not non-toxic. Accordingly, Plaintiff Rapoport-Hecht and Nationwide Class members received less than what they bargained and/or paid for.

114.    Defendant's advertising and product labeling induced the Plaintiff Rapoport-Hecht and Nationwide Class members to buy Defendant's Products.

115.    Defendant knew, or by exercising reasonable care should have known, that its statements and representations as described in this Complaint were untrue and/or misleading.

116.    Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

117.    Defendant made the material misrepresentations described in this Complaint in Defendant's advertising and on its Products' labels.

118.    Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

119.    As a result of Defendant's false or misleading labeling and advertising, Plaintiff Rapoport-Hecht and Nationwide Class members are entitled to monetary damages, injunctive relief, restitution, and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**SEVENTH CAUSE OF ACTION**
**(Unjust Enrichment under New York Common Law – By the Nationwide Class)**

120.    Plaintiff Rapoport-Hecht incorporates by reference the allegations set forth above.

121.    Plaintiff Rapoport-Hecht, on behalf of herself and consumers nationwide, brings a common law claim for unjust enrichment.

122.    Defendant's conduct violated, *inter alia,* New York General Business Law §§ 349 and 350 by manufacturing, advertising, marketing, and selling its Products while misrepresenting and omitting material facts.

123.    Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling its Products at the expense, and to the detriment or impoverishment, of the Plaintiff Rapoport-Hecht's and Nationwide Class members, and to the Defendant's benefit and enrichment. Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

124.     Plaintiff Rapoport-Hecht's and Nationwide Class members conferred significant financial benefits and paid substantial compensation to Defendant for Products that were not as defendant represented them to be.

125.     Under New York's common law principles of unjust enrichment, it is inequitable for Defendant to retain the benefits conferred by Plaintiff Rapoport-Hecht's and Nationwide Class members' overpayments.

Plaintiff Rapoport-Hecht's and Nationwide Class members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff Rapoport-Hecht's and Nationwide Class members may seek restitution.

**EIGHTH CAUSE OF ACTION**
**(Breach of Implied Warranty of Merchantability – By the Nationwide Class)**

126.     Plaintiff Rapoport-Hecht incorporates by reference the allegations set forth above.

127.     Defendant is in the business of manufacturing, producing, distributing, and selling laundry detergents and dish liquids.

128.     Under the Uniform Commercial Code's implied warranty of merchantability, the Defendant warranted to the Plaintiff Rapoport-Hecht and Nationwide Class members. Members that the Products contain natural ingredients and are safe and non-toxic.

129.     Defendant breached the implied warranty of merchantability in that Seventh Generation's Products' ingredients naturally deviate from the label and product description, and reasonable consumers expecting a product that conforms to its label would not accept the Products if they knew that they actually contained synthetic ingredients, are unsafe, and not non-toxic.

130.     Defendant breached the implied warranty of merchantability. The Products contain synthetic ingredients. Furthermore, the Defendant's adve1iising falsely states that the

Products are safe and non-toxic. Reasonable consumers expecting a product that conforms to its label would not accept the Products if they knew that the Products contained synthetic ingredients, and are unsafe and not non-toxic.

131.    Defendant breached the implied warranty of merchantability in that the Products do not conform to the promises or affirmations made on the Products' containers or labels or literature, as the Products contain synthetic ingredients. Furthermore, the Products are not safe and non-toxic. Any reasonable consumer would not accept the Products if they knew that the Products actually contained synthetic ingredients that are known to be toxic to human skin, the human immune system, and that are known to cause allergic reactions.

132.    Within a reasonable amount of time after the Plaintiff Rapoport-Hecht discovered that the Products contain synthetic ingredients that are associated with human toxicity, Plaintiff Rapoport-Hecht notified the Defendant of such breach.

133.    The inability of the Products to meet the label description was wholly due to the Defendant's fault and without Plaintiff Rapoport-Hecht's fault or neglect, and was solely due to the Defendant's manufacture and distribution of the Products to the public.

134.    As a result of the foregoing, Plaintiff Rapoport-Hecht and Nationwide Class members have been damaged in the amount paid for the Products, together with interest thereon from the date of purchase.

## <u>NINTH CAUSE OF ACTION</u>
**(Breach of Implied Warranty of Fitness for a Particular Purpose – By the Nationwide Class)**

135.    Plaintiff Rapoport-Hecht incorporates by reference the allegations set forth above.

136.    Plaintiff Rapoport-Hecht and Nationwide Class members bought the Products with the specific purpose of buying cleaning products that were safe, non-toxic, and contained exclusively natural ingredients.

137.    Defendant knew or had reason to know that the Plaintiff Rapoport-Hecht and Nationwide Class members were buying its Products with the specific purpose of buying cleaning products that were safe, non-toxic, and contained exclusively natural ingredients.

138.    Plaintiff Rapoport-Hecht and Nationwide Class members, intending to use safe, non-toxic, and wholly natural cleaning products, relied on the Defendant in selecting its Products to fit their specific intended use.

139.    Defendant held itself out as having particular knowledge of the Products' ingredients, safety, and toxicity.

140.    Plaintiff Rapoport-Hecht's and Nationwide Class members' reliance on Defendant in selecting the Products to fit their particular purpose was reasonable given Defendant's claims and representations in its advertising and labels concerning the Products' ingredients, safety, and toxicity.

141.    Plaintiff Rapoport-Hecht's and Nationwide Class members' reliance on Defendant in selecting the Products to fit their particular use was reasonable given Defendant's particular knowledge of the Products it manufactures and distributes.

142.    As a result of the foregoing, Plaintiff Rapoport-Hecht's and Nationwide Class members have been damaged in the amount paid for the Products, together with interest thereon from the date of purchase.

## TENTH CAUSE OF ACTION
### (Breach of Express Warranty – By the Multi-State Class)

143.    Plaintiffs incorporate by reference the allegations set forth above.

144.    Plaintiffs and the Multi-State Class members formed a contract with Defendant at the time they purchased the Products. As part of that contract, Defendant represented that the Products were natural, non-toxic, and/or hypoallergenic as described above. These

representations constitute express warranties and became part of the basis of the bargain between Plaintiffs and the Multi-State Class members, on the one hand, and Defendant, on the other.

145.    Defendant made the above-described representations to induce Plaintiffs and the Multi-State Class members to purchase the Products, and Plaintiffs and the Multi-State Class members relied on the representations in purchasing the Products.

146.    All conditions precedent to Defendant's liability under the above-referenced contract have been performed by Plaintiffs and the other Multi-State Class members.

147.    Defendant breached its express warranties about the Products because, as alleged above, the Products are not natural, non-toxic, and/or hypoallergenic. Defendant breached the following state warranty laws:

> A.    Alaska Stat. section 45.02.313;
>
> B.    A.R.S. section 47-2313;
>
> C.    A.C.A. section 4-2-313;
>
> D.    Cal. Comm. Code section 2313;
>
> E.    Colo. Rev. Stat. section 4-2-313;
>
> F.    Conn. Gen. Stat. section 42a-2-313;
>
> G.    6 Del. C. section 2-313;
>
> H.    D.C. Code section 28:2-313;
>
> I.    O.C.G.A. section 11-2-313;
>
> J.    HRS section 490:2-313;
>
> K.    Idaho Code section 28-2-313;
>
> L.    810 ILCS 5/2-313;
>
> M.    Ind. Code section 26-1-2-313;

N.      K.S.A. section 84-2-313;

O.      KRS section 355.2-313;

P.      11 M.R.S. section 2-313;

Q.      Mass. Gen. Laws Ann. ch. 106 section 2-313;

R.      Minn. Stat. section 336.2-313;

S.      Miss. Code Ann. section 75-2-313;

T.      R.S. Mo. Section 400.2-313;

U.      Mont. Code Anno. Section 30-2-313;

V.      Neb. Rev. Stat. section 2-313;

W.      Nev. Rev. Stat. Ann. section 104.2313;

X.      RSA 382-A:2-313;

Y.      N.J. Stat. Ann. section 12A:2-313;

Z.      N.M. Stat. Ann. section 55-2-313;

AA.     N.Y. U.C.C. Law section 2-313;

AB.     N.C. Gen. Stat. section 25-2-313;

AC.     N.D. Cent. Code section 41-02-30;

AD.     ORC Ann. section 1302.26;

AE.     12A Okl. St. section 2-313;

AF.     Or. Rev. Stat. section 72-3130;

AG.     13 Pa.C.S. section 2313;

AH.     R.I. Gen. Laws section 6A-2-313;

AI.     S.C. Code Ann. section 36-2-313;

AJ.     S.D. Codified Laws, section 57A-2-313;

AK.     Tenn. Code Ann. section 47-2-313;

AL.     Tex. Bus. & Com. Code section 2.313;

AM.     Utah Code Ann. section 70A-2-313;

AN.     9A V.S.A. section 2-313;

AO.     Va. Code Ann. section 59.1-504.2;

AP.     Wash. Rev. Code Ann. section 62A.2-313;

AQ.     W. Va. Code section 46-2-313;

AR.     Wyo. Stat. section 34.1-2-313.

148.    As a result of Defendant's breaches of express warranty, Plaintiffs and the other members of the Multi-State Class were damaged in the amount of the purchase price they paid for the Products, in amounts to be proven at trial.

149.    Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and the other members of the Multi-State Class, placed Defendant on notice thereof.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendant as follows:

A.      For an order enjoining Defendant from continuing the unlawful practices set forth above;

B.      For an order requiring Defendant to disgorge and make restitution of all monies Defendant acquired by means of the unlawful practices set forth above;

C.      For compensatory damages according to proof;

D.      For punitive damages according to proof;

E.      For reasonable attorneys' fees and costs of suit;

F.      For pre-judgment interest; and

G.      For such other relief as the Court deems proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand trial by jury on all claims so triable.

Date:  July 1, 2016                    Respectfully submitted,

**THE SULTZER LAW GROUP, P.C.**

Jason P. Sultzer, Esq.
*sultzerj@thesultzerlawgroup.com*
Joseph Lipari, Esq.
85 Civic Center Plaza, Suite 104
Poughkeepsie, New York 12601
Telephone: (854) 705-9460
Facsimile: (888) 749-7747

**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**HALUNEN LA\W**
Melissa Wolchansky (admitted *pro hac vice*)
*Wolchansky@halunenlaw.com*
1650 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: 612.605.4098
Facsimile: 612.605.4099

**TYCKO & ZAVAREEI LLP**
Jeffrey D. Kaliel
*jkaliel@tzlegal.com*
1828 L Street, N.W., Suite 1000
Washington, D.C. 20036

AMENDED CLASS ACTION COMPLAINT

Telephone: (202) 973-0900
Facsimile: (202) 973-0950

***ATTORNEYS FOR PLAINTIFFS***