**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TZIVA RAPOPORT-HECHT, MAGGIE TSAN, and ERICA WILDSTEIN, individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>SEVENTH GENERATION, INC.,<br><br>　　　　　　　Defendant. | No. 7:14-cv-09087-KMK<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF NOTICE PLAN** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iv

I.      INTRODUCTION AND PROCEDURAL BACKGROUND .............................1

II.     THE TERMS OF THE PROPOSED SETTLEMENT .....................................5

        A.      Certification of the Settlement Class ...........................................5

        B.      Relief for the Members of the Settlement Class ...........................6

        C.      Incentive Awards and Attorneys' Fees and Expenses .................7

        D.      Settlement Notice ...........................................................................7

III.    ARGUMENT ..................................................................................................8

        A.      The Court Should Preliminarily Approve the Settlement Agreement ....................8

                1.      Legal Standard ...................................................................9

                2.      The Settlement Is Procedurally Fair, as It Is the Result of Good
                        Faith, Arm's-Length Negotiations by Well-Informed and Highly
                        Experienced Counsel ........................................................10

                3.      The Settlement Is Substantively Fair, as Application of the Factors
                        Set Out in *City of Detroit v. Grinnell Corp.* Demonstrates ....................12

                        (i)      The complexity, expense, and likely duration of litigation ..........12

                        (ii)     The reaction of the class to the settlement .....................................13

                        (iii)    The stage of the proceedings and the amount of discovery
                                 completed ........................................................................14

                        (iv)     The risks of establishing liability and damages ...........................14

                        (v)      The risk of maintaining class action status through trial ..............15

                        (vi)     The ability of Defendant to withstand a greater judgment ............16

                        (vii)    The range of reasonableness of the settlement in light of the
                                 best possible recovery and in light of all the attendant risks
                                 of litigation ........................................................................16

B. The Court Should Preliminarily Certify the Settlement Class.............................18

 1. The Settlement Class Meets All Prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure.................................................................18

  (i) Numerosity.......................................................................................18

  (ii) Commonality.....................................................................................18

  (iii) Typicality..........................................................................................19

  (iv) Adequacy of representation .............................................................20

 2. The Settlement Class Meets All Rule 23(b)(3) Requirements..................21

  (i) Common legal and factual questions predominate in this action..................................................................................................21

  (ii) A class action is the superior means to adjudicate Plaintiffs' claims ...............................................................................................22

C. The Court Should Approve the Proposed Notice Plan ...........................................23

IV. PROPOSED SCHEDULE OF EVENTS.........................................................................25

V. CONCLUSION.................................................................................................................26

# TABLE OF AUTHORITIES

**Cases**

Ackerman v. Coca-Cola Co.,
 No. CV-09-0395 (JG), 2010 WL 2925955 (E.D.N.Y. July 21, 2010) ................................ 19

Amchem Prods. v. Windsor,
 521 U.S. 591 (1997) ................................................................................................ 18, 21, 22

Augustin v. Jablonsky (In re Nassau Cty. Strip Search Cases),
 461 F.3d 219 (2d Cir. 2006) ......................................................................................... 21, 22

Banyai v. Mazur,
 No. 00 CIV.9806 SHS, 2007 WL 927583 (S.D.N.Y. Mar. 27, 2007) ................................... 15

Bezdek v. Vibram USA, Inc.,
 809 F.3d 78 (1st Cir. 2015) ....................................................................................................... 16

Bodon v. Domino's Pizza, L.L.C.,
 No. 09-CV-2941 SLT, 2015 WL 588656 (E.D.N.Y. Jan. 16, 2015) ..................................... 17

Brazil v. Dole Packaged Foods, L.L.C.,
 No. 12-CV-01831-LHK, 2014 WL 5794873 (N.D. Cal. Nov. 6, 2014) ............................... 15

Charron v. Pinnacle Group NY LLC,
 874 F. Supp. 2d 179 (S.D.N.Y. 2012) ................................................................................... 16

Charron v. Wiener,
 731 F.3d 241 (2d Cir. 2013) ................................................................................... 9, 12, 20

D'Amato v. Deutsche Bank,
 236 F.3d 78 (2d Cir. 2001) ......................................................................................... 10, 11

D.S. ex rel. S.S. v. N.Y. City Dep't of Educ.,
 255 F.R.D. 59 (E.D.N.Y. 2008) ............................................................................................. 14

Detroit v. Grinnell Corp.,
 495 F.2d 448 (2d Cir. 1974) ................................................................................................. 12

Dupler v. Costco Wholesale Corp.,
 705 F. Supp. 2d 231 (E.D.N.Y. 2010) ................................................................................... 13

Fogarazzo v. Lehman Bros.,
 232 F.R.D. 176 (S.D.N.Y. 2005) ........................................................................................... 19

Gen. Tel. Co. of the Sw. v. Falcon,
 457 U.S. 147 (1982) ............................................................................................................... 15

Hadel v. Gaucho, L.L.C.,
    No. 15 CIV. 3706 (RLE), 2016 WL 1060324 (S.D.N.Y. Mar. 14, 2016) .................. 9, 10, 19

Hall v. ProSource Techs., L.L.C.,
    No. 14-CV-2502 (SIL), 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) ................................ 11

Handschu v. Special Servs. Div.,
    787 F.2d 828 (2d Cir. 1986) ................................................................................... 23

In re Bear Stearns Cos.,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012) ................................................................... 11

In re Med. X-Ray Film Antitrust Litig.,
    No. CV-93-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ............................................ 15

In re Nissan Radiator/Transmission Cooler Litig.,
    No. 10 CV 7493 VB, 2013 WL 4080946 (S.D.N.Y. May 30, 2013) ..................................... 19

In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,
    986 F. Supp. 2d 207 (E.D.N.Y. 2013) ................................................................... 14

In re Sinus Buster Prods. Consumer Litig.,
    No. 12-CV-2429 (ADS)(AKT), 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) .................. 16

Koch v. Hicks (In re Methyl Tertiary Butyl Ether ("MTBE"),
    241 F.R.D. 185 (S.D.N.Y. 2007) ............................................................................ 21

Manley v. Midan Rest. Inc.,
    No. 14 CIV. 1693 (HBP), 2016 WL 1274577 (S.D.N.Y. Mar. 30, 2016)............10, 12, 14, 19

Marisol A. by Forbes v. Giuliani,
    126 F.3d 372 (2d Cir. 1997) ................................................................................. 18, 20

McReynolds v. Richards-Cantave,
    588 F.3d 790 (2d Cir. 2009) ................................................................................ 9, 10, 12

Meredith Corp. v. SESAC, L.L.C.,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015) ...................................................................... 12, 13, 22

Mills v. Capital One, N.A.,
    No. 14 CIV 1937 HBP, 2015 WL 5730008 (S.D.N.Y. Sept. 30, 2015) ................................ 16

Robidoux v. Celani,
    987 F.2d 931 (2d Cir. 1993) ............................................................................... 19, 20

Sykes v. Mel S. Harris & Assocs.,
    780 F.3d 70 (2d Cir. 2015) .................................................................................... 19

Tart v. Lions Gate Entm't Corp.,
    No. 14-CV-8004 AJN, 2015 WL 5945846, (S.D.N.Y. Oct. 13, 2015).................10, 19, 21, 23

*Tiro v. Pub. House Invs., L.L.C.*,
    No. 11 CIV. 7679 CM, 2013 WL 2254551 (S.D.N.Y. May 22, 2013) ................................. 11

*Vargas v. Capital One Fin. Advisors*,
    559 F. App'x 22 (2d Cir. 2014) ................................................................................ 24

*Viafara v. MCIZ Corp.*,
    No. 12 CIV. 7452 RLE, 2014 WL 1777438 (S.D.N.Y. May 1, 2014) ................................. 16

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ............................................................................................. 18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ............................................................... 9, 10, 16, 23, 24

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ................................................................................... 19

*Willix v. Healthfirst, Inc.*,
    No. 07-cv-1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ................................... 14

*Zeltser v. Merrill Lynch & Co.*,
    No. 13 CIV. 1531 FM, 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) ............... 14, 15, 22, 23

## Statutes

Cal. Civ. Code § 2.8 ....................................................................................................... 5

Cal. Civ. Code § 4.5 ....................................................................................................... 6

Cal. Civ. Code § 5.1 .................................................................................................. 7, 8, 9

Cal. Civ. Code § 8.1 ....................................................................................................... 7

Cal. Civ. Code § 8.6 ....................................................................................................... 7

Cal. Civ. Code § 9.3 ..................................................................................................... 15

Cal. Civ. Code § 1750 ................................................................................................. 1, 2

Cal. Civ. Code § 4.1(a) ................................................................................................... 6

Cal. Civ. Code § 4.4(c) ................................................................................................... 6

Cal. Civ. Code § 5.1 ................................................................................................. 24, 25

Cal. Civ. Code § 21.312 ............................................................................................... 23

## Rules

Fed. R. Civ. P. 23(a) .................................................................................................... 18

Fed. R. Civ. P. 23(c) ...................................................................................................... 5

Fed. R. Civ. P. 23(e) ...................................................................................................... 5

Fed. R. Civ. P. 23(g) ...................................................................................................... 5

Fed. R. Civ. P. 23(a)(1) ................................................................................. 18

Fed. R. Civ. P. 23(a)(2) ................................................................................. 18

Fed. R. Civ. P. 23(a)(3) ................................................................................. 19

Fed. R. Civ. P. 23(a)(4) ................................................................................. 20

Fed. R. Civ. P. 23(b)(3) ............................................................................. 21, 22

Fed. R. Civ. P. 23(e)(2) ................................................................................... 9

Fed. R. Civ. P. 30(b)(6) ................................................................................. 3, 4

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................ 24

Plaintiffs[1] Tziva Rapoport-Hecht, Maggie Tsan, and Erica Wildstein, individually and on behalf of all others similarly situated, respectfully submit this memorandum of law in support of Plaintiffs' unopposed motion for preliminary approval of the Parties' Settlement Agreement.

## I.    INTRODUCTION AND PROCEDURAL BACKGROUND

In the Amended Complaint, Plaintiffs have asserted claims that Defendant Seventh Generation, Inc., deceptively and misleadingly marketed and labeled numerous cleaning and personal care "Products"[2] as "natural," "non-toxic," and "hypoallergenic" even though the Products contain non-natural ingredients, some of which are hazardous to human health.[3] The Settlement Agreement that Plaintiffs now submit for preliminary approval provides excellent relief to Settlement Class Members and is the achievement of several years of hard-fought, vigorously contested litigation of these claims.

On October 15, 2013, counsel for Plaintiff Tsan – Reese LLP (formerly Reese Richman LLP) and Halunen Law (formerly Halunen & Associates) – sent a pre-suit demand letter and draft complaint to Defendant as required by California's Consumers Legal Remedies Act, CAL. CIV. CODE § 1750 *et seq.* ("CLRA").[4] In response to the CLRA demand letter, over the next several months, counsel for Plaintiff Tsan and Defendant engaged in extensive informal discovery and a series of settlement negotiations, including in-person meetings with employees and counsel of Defendant, as well as mediation before the Honorable Edward A. Infante (Ret.) of

---

[1] Unless otherwise indicated, capitalized terms shall have the meaning that the Settlement Agreement ascribes to them. (*See generally* Class Settlement Agreement (filed concurrently herewith).) References to "§ __ " are to sections in the Settlement Agreement.

[2] "Products" herein refers to the SVG Products. (§ 2.36; Ex. E, Class Settlement Agreement.)

[3] (Compl. ¶¶ 1, 5–7, ECF No. 1.) Class Action Complaint at ¶ 5, *Tsan v. Seventh Generation, Inc.*, No. 3:15-cv-00205 (N.D. Cal. Jan. 14, 2015), ECF No. 1.

[4] (Decl. Reese Supp. Pls.' Unopposed Mot. Prelim. Approval ¶ 7 ("Decl. Reese") (filed concurrently herewith).)

JAMS.[5]

On November 14, 2014, Plaintiff Tziva Rapoport-Hecht, individually and on behalf of all United States consumers who purchased any of five SVG Products, filed a complaint against Defendant in the U.S. District Court for the Southern District of New York, alleging statutory and common law claims for false and misleading advertising in connection with Defendant's labeling and marketing of the Products.[6]

On January 14, 2015, Plaintiffs Maggie Tsan and Erica Wildstein, individually and on behalf of putative nationwide, California, Florida, and multi-state classes of consumers who purchased the SVG Products, filed a complaint against Defendant in the U.S. District Court for the Northern District of California, also alleging statutory and common law claims for false and misleading advertising on account of Defendant's Product labeling and marketing (the "*Tsan* Action").[7]

On May 15, 2015, Defendant moved to dismiss Ms. Rapoport-Hecht's complaint and moved to strike the nationwide class allegations, and the *Rapoport-Hecht* parties subsequently fully briefed the motions.[8] The Court held oral argument on the motions on January 28, 2016, and those motions remained pending.[9] On March 30, 2016, Ms. Rapoport-Hecht asked the Court to hold the motions in abeyance in light of the Settlement and an anticipated motion for

---

[5] (*Id.* at ¶¶ 8–10.)

[6] (*See generally* Compl., ECF No. 1.)

[7] *See generally* Class Action Complaint, *Tsan v. Seventh Generation, Inc.*, No. 3:15-cv-00205 (N.D. Cal. Jan. 14, 2015), ECF No. 1.

[8] (*See* Def.'s Notice Mot. & Mot. Dismiss Pl.'s Compl., ECF No. 23; Def.'s Notice Mot. & Mot. Strike Class Allegations, ECF No. 25.)

[9] (Minute Entry, Jan. 28, 2016.)

preliminary approval, and the Court granted the request.[10]

On July 6, 2015, Defendant moved to dismiss the complaint in the *Tsan* Action and moved to strike certain allegations, and the *Tsan* parties subsequently fully briefed the motions.[11] On November 3, 2015, the Northern District of California granted in part and denied in part the motion to dismiss and denied the motion to strike.[12] Defendant filed an answer in the *Tsan* Action on November 17, 2015.[13]

The Northern District of California held a case management conference in the *Tsan* Action on July 22, 2015, after which discovery ensued.[14] Defendant produced hundreds of thousands of pages of electronic documents in the *Tsan* Action and responded to interrogatories,[15] and, in January 2016, the *Tsan* Plaintiffs deposed Defendant pursuant to Federal Rule of Civil Procedure 30(b)(6).[16] Furthermore, as stated above, prior to and throughout the pendency of the Actions,[17] the Parties engaged in serious and informed negotiations in an

---

[10] (Letter, Mar. 30, 2016, ECF No. 38.)

[11] *See* Defendant Seventh Generation Inc.'s Notice of Motion and Motion to Dismiss Complaint, *Tsan v. Seventh Generation, Inc.*, No. 3:15-cv-00205-JST (N.D. Cal. July 6, 2015), ECF No. 37; Defendant Seventh Generation Inc.'s Notice of Motion and Motion to Strike, *Tsan v. Seventh Generation, Inc.*, No. 3:15-cv-00205-JST (N.D. Cal. July 6, 2015), ECF No. 36.

[12] Order Granting in Part and Denying in Part Defendant's Motion to Dismiss, and Denying Motion to Strike, *Tsan v. Seventh Generation, Inc.*, No. 3:15-cv-00205-JST (N.D. Cal. Nov. 3, 2015), ECF No. 54.

[13] Defendant Seventh Generation, Inc.'s Answer and Affirmative Defenses to Class Action Complaint, *Tsan v. Seventh Generation, Inc.*, No. 3:15-cv-00205-JST (N.D. Cal. Nov. 17, 2015), ECF No. 55.

[14] *See* Joint Case Management Scheduling Order, *Tsan v. Seventh Generation, Inc.*, No. 3:15-cv-00205-JST (N.D. Cal. July 23, 2015), ECF No. 44.

[15] (Decl. Reese ¶ 17.)

[16] (*Id.* at ¶ 19.)

[17] Together, the above-captioned case and the *Tsan* Action are the "Actions."

effort to reach a reasonable and fair resolution of the Actions.[18]

Plaintiffs' objectives in filing the Actions were to remedy the allegedly deceptive representations in Defendant's marketing and labeling of the SVG Products and to compensate Settlement Class members damaged by the alleged misrepresentations.[19] Through the Actions and the Settlement Agreement, Plaintiffs achieved both objectives. Defendant has agreed to make changes to the Products' labels (namely, removal of the "All Natural" and "100% Natural" representations and clarification of the non-toxic and hypoallergenic claims) and to compensate Settlement Class Members. The Settlement also allows eligible Settlement Class members to make claims from a $4,500,000 Common Fund, depending on the amount of their purchases during the Class Period, and whether or not the Settlement Class Member has retained proof of purchase, to recover either full value of the purchases if a Settlement Class Member has Proof of Purchase, or fifty-percent of the value of the claimed purchases (for up to ten SVG Products) if a Settlement Class Member does not possess Proof of Purchase. Thus, the Settlement is an outstanding result for Plaintiffs and the members of the Settlement Class.

The Parties only reached the Settlement after conducting significant discovery and engaging in extensive arm's-length negotiations, including two mediation sessions with JAMS, and multiple in-person settlement conferences.[20] The negotiations spanned the course of over a year.[21] While providing significant benefits for the Settlement Class members, the Settlement also takes into account the substantial risks the Parties would face if the Actions progressed.[22]

---

[18] (Decl. Reese ¶¶ 4, 8–10, 19, 25–28.)

[19] (*See* Compl. 24, ECF No. 1.) *See also* Class Action Complaint at 26, *Tsan v. Seventh Generation, Inc.*, No. 3:15-cv-00205 (N.D. Cal. Jan. 14, 2015), ECF No. 1.

[20] (Decl. Reese ¶¶ 4, 8–10, 15–19, 23–28.)

[21] (*See id.* at ¶¶ 7–10, 21-24.)

[22] (*Id.* at ¶¶ 25-28.)

4

For all of the reasons given herein, Plaintiffs respectfully ask the Court to grant preliminary approval of the Settlement, allowing the Claims Administrator to provide notice to the Settlement Class members, and to schedule a Fairness Hearing to consider final approval of the Settlement. *See* FED. R. CIV. P. 23(e). Plaintiffs also respectfully request to be appointed as representatives for the Settlement Class and for their counsel to be appointed as Class Counsel.[23] *See* FED. R. CIV. P. 23(g). The Court should also approve the notice program to which the Parties agreed in the Settlement, as it meets the requirements of due process and is the best notice practicable under the circumstances. *See* FED. R. CIV. P. 23(c).

## II.     THE TERMS OF THE PROPOSED SETTLEMENT

The Settlement Agreement defines the Settlement Class, describes the Parties' agreed-upon Settlement relief, and proposes a plan for disseminating notice to the Settlement Class members.

### A.     Certification of the Settlement Class

Under the Settlement Agreement, the Parties agree to seek certification of a nationwide Settlement Class defined as follows:

> All purchasers nationwide of all Seventh Generation Products that pertain to challenges to any representations on their labels that were asserted or could have been asserted in the Actions from November 14, 2008, through the date of the Preliminary Approval Order.
>
> The Settlement Class excludes any claims for personal injury. Also excluded from the Settlement Class are: (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

---

[23] The Settlement Agreement defines "Class Counsel" as the law firms of Reese LLP, Tycko & Zavareei LLP, Halunen Law, and The Sultzer Law Group, P.C. (§ 2.8.)

**B.    Relief for the Members of the Settlement Class**

The Settlement Agreement provides for significant injunctive and monetary relief.

With respect to monetary relief, the Settlement Agreement provides that Defendant will establish a Common Fund in the amount of $4,500,000 to pay: timely, valid, and approved Claims; all costs of notice and claims administration; judicially approved Incentive Awards; judicially approved Attorneys' Fees and Expenses; and any necessary taxes and tax expenses. (§ 4.1(a).) After disbursement of the foregoing amounts, uncashed checks and any remaining funds in the Common Fund shall be given to Center for Science in the Public Interest and National Consumer Law Center pursuant to the *cy pres* doctrine. (§ 4.4(c).)

Specifically, with respect to injunctive relief, the Settlement provides that Defendant will not use the terms "All Natural" or "100% Natural" on the labels of the SVG Products. (§ 4.5.) Additionally, the Settlement sets specific conditions for the use of the word "Natural" on any of the SVG Products. (§ 4.5.) Specifically, any product label using the word "Natural" will:

a.    Continue to use a biobased seal or biobased content disclosure on product labeling with percentage of biobased ingredients used pursuant to that program's specifications on the front or back label panels, space permitting and where appropriate;

b.    List ingredients on product labels; and provide ingredient information, including origin (plant-derived or synthetic) and function (*e.g.*, preservative) on SVG's website;

c.    Notwithstanding a and b above, abide by industry or regulatory labeling standards where applicable, now in existence or that which may be employed in the future; and

d.    To the extent that SVG continues to use Mehtylisothiasolinone ("MIT") or Benzisothiazolinone ("BIT") in any of the Products, it will include a disclosure on the SVG website that "hypoallergenic," "non-toxic," or similar statements on the packaging or advertising for such Products does not mean that a product or ingredient will not cause any allergic reaction or irritation in any person, and that a small percentage of individuals may have some form of allergic reaction or irritation to MIT or BIT.

6

**C.      Incentive Awards and Attorneys' Fees and Expenses**

Defendant has agreed not to oppose an application for payment of Incentive Awards of up to $5,000 to each of the named Plaintiffs to compensate them for the actions they took in their capacities as class representatives. (§ 8.6.) Defendant has also agreed not to oppose an application for payment of attorneys' fees to Class Counsel in an amount of up to 33% of the Settlement Fund, and for reimbursement of litigation expenses as compensation for Class Counsel's work on the Actions. (§ 8.1.)

**D.      Settlement Notice**

The Settlement Agreement proposes that the Court appoint The Angeion Group to administer the notice process and outlines the forms and methods by which notice of the Settlement Agreement will be given to the Settlement Class members, including notice of the deadlines to opt out of, or object to, the Settlement. (§ 5.1.)

The Settlement Agreement provides two forms that the Claims Administrator will use to disseminate notice of the Settlement Agreement to the Settlement Class members: a Long-Form Notice and a Summary Notice. (§ 5.1; Class Settlement Agreement, Exs. B, D.) The Long-Form Notice is designed to provide notice of the full terms of the Settlement Agreement.

In terms of the methods of notice, the Parties developed a robust notice program[24] with the assistance of Angeion Group that includes: (1) comprehensive web-based notice using paid banner ads on targeted websites; (2) additional web-based notice using "keyword" searches displaying banner ads; (3) national media through publication of a 1/2 page ad in *Organic Life* magazine and a 1/4 page ad in the California regional edition of *USA Today*; (4) a dedicated Settlement Website through which Settlement Class members can obtain more detailed

---

[24] The details of the notice program are set forth in the Declaration of Steven Weisbrot, filed concurrently herewith. (Class Settlement Agreement, Ex. C.)

information about the Settlement and access case documents; and (5) a toll-free telephone helpline through which Settlement Class members can obtain additional information about the Settlement and request the class notice and/or a Claim Form. (*See* Weisbrot Decl. ¶¶ 20.) The notice plan has been designed to obtain over 87,100,000 individual digital impressions, delivering an approximate 70.03% reach with an average frequency of 3.0 times each. (*Id.* at ¶ 9.) Coverage and exposure will be increased by the print media campaign, the Settlement Website, and the toll-free helpline. (*Id.* at ¶ 24.)

Under the Settlement Agreement, the Settlement Website (www.SVGClassAction.com) will post Settlement-related and case-related documents such as the Settlement Agreement, the Summary Notice, the Long-Form Notice, and the Preliminary Approval Order. (Class Settlement Agreement, Ex. B.) The Settlement Website will also include procedural information regarding the status of the Court approval process, such as announcements of the Fairness Hearing date, when the Final Order and Judgment has been entered, and when the Final Settlement Date has been reached. (Weisbrot Decl. ¶ 21.) To allow for the maximum convenience of the Settlement Class Members, claims may be submitted online.

## III.    ARGUMENT

### A.    The Court Should Preliminarily Approve the Settlement Agreement

Class Counsel have worked steadfastly to reach a fair, reasonable, and adequate Settlement. (*See generally* Decl. Reese.) Plaintiffs and their counsel believe the claims the Settlement resolves are strong and have merit. (*Id.* at ¶ 25.) They recognize, however, that significant expense and risk are associated with continuing to prosecute the claims through trial and any appeals. (Cal. Civ. Code § 5.1 (Deering).) In negotiating and evaluating the Settlement, Plaintiffs and Class Counsel have taken these costs and uncertainties into account, as well as the

delays inherent in complex class action litigation. (Cal. Civ. Code § 5.1 (Deering).) Additionally, in the process of investigating and litigating the Actions, Class Counsel conducted significant research on the consumer protection statutes at issue, as well as the overall legal landscape, to determine the likelihood of success and reasonable parameters under which courts have approved settlements in comparable cases. (*Id.* at ¶ 26.) In light of all of the foregoing, Class Counsel believe the present Settlement provides significant relief to the Settlement Class members and is fair, reasonable, adequate, and in the best interests of the Settlement Class. (*Id.* at ¶ 27.)

### 1.    Legal Standard

Under Rule 23(e)(2) of the Federal Rules of Civil Procedure, a court may approve a class action settlement "only . . . on finding that [the settlement agreement] is fair, reasonable, and adequate." FED. R. CIV. P. 23(E)(2). The "fair, reasonable, and adequate" standard effectively requires parties to show that a settlement agreement is both procedurally and substantively fair. Charron v. Wiener, 731 F.3d 241, 247 (2d Cir. 2013); accord McReynolds v. Richards-Cantave, 588 F.3d 790, 803–04 (2d Cir. 2009).

The Second U.S. Circuit Court of Appeals has recognized a "strong judicial policy in favor of settlements, particularly in the class action context." *McReynolds*, 588 F.3d at 803 (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("*Visa*")). "The compromise of complex litigation is encouraged by the courts and favored by public policy." *Visa*, 396 F.3d at 117 (citation omitted); *see also Hadel v. Gaucho, LLC*, No. 15 CIV. 3706 (RLE), 2016 WL 1060324, at *2 (S.D.N.Y. Mar. 14, 2016) ("Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere."). A "presumption of fairness, adequacy, and reasonableness may attach to a class

9

settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Visa*, 396 F.3d at 116 (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 (1995)).

"Preliminary approval is the first step in the settlement of a class action whereby the court 'must preliminarily determine whether notice of the proposed settlement . . . should be given to class members in such a manner as the court directs, and an evidentiary hearing scheduled to determine the fairness and adequacy of settlement.'" Manley v. Midan Rest. Inc., No. 14 CIV. 1693 (HBP), 2016 WL 1274577, at *8 (S.D.N.Y. Mar. 30, 2016) (citations omitted). "To grant preliminary approval, the court need only find that there is 'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." Id. (citations and internal quotation marks omitted); *accord Tart v. Lions Gate Entm't Corp.*, No. 14-CV-8004 AJN, 2015 WL 5945846, at *5 (S.D.N.Y. Oct. 13, 2015). "If the proposed settlement appears to fall within the range of possible approval, the court should order that the class members receive notice of the settlement." Manley, 2016 WL 1274577, at *8 (citation omitted); accord Hadel, 2016 WL 1060324, at *2; *Tart*, 2015 WL 5945846, at *5.

Here, the Settlement Agreement is both procedurally and substantively fair and falls well within the range of possible approval.

### 2. The Settlement Is Procedurally Fair, as It Is the Result of Good Faith, Arm's-Length Negotiations by Well-Informed and Highly Experienced Counsel

To demonstrate a settlement's procedural fairness, a party must show "that the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citation

omitted); *accord McReynolds*, 588 F.3d at 804; *see also Hall v. ProSource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128, at *5 (E.D.N.Y. Apr. 11, 2016).

Furthermore, participation of a highly qualified mediator in settlement negotiations strongly supports a finding that negotiations were conducted at arm's length and without collusion. *See D'Amato*, 236 F.3d at 85 ("[A] court-appointed mediator's involvement in precertification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure."); *Tiro v. Pub. House Investments, LLC*, No. 11 CIV. 7679 CM, 2013 WL 2254551, at *2 (S.D.N.Y. May 22, 2013) ("The assistance of an experienced JAMS employment mediator . . . reinforces that the Settlement Agreement is non-collusive."); *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012).

Here, Plaintiffs and their counsel conducted a thorough investigation and evaluation of the claims and defenses prior to filing the Actions and continued to analyze the claims throughout the pendency of the cases. (*See, e.g.*, Decl. Reese ¶¶ 5, 25.) Prior to agreeing to the Settlement, Class Counsel conducted significant discovery, including, in the litigation context, serving interrogatories and requests for the production of documents and deposing Defendant pursuant to Rule 30(b)(6). (*Id.* at ¶¶ 8–10, 15, 19, 23, 25-27, 29.) Through this investigation, discovery, and ongoing analysis, and through litigation of Plaintiffs' claims before this Court and in the Northern District of California, Class Counsel obtained an understanding of the strengths and weaknesses of the Actions. (*See, e.g., id.* at 23-27.)

Class Counsel have substantial experience litigating class actions and negotiating class settlements. (*Id.* at ¶¶ 34, 36-37; Ex. 2, Decl. Reese (Reese LLP's firm résumé); Decl. Wolchansky Supp. Pls.' Unopposed Mot. Prelim. Approval ("Decl. Wolchansky"), ¶ 6, Ex. 1

(Halunen Law's firm résumé); Decl. Kaliel Supp. Pls.' Unopposed Mot. Prelim. Approval ("Decl. Kaliel"), ¶¶ 6-7, Ex. 1 (Tycko & Zavareei LLP's firm résumé); Decl. Sultzer Supp. Pls.' Unopposed Mot. Prelim. Approval ("Decl. Sultzer") ¶ 6, Ex. 1 (The Sultzer Law Group's firm résumé).)  Moreover, the Parties participated in serious and informed negotiations before two highly qualified mediators from JAMS, Jed Melnick and the Honorable Edward A. Infante (Ret.), which led to an agreement in principle to settle the case and, ultimately, the finalized Settlement Agreement. (Decl. Reese ¶¶ 10, 16, 24.)

For the foregoing reasons, the Settlement Agreement is procedurally fair.

### 3. The Settlement Is Substantively Fair, as Application of the Factors Set Out in *City of Detroit v. Grinnell Corp.* Demonstrates

To demonstrate the substantive fairness of a settlement agreement, a party must show that the factors the Second Circuit set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"), weigh in favor of approving the agreement. <u>Charron</u>, 731 F.3d at 247. The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*McReynolds*, 588 F.3d at 804 (quoting *Grinnell*, 495 F.2d at 463). Here, the *Grinnell* factors overwhelmingly favor preliminary approval of the Settlement Agreement.

### (i) The complexity, expense, and likely duration of litigation

"The greater the 'complexity, expense and likely duration of the litigation,' the stronger the basis for approving a settlement." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663

(S.D.N.Y. 2015) (citations omitted). Consumer class action lawsuits, like the Actions, are complex, expensive, and lengthy. See, e.g., Dupler v. Costco Wholesale Corp., 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010); see also Manley, 2016 WL 1274577, at *9 ("Most class actions are inherently complex[.]"). Should the Court decline to approve the Settlement Agreement, further litigation would resume. As the discussion of the Actions' procedural history above shows, litigation to date has been costly and complicated; certainly, further litigation would be yet more costly, complex, and time-consuming. (Decl. Reese ¶ 25.) Such litigation could include contested class certification (and possibly decertification) proceedings and appeals, including competing expert testimony and contested *Daubert* motions; further costly nationwide discovery, including dozens of depositions, interrogatories, and requests for admission, and yet more voluminous document production; costly merits and class expert reports and discovery; and trial. (*Id.*) Each step towards trial would be subject to Defendant's vigorous opposition and appeal. (Id.) Even if the case were to proceed to judgment on the merits, any final judgment would likely be appealed, which would take significant time and resources. (Id.) These litigation efforts would be costly to all Parties and would require significant judicial oversight. (Id.)

In short, "litigation of this matter . . . through trial would be complex, costly and long." *Manley*, 2016 WL 1274577, at *9 (citation omitted). "The settlement eliminates [the] costs and risks" associated with further litigation. Meredith Corp., 87 F. Supp. 3d at 663. "It also obtains for the class prompt [] compensation for prior [] injuries." Id.

For all of these reasons, this factor weighs strongly in favor of preliminary approval.

### (ii)    The reaction of the class to the settlement

It is premature to address the reaction of the Settlement Class to the Settlement.

   **(iii)**  **The stage of the proceedings and the amount of discovery completed**

  The third *Grinnell* factor—the stage of the proceedings and the amount of discovery completed—considers "whether Class Plaintiffs had sufficient information on the merits of the case to enter into a settlement agreement . . . and whether the Court has sufficient information to evaluate such a settlement." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 224 (E.D.N.Y. 2013) (citations omitted).

  Here, "discovery has advanced sufficiently to allow the parties to resolve the case responsibly." Manley, 2016 WL 1274577, at *9. Class Counsel have conducted significant discovery related to Plaintiffs' claims both formally and informally, including examination of documents produced and responses to interrogatories, as well as deposition of Defendant pursuant to Rule 30(b)(6). Zeltser v. Merrill Lynch & Co., No. 13 CIV. 1531 FM, 2014 WL 4816134, at *6 (S.D.N.Y. Sept. 23, 2014) ("Here, through both formal discovery and an informal exchange of information prior to mediation, Plaintiffs obtained sufficient discovery to weigh the strengths and weaknesses of their claims and to accurately estimate the damages at issue."). (Decl. Reese ¶¶ 8–10, 15, 19, 23, 25-27, 29.) Plaintiffs also filed comprehensive briefs opposing Defendant's motions to dismiss and motions to strike. Consequently, Plaintiffs had sufficient information to evaluate the terms of the proposed Settlement. *See D.S. ex rel. S.S. v. New York City Dep't of Educ.*, 255 F.R.D. 59, 77 (E.D.N.Y. 2008) ("The amount of discovery undertaken has provided plaintiffs' counsel 'sufficient information to act intelligently on behalf of the class' in reaching a settlement.").

   **(iv)**  **The risks of establishing liability and damages**

  "Litigation inherently involves risks." Willix v. Healthfirst, Inc., No. 07-cv-1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (citation omitted). "[I]f settlement has any purpose

at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." <u>Banyai v. Mazur</u>, No. 00 CIV.9806 SHS, 2007 WL 927583, at *9 (S.D.N.Y. Mar. 27, 2007) (citation omitted); <u>accord</u> <u>Zeltser</u>, 2014 WL 4816134, at *6.

Plaintiffs recognize that, as with any litigation, the Actions involve uncertainties as to their outcome. (Decl. Reese ¶ 25.) Defendant continues to deny Plaintiffs' allegations, and should this matter proceed, it will vigorously defend itself on the merits. (*Id.* at ¶¶ 25, 28.) Defendant would likely appeal, if possible, decisions in Plaintiffs' favor. (*Id.* at ¶ 25.) Defendant would challenge Plaintiffs at every litigation step, presenting significant risks of ending the litigation while increasing costs to Plaintiffs and the Settlement Class members. (*Id.*) Further litigation presents no guarantee for recovery, let alone a recovery greater than the recovery for which the Settlement provides. (*See id.* at ¶¶ 25–28.)

For these reasons, the risks of establishing liability and damages strongly support preliminary approval.

### (v)     The risk of maintaining class action status through trial

The Actions settled before rulings on class certification, and the current certification is for settlement purposes only. (§ 9.3.) Defendant has stated that but for the Settlement, it would vigorously oppose class certification. (Decl. Reese ¶ 28.) <u>See</u> <u>In re Med. X-Ray Film Antitrust Litig.</u>, No. CV-93-5904, 1998 WL 661515, at *5 (E.D.N.Y. Aug. 7, 1998) (possibility that defendant would challenge maintenance of class in absence of settlement was risk to class and potential recovery). Furthermore, even if the Court were to certify a litigation class, the certification would not be set in stone. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."); *see also Brazil v. Dole Packaged Foods, LLC*, No.

12-CV-01831-LHK, 2014 WL 5794873, at *15 (N.D. Cal. Nov. 6, 2014) (decertifying Rule 23(b)(3) class in consumer fraud case). Given the risks, this factor weighs in favor of final approval. See, e.g., Mills v. Capital One, N.A., No. 14 CIV. 1937 HBP, 2015 WL 5730008, at *6 (S.D.N.Y. Sept. 30, 2015).

### (vi)    The ability of Defendant to withstand a greater judgment

It is more important that the Settlement Class receive some relief than possibly "yet more" relief. *See Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 201 (S.D.N.Y. 2012); see also Bezdek v. Vibram USA, Inc., 809 F.3d 78, 83 (1st Cir. 2015) ("The fact that a better deal for class members is imaginable does not mean that such a deal would have been attainable in these negotiations, or that the deal that was actually obtained is not within the range of reasonable outcomes."). Further, "[c]ourts have recognized that a [defendant's] ability to pay is much less important than the other *Grinnell* factors, especially where the other factors weigh in favor of approving the settlement." *In re Sinus Buster Products Consumer Litig.*, No. 12-CV-2429 (ADS)(AKT), 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014) (citations omitted). A "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." Viafara v. MCIZ Corp., No. 12 CIV. 7452 RLE, 2014 WL 1777438, at *7 (S.D.N.Y. May 1, 2014) (citation omitted). For these reasons, this factor is neutral.

### (vii)    The range of reasonableness of the settlement in light of the best possible recovery and in light of all the attendant risks of litigation

"There is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]" *Visa*, 396 F.3d at 119 (citation omitted). "In other words, the question for the Court is not whether the settlement

represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces[.]" *Bodon v. Domino's Pizza, LLC*, No. 09-CV-2941 SLT, 2015 WL 588656, at *6 (E.D.N.Y. Jan. 16, 2015) (citation omitted).

Here, the relief for which the Settlement Agreement provides is within the range of reasonableness, especially in light of the best possible recovery and in light of all the attendant risks of litigation. The gravamen of the Actions is that Defendant is deceiving consumers by labeling the SVG Products as "natural," when, in fact, they are not. The injunctive relief for which the Settlement provides—*i.e.*, permanent removal of the "All Natural" and "100% Natural" statements from the Products' labeling—is an excellent outcome both for the Settlement Class members and for future consumers. Furthermore, the cash compensation to which eligible Settlement Class members will be entitled in the event the Court approves the Settlement goes a significant way toward compensating Settlement Class members for the damages they incurred on account of Defendant's allegedly deceptive "natural" representations about the Products.

As discussed above, while Plaintiffs believe their claims are strong, continuation of this litigation poses significant risks. (Decl. Reese ¶ 25.) While continuation of the litigation might not result in an increased benefit to the Settlement Class, it would lead to substantial expenditure by both Parties. (*Id.*) Taking into account the risks and benefits Plaintiffs have outlined above, the Settlement falls within the "range of reasonableness." Class Counsel have achieved the best possible recovery considering the merits of the Settlement weighed against the cost and risks of further litigation. (*See id.* at ¶ 27.)

Thus, collectively and independently, the *Grinnell* factors warrant the conclusion that the Settlement Agreement is fair, adequate, and reasonable. As such, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement.

17

**B.    The Court Should Preliminarily Certify the Settlement Class**

A court may certify a settlement class upon finding that the action underlying the settlement satisfies all Rule 23(a) prerequisites and at least one prong of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614, 619–22 (1997). As Plaintiffs set forth below, the proposed Settlement Class satisfies all of the requirements of Rule 23(a) and Rule 23(b)(3), and, consequently, Plaintiffs respectfully ask the Court to certify the Settlement Class preliminarily for settlement purposes.

**1.    The Settlement Class Meets All Prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure**

Rule 23(a) has four prerequisites for certification of a class: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequate representation. FED. R. CIV. P. 23(A). The Settlement Class meets each prerequisite and, as a result, satisfies Rule 23(a).

**(i)    Numerosity**

Under Rule 23(a)(1), plaintiffs must show that the proposed class is "so numerous that joinder of all [its] members is impracticable." FED. R. CIV. P. 23(a)(1). The Second Circuit has found numerosity met where a proposed class is "obviously numerous." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). Here, there is no dispute that thousands of people nationwide purchased the SVG Products after November 14, 2008. Numerosity is easily satisfied. *Id.*

**(ii)    Commonality**

Under Rule 23(a)(2), plaintiffs must show that "questions of law or fact common to the [proposed] class" exist. FED. R. CIV. P. 23(A)(2). Commonality requires that the proposed class members' claims all centrally "depend upon a common contention," which "must be of such a nature that it is capable of classwide resolution," meaning that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011). "[F]or purposes of Rule 23(a)(2) even a single common question will do[.]" *Id.* (citation, quotation marks, and brackets omitted). The Second Circuit has construed this instruction liberally, holding that plaintiffs need only show that their injuries "derive[d] from defendants' . . . unitary course of conduct." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 84 (2d Cir. 2015).

Here, there are common questions of law and fact that will generate common answers apt to drive the resolution of the litigation, including but not limited to whether Defendant's representations that the SVG Products were "natural," "non-toxic," and "hypoallergenic" were likely to deceive reasonable consumers. (Am. Compl., ECF No. 41.) Resolution of this common question requires evaluation of the question's merits under an objective standard, *i.e.*, the "reasonable consumer" test. *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008); Ackerman v. Coca-Cola Co., No. CV-09-0395 (JG), 2010 WL 2925955, at *16 (E.D.N.Y. July 21, 2010). Thus, commonality is satisfied.

### (iii)    Typicality

Under Rule 23(a)(3), plaintiffs must show that the proposed class representatives' claims "are typical of the [class'] claims." FED. R. CIV. P. 23(A)(3). Plaintiffs must show that "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." Robidoux v. Celani, 987 F.2d 931, 936–37 (2d Cir. 1993) (citations omitted). "[D]ifferences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims." In re Nissan Radiator/Transmission Cooler Litig., No. 10 CV 7493 VB, 2013 WL 4080946, at *19 (S.D.N.Y. May 30, 2013).

District courts within the Second Circuit have repeatedly found typicality easily satisfied in the context of preliminary approval of a settlement class. E.g., Manley, 2016 WL 1274577, at

*4; Hadel, 2016 WL 1060324, at *2; Tart, 2015 WL 5945846, at *3; *see Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005) ("The typicality requirement 'is not demanding.'").

Here, typicality is met because the same unlawful conduct by Defendant—*i.e.*, its allegedly misleading marketing of the Products as "natural"—was directed at, or affected, both Plaintiffs and the members of the proposed Settlement Class. Robidoux, 987 F.2d at 936–37.

### (iv)    Adequacy of representation

Under Rule 23(a)(4), plaintiffs must show that the proposed class representatives will "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(A)(4). Plaintiffs must demonstrate that: (1) the class representatives do not have conflicting interests with other class members; and (2) class counsel is "qualified, experienced and generally able to conduct the litigation." *Marisol A.*, 126 F.3d at 378.

To satisfy the first requirement, Plaintiffs must show that "the members of the class possess the same interests" and that "no fundamental conflicts exist" between a class' representative(s) and its members. Charron, 731 F.3d at 249. Here, Plaintiffs possess the same interests as the proposed Settlement Class members because Plaintiffs and the Settlement Class members were all allegedly injured in the same manner based on the same misleading "natural" marketing concerning the SVG Products.

With respect to the second requirement, Class Counsel are qualified, experienced, and generally able to conduct the litigation. Class Counsel are not representing clients with interests at odds with the interests of the Settlement Class Members and are not acting as class representatives. (Decl. Reese ¶ 35.) Further, they have invested considerable time and resources into the prosecution of the Actions. (*See, e.g., id.* at ¶ 29.) They have qualified as lead counsel in other class actions and have a proven track record of successful prosecution of significant class

actions. (Decl. Reese ¶¶ 34, 36–37, Ex. 2; Decl. Wolchansky, ¶ 6, Ex. 1; Decl. Kaliel, ¶¶ 6-7, Ex. 1; Decl. Sultzer, ¶ 6, Ex. 1.) "In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to prosecute vigorously the action on behalf of the class." *In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, 241 F.R.D. 185, 199 n.99 (S.D.N.Y. 2007) (citation omitted).

For the foregoing reasons, Plaintiffs have satisfied the adequacy prerequisite.

### 2.      The Settlement Class Meets All Rule 23(b)(3) Requirements

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc.*, 521 U.S. at 614. Plaintiffs seek certification under Rule 23(b)(3). Under that rule, the court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(B)(3).

### (i)      Common legal and factual questions predominate in this action

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623 (citation omitted). The Second Circuit has held that "to meet the predominance requirement . . . a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006) (citation omitted). In the context of a request for settlement-only class certification, concerns about whether individual issues "would present intractable management problems" at trial drop out because "the proposal is that there be no trial." *Id.* at 620 (citation omitted). As a result, "the

predominance inquiry will sometimes be easier to satisfy in the settlement context." Tart, 2015 WL 5945846, at *4 (citation omitted). Furthermore, consumer fraud cases readily satisfy the predominance inquiry. *Amchem Prods., Inc.*, 521 U.S. at 625.

Here, for settlement purposes, the central common questions predominate over any questions that may affect individual Settlement Class members. The central common questions include whether Defendant's marketing of the SVG Products as "natural," "non-toxic," and "hypoallergenic" was likely to deceive reasonable consumers and whether the representations were material. These issues are subject to "generalized proof" and "outweigh those issues that are subject to individualized proof." *In re Nassau Cty. Strip Search Cases*, 461 F.3d at 227–28 (citation omitted). The Settlement Class meets the predominance requirement for settlement purposes.

### (ii)     A class action is the superior means to adjudicate Plaintiffs' claims

Rule 23(b)(3) also requires that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(B)(3). Here, the class action mechanism is superior to individual actions for numerous reasons. First, "[t]he potential class members are both significant in number and geographically dispersed" and "[t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions." Meredith Corp., 87 F. Supp. 3d at 661 (citation omitted).

Additionally, a class action is superior here because "it will conserve judicial resources" and "is more efficient for Class Members, particularly those who lack the resources to bring their claims individually." Zeltser, 2014 WL 4816134, at *3 (citation omitted). The cost to purchase any of the SVG Products is less than $50—thus, the potential recovery for any individual

Settlement Class member is relatively small. As a result, the expense and burden of litigation make it virtually impossible for the Settlement Class members to seek redress on an individual basis. By contrast, in a class action, the cost of litigation is spread across the entire class, thereby making litigation viable. See, e.g., Tart, 2015 WL 5945846, at *5. "Employing the class device here will not only achieve economies of scale for Class Members, but will also conserve judicial resources and preserve public confidence in the integrity of the system by avoiding the waste and delay repetitive proceedings and preventing inconsistent adjudications." Zeltser, 2014 WL 4816134, at *3 (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1023 (9th Cir. 1998); other citations omitted). For all of the foregoing reasons, a class action is superior to individual suits.

In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, the Court should preliminarily certify the Settlement Class.

### C.   The Court Should Approve the Proposed Notice Plan

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.312 (2004). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." Visa, 396 F.3d at 113 (citations omitted).

The Court is given broad power over which procedures to use for providing notice so long as the procedures are consistent with the standards of reasonableness that the due process clauses in the U.S. Constitution impose. Handschu v. Special Servs. Div., 787 F.2d 828, 833 (2d Cir. 1986) ("[T]he district court has virtually complete discretion as to the manner of giving notice to class members.").

"When a class settlement is proposed, the court 'must direct to class members the best notice that is practicable under the circumstances.'" *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014) (summary order) (citing FED. R. CIV. P. 23(c)(2)(B), (e)(1)). The notice must include: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who request exclusions; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." FED. R. CIV. P. 23(C)(2)(B). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Visa*, 396 F.3d at 114.

Here, the robust proposed notice program meets the requirements of due process and the Federal Rules of Civil Procedure. The proposed methods Plaintiffs identified above for providing notice to the Settlement Class members are reasonable. (*See supra* Part II.D.) Notice to the Settlement Class will be achieved shortly after entry of the Preliminary Approval Order. (§ 5.1.) The Notice will be provided to Class members so they have sufficient time to decide whether to participate in the settlement, object, or opt out. (§ 5.1.)

The proposed notice program also provides sufficiently detailed notice. The notice defines the Settlement Class; explains all Settlement Class members' rights, the Parties' releases, and the applicable deadlines; and describes in detail the injunctive and monetary terms of the Settlement, including the procedures for allocating and distributing Settlement funds among the Settlement Class members. (Class Settlement Agreement, Ex. B.) It will plainly indicate the time

24

and place of the Fairness Hearing, and it plainly explains the methods for objecting to, or opting out of, the Settlement. (Cal. Civ. Code § 5.1 (2004).) It details the provisions for payment of Attorneys' Fees and Expenses and class representative Incentive Awards, and it provides contact information for Class Counsel. (Cal. Civ. Code § 5.1 (2004).)

For the foregoing reasons, Plaintiffs respectfully request the Court approve the notice plan.

## IV.    PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement Agreement, the Court should set the Fairness Hearing, as well as dates for publishing the notice and deadlines for objecting to, or opting out of, the Settlement and filing papers in support of the Settlement. Plaintiffs respectfully propose the following schedule:

| Event | Proposed Date/Deadline | Date/Deadline On or After[25] |
|---|---|---|
| Deadline for dissemination of notice to the Settlement Class members | 14 calendar days after the Court enters the Preliminary Approval Order | July 22, 2016 |
| Deadline for filing papers in support of final approval of Settlement, and Class Counsel's application for Attorneys' Fees and Expenses | 44 calendar days before the Fairness Hearing | September 3, 2016 |
| Deadline for receipt of objections and opt-outs | 30 calendar days before the Fairness Hearing | September 17, 2016 |
| Deadline for Settlement Class Members to file a Notice of Intention to appear at the Fairness Hearing | 15 calendar days before the Fairness Hearing | October 2, 2016 |
| Deadline for Settlement | 10 calendar days before the | October 7, 2016 |

---

[25] Plaintiffs have estimated the specific proposed dates, assuming the Court enters the proposed Preliminary Approval Order on or about July 8, 2016. In the event the Court does not enter the proposed Preliminary Approval Order on or before that date, Class Counsel respectfully request that the Court provide for the same separation of dates as set forth in the proposed schedule.

| Administrator to file report to the Court | Fairness Hearing | |
|---|---|---|
| Deadline for filing reply papers | 7 calendar days before the Fairness Hearing | October 10, 2016 |
| Fairness Hearing | At least 100 calendar days from entry of the Preliminary Approval Order | October 17, 2016 |

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court: (1) certify the Settlement Class and appoint Plaintiffs as the class representatives and Reese LLP, Tycko & Zavareei LLP, Halunen Law, and The Sultzer Law Group, P.C., as Class Counsel; (2) preliminarily approve the Settlement Agreement; (3) approve the form and manner of the class action settlement notice; and (4) set a date and time for the Fairness Hearing.

Date: July 1, 2016                          Respectfully submitted,

                                            **THE SULTZER LAW GROUP**

                                    By: _____
                                            Jason P. Sultzer
                                            *sultzerj@thesultzerlawgroup.com*
                                            85 Civic Center Plaza, Suite 104
                                            Poughkeepsie, New York 12601
                                            Telephone: (845) 483-7100
                                            Facsimile: (888) 749-7747

                                            **REESE LLP**
                                            Michael R. Reese
                                            *mreese@reesellp.com*
                                            100 West 93rd Street, 16th Floor
                                            New York, New York 10025
                                            Telephone: (212) 643-0500
                                            Facsimile: (212) 253-4272

                                            **TYCKO & ZAVAREEI LLP**
                                            Jeffrey D. Kaliel
                                            *jkaliel@tzlegal.com*
                                            2000 L. Street, Northwest, Suite 808
                                            Washington, District of Columbia 20036
                                            Telephone: (202) 973-0900
                                            Facsimile: (202) 973-0950

                                            **HALUNEN LAW**
                                            Melissa Wolchansky
                                            *wolchansky@halunenlaw.com*
                                            1650 IDS Center
                                            80 South Eighth Street
                                            Minneapolis, Minnesota 55402
                                            Telephone: (612) 605-4098
                                            Facsimile: (612) 605-4099

                                            *Counsel for Plaintiffs and the Proposed Class*

27

## CERTIFCATE OF SERVICE

I, Jason P. Sultzer, hereby certify that on July 1, 2016, I caused an electronic copy of the foregoing document to be served via email and to all counsel of record via the court's ECF system.

_____
Jason P. Sultzer