**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**THE SULTZER LAW GROUP**
Jason P. Sultzer
*sultzerj@thesultzerlawgroup.com*
85 Civic Center Plaza, Suite 104
Poughkeepsie, New York 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747

**TYCKO & ZAVAREEI LLP**
Jeffrey D. Kaliel
*jkaliel@tzlegal.com*
2000 L Street, Northwest, Suite 808
Washington, District of Columbia 20036
Telephone: (202) 973-0900
Facsimile: (202) 973- 0950

**HALUNEN LAW**
Melissa Wolchansky
*wolchansky@halunenlaw.com*
1650 IDS Center, 80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099

*Court Appointed Class Counsel*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TZIVA RAPOPORT-HECHT, MAGGIE TSAN, and ERICA WILDSTEIN, individually and on behalf of all others similarly situated, | No. 7:14-cv-09087-KMK |
| Plaintiffs, | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT** |
| v. | |
| SEVENTH GENERATION, INC., | |
| Defendant. | |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iv

I.  INTRODUCTION .................................................................................................1

II.  OVERVIEW OF THE HISTORY OF THE LITIGATION ...............................2

III.  TERMS OF THE PROPOSED SETTLEMENT ................................................2

    A.  The Settlement Provides for Substantial Monetary and Injunctive Relief .............2

    B.  Defendant Will Pay Incentive Awards and Attorneys' Fees and Expenses ...........3

    C.  Settlement Notice ....................................................................................................3

IV.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
    ADEQUATE AND WARRANTS FINAL APPROVAL ....................................4

    A.  Legal Standard ........................................................................................................4

    B.  The Proposed Settlement Is Procedurally Fair .......................................................6

    C.  The Proposed Settlement Is Substantively Fair ......................................................7

        1.  The Complexity, Expense, and Likely Duration of the Litigation ..............8

        2.  The Reaction of the Settlement Class .........................................................9

        3.  The Stage of the Proceedings and the Amount of Discovery
            Completed .................................................................................................10

        4.  The Risks of Establishing Liability and Damages ....................................12

        5.  The Risks of Maintaining Class Action Status Through Trial ..................13

        6.  The Ability of Defendant to Withstand a Greater Judgment .....................14

        7.  The Range of Reasonableness of the Settlement in Light of the
            Best Possible Recovery and in Light of All the Attendant Risks of
            Litigation ..................................................................................................14

V.      THE COURT SHOULD CONFIRM CERTIFICATION OF THE SETTLEMENT
        CLASS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23.....................16

        A.      Legal Standard ........................................................................................16

        B.      The Settlement Class Satisfies Federal Rule of Civil Procedure 23(a) ................16

        C.      The Settlement Class Meets the Requirements of Federal Rule of Civil
                Procedure 23(b)(3)....................................................................................19

VI.     THE CLASS NOTICE SATISFIES THE REQUIREMENTS OF FEDERAL
        RULE OF CIVIL PROCEDURE 23 AND OF DUE PROCESS .....................................21

        A.      The Distribution and Timing of the Notice Satisfy Federal Rule of Civil
                Procedure 23 and the U.S. Constitution.................................................21

        B.      The Content of the Notice and the Opportunity to Opt Out Satisfy Federal
                Rule of Civil Procedure 23 and the U.S. Constitution...........................................24

VII.    CONCLUSION.................................................................................................25

CERTIFICATE OF SERVICE ...........................................................................................27

# TABLE OF AUTHORITIES

**CASES**

*Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML,
    2013 WL 7044866 (E.D.N.Y. July 18, 2013) ........................................................ 15

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) .......................................................................... 16, 18, 19

*Bravo v. Palm W. Corp.*, No. 14 CIV. 9193 SN,
    2015 WL 5826715 (S.D.N.Y. Sept. 30, 2015) ...................................................... 20

*Brazil v. Dole Packaged Foods, LLC*, No. 14-17480,
    2016 WL 5539863 (9th Cir. Sept. 30, 2016) ....................................................... 13

*Charron v. Pinnacle Grp. N.Y. LLC*,
    874 F. Supp. 2d 179 (S.D.N.Y. 2012) ............................................................. 10

*Charron v. Wiener*,
    731 F.3d 241 (2d Cir. 2013) ..................................................................... 5, 18

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ................................................................. passim

*City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014) ........................................................ 12

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995) ........................................................................ 17

*Cty. of Suffolk v. Long Island Lighting Co.*,
    907 F.2d 1295 (2d Cir. 1990) ..................................................................... 10

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ..................................................................... 5, 9, 14

*DeLeon v. Wells Fargo Bank, N.A.*, No. 1:12-CV-04494,
    2015 WL 2255394 (S.D.N.Y. May 11, 2015) ....................................................... 10

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ............................................................................... 22

*Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405 (CM),
    2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ............................................... 5, 6, 8, 14

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) ........................................................................ 5

*Greenspun v. Bogan*,
   492 F.2d 375 (1st Cir. 1974).................................................................. 23

*Grunin v. Int'l House of Pancakes*,
   513 F.2d 114 (8th Cir. 1975) ............................................................... 23

*Hecht v. United Collection Bureau, Inc.*,
   691 F.3d 218 (2d Cir. 2012)................................................................. 22

*Hughes v. The Ester C Co.*, No. 12-CV-0041 (PKC),
   2016 WL 6092487 (E.D.N.Y. Sept. 30, 2016) ......................................... 15

*In re Agent Orange Prod. Liab. Litig. MDL No. 381*,
   818 F.2d 145 (2d Cir. 1987)................................................................. 22

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000)................................................... 8, 14

*In re Avon Anti-Aging Skincare Creams & Prod. Mktg. & Sales Practices Litig.*,
   No. 13-CV-150 JPO, 2015 WL 5730022 (S.D.N.Y. Sept. 30, 2015)...................... 15

*In re Drexel Burnham Lambert Grp., Inc.*,
   960 F.2d 285 (2d Cir. 1992)............................................................ 18, 19

*In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM,
   2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ................................... passim

*In re Ira Haupt & Co.*,
   304 F. Supp. 917 (S.D.N.Y. 1969)....................................................... 12

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM),
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ......................................... 23

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ........................................................... 5

*In re Scotts EZ Seed Litig.*, No. 12 CV 4727 VB,
   2015 WL 5502053 (S.D.N.Y. July 7, 2015) ........................................... 22

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
   No. 06 CIV. 5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008).............. 9, 11

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)................................................................. 10

*Jermyn v. Best Buy Stores, L.P.*,
   256 F.R.D. 418 (S.D.N.Y. 2009) ......................................................... 17

*Joel A. v. Giuliani*,
  218 F.3d 132 (2d Cir. 2000)................................................................. 5

*Johnson v. Brennan*, No. 10 CIV. 4712 CM,
  2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ........................................ 11

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................... 9

*Manley v. Midan Rest. Inc.*, No. 14 CIV. 1693 (HBP),
  2016 WL 1274577 (S.D.N.Y. Mar. 30, 2016) .................................. 18, 20

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997)................................................................ 18

*Matheson v. T-Bone Rest., LLC*, No. 09 CIV. 4214 DAB,
  2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) ....................................... 11

*McReynolds v. Richards-Cantave*,
  588 F.3d 790 (2d Cir. 2009)......................................................... 5, 6, 8

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015).............................................. passim

*Miller v. Republic Nat. Life Ins. Co.*,
  559 F.2d 426 (5th Cir. 1977) .............................................................. 23

*Morris v. Affinity Health Plan, Inc.*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012).................................................. 6

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)............................................................................ 21

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985)............................................................................ 21

*Raniere v. Citigroup Inc.*,
  310 F.R.D. 211 (S.D.N.Y. 2015) ..................................................... passim

*Reyes v. Altamarea Grp., LLC*, No. 10-CV-6451 RLE,
  2011 WL 4599773 (S.D.N.Y. June 3, 2011) .......................................... 6

*Ries v. Arizona Beverages USA LLC*, No. 10-01139 RS,
  2013 WL 1287416 (N.D. Cal. Mar. 28, 2013)....................................... 13

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993)................................................................ 18

*Saldana v. Middletown Car-G-Cam Uni Corp.*, No. 15 CIV. 3651 (NSR),
   2015 WL 12591678 (S.D.N.Y. Sept. 23, 2015) .................................................. 18, 21

*Segedie v. Hain Celestial Grp., Inc.*, No. 14-CV-5029 NSR,
   2015 WL 2168374 (S.D.N.Y. May 7, 2015) ....................................................... 17

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
   659 F.3d 234 (2d Cir. 2011) ............................................................................. 20

*Shapiro v. JPMorgan Chase & Co.*, No. 11 CIV. 7961 CM,
   2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ............................................ 5, 8, 12

*Sykes v. Mel Harris & Associates, LLC*,
   285 F.R.D. 279 (S.D.N.Y. 2012) ...................................................................... 17

*Tart v. Lions Gate Entm't Corp.*, No. 14-CV-8004 AJN,
   2015 WL 5945846 (S.D.N.Y. Oct. 13, 2015) .............................................. 19, 21

*TBK Partners, Ltd. v. W. Union Corp.*,
   675 F.2d 456 (2d Cir. 1982) ............................................................................. 10

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ..................................................................................... 20

*Viafara v. MCIZ Corp.*, No. 12 CIV. 7452 RLE,
   2014 WL 1777438 (S.D.N.Y. May 1, 2014) ............................................ 9, 10, 12, 15

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ......................................................................................... 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ........................................................................ passim

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ........................................................................... 17

*Zeltser v. Merrill Lynch & Co.*, No. 13 CIV. 1531 FM,
   2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) ........................................... 11, 15

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 23 ................................................................ passim

Federal Rule of Civil Procedure 30 .................................................................. 7, 11

U.S. Constitution.................................................................................. iii, 21, 22, 24

Plaintiffs[1] Tziva Rapoport-Hecht, Maggie Tsan, and Erica Wildstein, individually and on behalf of all others similarly situated, respectfully submit this memorandum of law in support of their unopposed motion for final approval of the Parties' Settlement Agreement.

## I.    INTRODUCTION

The Settlement Agreement presently before the Court resolves Plaintiffs' claims against Defendant and is the product of the diligent efforts of all Parties. Plaintiffs' objectives in filing the lawsuit were to remedy the alleged deceptions in the labeling and marketing  the products of defendant Seventh Generation ("SVG") and to compensate damaged Settlement Class Members. Through the Settlement, they have achieved both goals. As a result of the Settlement, Class Members will be compensated from a Settlement Fund totaling $4,500,000 (§ 4.1(a)), with Settlement Class Members with proof of purchase entitled to reimbursement of the purchase price stated on the receipt with no cap or limit (§ 4.2(j)(i)), and Settlement Class Members without proof of purchase may seek reimbursement for 50% of the average purchase price of each SVG Product, up to 10 SVG Products (§ 4.2(j)(ii)).[2] Additionally, Defendant will make substantive changes to the advertising of the SVG Products, including permanent removal of the "All Natural" and "100% Natural" SVG Product labeling.  This recovery is more than Settlement Class Members would likely recover if successful at trial on the premium price theory the Amended Complaint asserts.

The Settlement was reached after thorough investigation by Plaintiffs, significant discovery, and extensive arm's-length negotiations, including two mediation sessions before the

---

[1] Unless otherwise indicated, all capitalized terms have the same meaning as in the Settlement Agreement. (*See* Class Settlement Agreement, ECF No. 48-1.) References to "§ __" are to sections in the Settlement Agreement.

[2] Monetary relief for the Settlement Class Members who submit timely, valid, and approved Claims is subject to *pro rata* increase or decrease if there are excess funds or insufficient funds in the Settlement Fund. (§ 4.4.)

Honorable Edward A. Infante (Ret.) of JAMS in San Francisco, California, a mediation session before Jed Melnick of JAMS in New York, New York, and multiple settlement conferences. Plaintiffs submit this motion for final approval to bring closure to this matter.

For all of the reasons set forth herein, Plaintiffs respectfully apply to this Court for entry of an order (i) confirming certification of the Settlement Class[3] and continuing the appointment of Tziva Rapoport-Hecht, Maggie Tsan, and Erica Wildstein as representatives of the Settlement Class and Reese LLP, Tycko & Zavareei LLP, Halunen Law, and The Sultzer Law Group as Class Counsel; (ii) granting Final Approval of the Settlement; and (iii) entering the Order and Final Judgment in this Action.

## II.     OVERVIEW OF THE HISTORY OF THE LITIGATION

The accompanying Declaration of Michael R. Reese is an integral part of this submission. Plaintiffs respectfully refer the Court to it for, among other things, a detailed description of the factual and procedural history of the litigation and the claims and defenses the Parties asserted.

## III.    TERMS OF THE PROPOSED SETTLEMENT

### A.      The Settlement Provides for Substantial Monetary and Injunctive Relief

The Settlement Agreement provides for significant monetary and injunctive relief.

With respect to monetary relief, the Settlement Agreement provides that Defendant will establish a common fund in the amount of $4,500,000 to pay: timely, valid, and approved

---

[3] On October 12, 2016, the Court preliminarily certified the following Settlement Class pursuant to Rules 23(a) and (b)(3) for settlement purposes only (*see* Order Preliminarily Approving Class Action Settlement ¶¶ 2–4, ECF No. 52): all persons and entities who, during the Class Period, both resided in the United States and purchased in the United States any of the SVG Products for their household use or personal consumption and not for resale. Excluded from the Settlement Class are: (a) SVG's board members or executive-level officers, including its attorneys; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Settlement Class in accordance with the procedures approved by the Court.

Claims; all costs of notice and claims administration; judicially approved incentive awards; judicially approved attorneys' fees and expenses; and any necessary taxes and tax expenses. (§ 4.1(a).) After disbursement of the foregoing amounts, uncashed checks and any remaining funds in the common fund shall be given to the Center for Science in the Public Interest and the National Consumer Law Center pursuant to the *cy pres* doctrine. (§ 4.4(c).)

With respect to injunctive relief, the Settlement provides that Defendant will not use the terms "All Natural" or "100% Natural" on the labels of the SVG Products. (§ 4.5.)

## B. Defendant Will Pay Incentive Awards and Attorneys' Fees and Expenses

The Settlement Agreement provides that Class Counsel may apply for an award of Attorneys' Fees and Expenses not to exceed $1,500,000 and incentive awards to the class representatives of up to $5,000 each. (§§ 8.1, 8.3, 8.6.) SVG agrees not to oppose these applications. (*See id.*)

## C. Settlement Notice

The Notice Plan was implemented in accordance with the terms the Court approved. (*See* Order Preliminarily Approving Class Action Settlement ¶¶ 9–10.) On October 17, 2016, the Settlement Website and a toll-free telephone number went live. (Decl. Weisbrot ¶¶ 12–13 (filed concurrently herewith); *id.*, Ex. 7.) On October 19, 2016, SVG provided the Angeion Group, LLC ("Angeion"), with a customer list containing 5,546 records based on sales through SVG's website. (Decl. Weisbrot ¶ 5.) On October 26, 2016, Angeion caused 4,846 postcards containing the Summary Settlement Notice to be mailed to individuals for which the list provided mailing addresses.[4] (*Id.* at ¶ 6; *id.*, Ex. 3.) On the same day, Angeion caused 682 emails containing the Summary Settlement Notice to be sent to individuals for which SVG's list provided email

---

[4] As of December 12, 2016, Angeion had caused 154 postcards that the U.S. Post Office returned as undeliverable to be re-mailed/forwarded to updated addresses. (Decl. Weisbrot ¶ 6.)

addresses but not mailing addresses. (Decl. Weisbrot ¶ 7; *id.*, Ex. 3.)

Also on October 26, 2016, Angeion began running the Internet banner notice, which continued for four consecutive weeks and served a total of 90,150,502 impressions. (Decl. Weisbrot ¶ 8; *id.*, Ex. 4.) On October 31, 2016, with the Parties' approval,[5] Angeion caused digital plan to commence on *Organic Life*'s website and in its e-newsletter that ran for a four-week period and served 508,385 impressions. (Decl. Weisbrot ¶ 10; *id.*, Ex. 6.) On October 31, November 7, November 14, and November 21, 2016, Angeion caused the Short Form Notice to be published in the California regional edition of *USA Today*. (Decl. Weisbrot ¶ 9; *id.*, Ex. 5.)

The details of the Notice Plan, including the methodology underlying its design, were explained in the Declaration of Steven Weisbrot, Esq. on Adequacy of Notice Plan (*see* Decl. Weisbrot, Ex. 1), and a summary of the Notice Plan's implementation is in the Declaration of Steven Weisbrot, Esq., filed concurrently herewith. The Notice Plan delivered a 72.77% reach (not including the print publication in the California regional edition of *USA Today* or the direct mail and email notice), exceeding the plan's target of 70.03%. (*Id.* at ¶ 11.) The claims data reflect the Notice Plan's success: as of December 12, 2016, Angeion has received 45,602 Claim Form submissions from Settlement Class Members. (*Id.* at ¶ 15.)

## IV. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS FINAL APPROVAL

### A. Legal Standard

Under Federal Rule of Civil Procedure 23(e), "[a] court may approve a class action settlement if it is 'fair, adequate, and reasonable, and not a product of collusion.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("*Visa*") (quoting *Joel A. v.*

---

[5] Due to limitations of *Organic Life*'s print schedule and the timing of Preliminary Approval, publication in *Organic Life* magazine was not feasible. (Decl. Weisbrot ¶ 10.)

*Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)); *see also* FED. R. CIV. P. 23(e)(2). A court evaluating a class action settlement under this standard analyzes both its procedural fairness and its substantive fairness. *Visa*, 396 F.3d at 116. To determine procedural fairness, courts examine the negotiating process leading to settlement, "to ensure that the settlement resulted from an arm's-length, good faith negotiation between experienced and skilled litigators." *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts in the Second Circuit use the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

"The settlement of complex litigation is strongly favored." *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405 (CM), 2015 WL 10847814, at *4 (S.D.N.Y. Sept. 9, 2015). This is particularly so for class actions. *Shapiro v. JPMorgan Chase & Co.*, No. 11 CIV. 7961 CM, 2014 WL 1224666, at *6 (S.D.N.Y. Mar. 24, 2014); *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").

The U.S. Court of Appeals for the Second Circuit has "recognized a presumption of fairness, reasonableness, and adequacy as to the settlement where 'a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009); *see also Fleisher*, 2015 WL 10847814, at *5 ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement.").

As Plaintiffs show below, the Settlement is procedurally and substantively fair, reasonable, and adequate, and it warrants final approval.

## B. The Proposed Settlement Is Procedurally Fair

The proposed settlement is procedurally fair because it was reached by seasoned counsel after they had taken meaningful discovery, thoroughly analyzed the strengths and weaknesses of the claims and defenses, and engaged in vigorous and hard-fought arm's-length negotiations, including negotiations with the assistance of two highly qualified mediators and numerous discussions in person, telephonically, and via email. *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 217 (S.D.N.Y. 2015) ("A proposed settlement is procedurally fair when it is reached through arm's length negotiations between experienced, capable counsel and after meaningful discovery."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion," since "[t]he settlement was reached after Plaintiffs had conducted a thorough investigation and evaluated the claims, and after arm's-length negotiations between the parties," including with an experienced class action mediator); *see McReynolds*, 588 F.3d at 803.

Involvement of an experienced mediator in settlement negotiations raises the presumption that the settlement meets the requirements of due process. *Fleisher*, 2015 WL 10847814, at *5 ("The extensive participation of an experienced mediator also 'reinforces that the Settlement Agreement is non-collusive.'"); *Reyes v. Altamarea Grp., LLC*, No. 10-CV-6451 RLE, 2011 WL 4599773, at *1 (S.D.N.Y. June 3, 2011) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."); *see Visa*, 396 F.3d at 116–17.

Here, the Parties reached the Settlement after Plaintiffs had conducted a thorough investigation and evaluation of the claims and defenses and after extensive arm's-length negotiations and information exchange between the Parties. (Decl. Reese ¶¶ 9–28.) Plaintiffs conducted discovery both prior to and after filing suit. (*Id.* at ¶¶ 10–14, 22.) Pre-suit discovery

included exchange of documents and information related to the case and a meeting between Class Counsel, SVG's counsel, and a representative of SVG. (*Id.* at ¶¶ 13–14, 24.) After Plaintiffs filed suit, they served, and SVG responded to, interrogatories and requests for production of documents, and Plaintiffs deposed SVG under Federal Rule of Civil Procedure 30(b)(6). (*Id.* at ¶ 22.) In response to Plaintiffs' document requests, SVG produced 193,218 pages of electronic documents, which Class Counsel reviewed. (*Id.*)

On June 18, 2014, and September 8, 2014, SVG and Class Counsel held mediation sessions before the Honorable Edward A. Infante (Ret.) of JAMS in San Francisco, California, during which they engaged in a vigorous exchange regarding their respective claims and defenses. (Decl. Reese ¶¶ 16, 25.) The parties did not settle, but continued negotiating, and on October 14, 2015, SVG and Class Counsel held a further mediation session before Jed Melnick of JAMS in New York, New York. (*Id.* at ¶¶ 16, 18, 26.) Again, the Parties did not reach a settlement, but they nonetheless continued to discuss settlement while contemporaneously litigating the Action. (*Id.* at ¶ 26.) On March 19, 2016, after extensive and hard-fought negotiations spanning over a year and a half, the Parties entered into a Memorandum of Understanding regarding a proposed Settlement, and they subsequently spent several months finalizing and formalizing the Settlement Agreement. (*Id.* at ¶ 26.) The Parties finally executed the Settlement on June 30, 2016. (*Id.*) At all times during the settlement process, the parties negotiated on an arm's-length basis. (*Id.* at ¶ 27.)

As the foregoing demonstrates, the Settlement is procedurally fair.

## C. The Proposed Settlement Is Substantively Fair

In *Grinnell*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement. *Grinnell*, 495 F.2d at 448. The *Grinnell* factors

guide district courts in making this determination. They are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement . . . in light of the best possible recovery; (9) the range of reasonableness of the settlement . . . to a possible recovery in light of all the attendant risks of litigation.

*McReynolds*, 588 F.3d at 804. "In applying these factors, 'not every factor must weigh in favor of the settlement, but rather the court should consider the totality of these factors in light of the particular circumstances.'" *Fleisher*, 2015 WL 10847814, at *5; *accord In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 WL 7323417, at *5 (S.D.N.Y. Dec. 19, 2014) ("*Hi-Crush Partners*").

Evaluation of the proposed Settlement under the *Grinnell* factors supports final approval.

### 1. The Complexity, Expense, and Likely Duration of the Litigation

"This factor captures the probable costs, in both time and money, of continued litigation." *Shapiro*, 2014 WL 1224666, at *8. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000); *accord Shapiro*, 2014 WL 1224666, at *8 ("Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation."). This case is no exception, with thousands of Settlement Class Members and claims under the laws of numerous states, including a multi-state claim for breach of express warranty. (*See* Decl. Weisbrot ¶ 15 (45,602 Settlement Class Members submitted Claims); Am. Compl. ¶¶ 69–149.)

Further litigation would cause additional expense and delay. (Decl. Reese ¶¶ 30–31.) Extensive discovery, including costly expert discovery concerning calculation of class-wide

damages, would likely be required to support certification of a litigation class. (*Id.* at ¶ 31.) Even

if Plaintiffs succeeded on a motion for class certification (and a probable appeal of certification

under Rule 23(f)), SVG would likely move for summary judgment. (*Id.*) If the Court denied the

motion, a fact-intensive trial would be necessary to resolve Plaintiffs' and the Settlement Class

Members' claims. (*Id.*) A trial would be lengthy and complex and would consume tremendous

time and resources for the Parties and the Court. (*Id.*) Any final judgment would likely be

appealed, further extending the litigation. (*Id.*)

"Not only would Plaintiffs spend substantial sums in litigating this case through trial and

appeals, it could be years before class members saw any recovery, if at all." *In re Sony SXRD

Rear Projection Television Class Action Litig.*, No. 06 CIV. 5173 (RPP), 2008 WL 1956267, at

*6 (S.D.N.Y. May 1, 2008). The Settlement, on the other hand, makes injunctive and monetary

relief available to the Settlement Class Members in a prompt and efficient manner, making it

particularly valuable. *Hi-Crush Partners*, 2014 WL 7323417, at *6 ("[T]he Settlement offers the

opportunity to provide definite recompense to the Class now—making the instant Settlement a

particularly valuable 'bird in the hand.'"). The first factor favors final approval.

### 2. The Reaction of the Settlement Class

"It is well settled that the reaction of the class to the settlement is perhaps the most

significant factor to be weighed in considering its adequacy." *Raniere*, 310 F.R.D. at 218; *accord

Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). Courts have

recognized that a favorable reaction by the settlement class members strongly supports final

approval of the settlement. *Viafara v. MCIZ Corp.*, No. 12 CIV. 7452 RLE, 2014 WL 1777438,

at *6 (S.D.N.Y. May 1, 2014); *accord Visa*, 396 F.3d at 118; *D'Amato*, 236 F.3d at 86–87.

The deadline for objecting to or opting out of the Settlement is December 27, 2016.

(Order Preliminarily Approving Class Action Settlement ¶¶ 14.a, 21.c, 21.d.) At this time, no Settlement Class Members have objected, and nine have opted out. (Decl. Weisbrot ¶¶ 16–17; *id.*, Ex. 9.) The response to date suggests the overwhelming majority of Settlement Class Members support the Settlement.

While courts within the Second Circuit "have regularly approved settlements even where substantial portions of the class have objected," *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 197–98 (S.D.N.Y. 2012) (citing *Cty. of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1325 (2d Cir. 1990), and *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 462 (2d Cir. 1982)), "'[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication' of fairness," *DeLeon v. Wells Fargo Bank, N.A.*, No. 1:12-CV-04494, 2015 WL 2255394, at *4 (S.D.N.Y. May 11, 2015); *see also Hi-Crush Partners*, 2014 WL 7323417, at *6 ("The overwhelmingly positive reaction of the Settlement Class evidences the Class' approval."). This factor weighs strongly in favor of approving the Settlement Agreement.

### 3.    The Stage of the Proceedings and the Amount of Discovery Completed

The third *Grinnell* factor "inquires 'whether the parties had adequate information about their claims,' such that counsel 'possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement.'" *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015) (citations omitted). "The pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *Viafara*, 2014 WL 1777438, at *6 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)).

Although prosecuting this case through trial would require thousands of hours of additional discovery for both sides, the Parties have completed enough discovery to recommend settlement. *Raniere*, 310 F.R.D. at 218; *Zeltser v. Merrill Lynch & Co.*, No. 13 CIV. 1531 FM, 2014 WL 4816134, at *6 (S.D.N.Y. Sept. 23, 2014). Prior to filing suit, Class Counsel conducted in-depth background research on SVG and an extensive investigation into the facts giving rise to Plaintiffs' claims. (Decl. Reese ¶¶ 9–14.) Moreover, Class Counsel reviewed the 193,218 pages of electronic documents that SVG produced in response to Plaintiffs' document requests, reviewed SVG's responses to Plaintiffs' interrogatories, and deposed SVG pursuant to Rule 30(b)(6). (*Id.* at ¶ 22.)

Courts often grant final approval of class settlements in cases where the parties conducted the same amount or even less discovery than the amount accomplished in this case. *See, e.g.*, *Matheson v. T-Bone Rest., LLC*, No. 09 CIV. 4214 DAB, 2011 WL 6268216, at *5 (S.D.N.Y. Dec. 13, 2011) (granting final approval in case where discovery consisted of informal information exchange); *Johnson v. Brennan*, No. 10 CIV. 4712 CM, 2011 WL 4357376, at *2, *9–10 (S.D.N.Y. Sept. 16, 2011) (finding that parties were "well-equipped to evaluate the strengths and weaknesses of the case" and granting final approval where parties engaged in informal discovery and no depositions were taken); *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 WL 1956267, at *7 ("Although the parties did not engage in extensive formal discovery, such efforts are not required for the Settlement to be adequate, so long as the parties conducted sufficient discovery to understand their claims and negotiate settlement terms.").

The significant amount of discovery conducted allowed the Parties to assess thoroughly the merits, risks, and value of the case. Consequently, this factor favors final approval.

### 4. The Risks of Establishing Liability and Damages

"In analyzing the risk to plaintiffs in establishing liability, the Court does not 'need to decide the merits of the case or resolve unsettled legal questions.'" *Hi-Crush Partners*, 2014 WL 7323417, at *8. "Rather, the Court is only required to weigh the likelihood of success on the merits against the relief provided by the Settlement." *Id.* "Courts routinely approve settlements where plaintiffs would have faced significant legal and factual obstacles to establishing liability." *Id.* "In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation." *Id.*; *accord City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *7 (S.D.N.Y. May 9, 2014).

"It has long been recognized that complex class actions are difficult to litigate." *Shapiro*, 2014 WL 1224666, at *10. "Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits." *Viafara*, 2014 WL 1777438, at *7 (citing *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969)). "The legal and factual issues involved [in complex class actions] are always numerous and uncertain in outcome." *Shapiro*, 2014 WL 1224666, at *10. Furthermore, "[p]roof of damages in complex class actions is always complex and difficult and often subject to expert testimony." *Id.* at *11.

SVG has denied any liability from the inception of the Action and sought to dismiss the case, both in this Court and in the U.S. District Court for the Northern District of California. If litigation were to continue, SVG, which is represented by able trial counsel, would continue to defend its marketing practices vigorously in opposition to class certification, at summary judgment, trial, and post-trial, and on appeal. (Decl. Reese ¶¶ 31–32.) Indeed, a trial on the merits would involve significant risks for Plaintiffs as to both liability and damages. (*Id.* at ¶ 31.)

Resolution of the question of whether SVG's "natural" representations deceive reasonable consumers, for example, is far from certain. *See, e.g.*, *Ries v. Arizona Beverages USA LLC*, No. 10-01139 RS, 2013 WL 1287416, at *1 (N.D. Cal. Mar. 28, 2013) (granting summary judgment in favor of defendant in case involving "natural" beverage labeling); *but see Brazil v. Dole Packaged Foods, LLC*, No. 14-17480, 2016 WL 5539863, at *1–2 (9th Cir. Sept. 30, 2016) (unpublished) (reversing grant of summary judgment for defendant on claim that "All Natural Fruit" representation was likely to deceive reasonable consumers). Class Counsel are experienced and realistic and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. (Decl. Reese ¶ 31.) The proposed Settlement alleviates these uncertainties, as it "will provide tangible, certain and substantial relief to the proposed class now, 'without subjecting them to the risks, complexity, duration, and expense of continuing litigation.'" *Hi-Crush Partners*, 2014 WL 7323417, at *9. Since Plaintiffs' ability to establish liability and damages is far from certain, these factors weigh in favor of Settlement approval. *Raniere*, 310 F.R.D. at 218.

## 5. The Risks of Maintaining Class Action Status Through Trial

The risk of obtaining class certification and maintaining it through trial is also present. The Court has not certified a class; indeed, the Parties have not yet briefed the issue. The Parties anticipate class certification would only be resolved after further discovery, possibly including expert discovery concerning calculation of damages on a class-wide basis, and intense, exhaustive briefing. (Decl. Reese ¶ 31.) Although Plaintiffs are confident that class treatment is appropriate in this case, even if the Court were to certify a class, SVG could seek an interlocutory appeal pursuant to Rule 23(f), raising the possibility of overturning certification. (*Id.*) Furthermore, SVG could move "to de-certify the Class before trial or on appeal at the

conclusion of trial." *Hi-Crush Partners*, 2014 WL 7323417, at *9; *see also Visa*, 396 F.3d at 119 n.24 ("[D]ecertification is always possible as a case progresses and additional facts are developed."). Risk, expense, and delay permeate such processes. The Settlement eliminates this risk, expense, and delay. For these reasons, this factor favors final approval.

### 6. The Ability of Defendant to Withstand a Greater Judgment

There is no evidence that SVG could not withstand a greater judgment. However, its ability to do so, "standing alone, does not suggest that the settlement is unfair." *Fleisher*, 2015 WL 10847814, at *9 (quoting *D'Amato*, 236 F.3d at 86); *accord In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9. "[A] defendant is not required to 'empty its coffers' before a settlement can be found adequate." *Meredith Corp.*, 87 F. Supp. 3d at 665.

Thus, this factor is neutral and does not preclude the Court from granting final approval.

### 7. The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and in Light of All the Attendant Risks of Litigation

The method of determination of the reasonableness of a settlement is not susceptible to a simple formula. *Raniere*, 310 F.R.D. at 219 ("The determination of whether a given settlement amount is reasonable in light of the best possible recovery does not involve the use of a mathematical equation yielding a particularized sum."). Rather, the Court "need only find that the settlement falls within a 'range of reasonableness.'" *Meredith Corp.*, 87 F. Supp. 3d at 666. "That range must recognize 'the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent' in litigation." *Id.* "Moreover, the settlement amount must be judged 'not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'" *Fleisher*, 2015 WL 10847814, at *10. "The overall value of the settlement comprises monetary as well as non-monetary relief." *Id.*

The Settlement here provides a recovery well within the range of reasonableness in light of the best possible recovery and all the attendant risks of litigation. As Plaintiffs discussed in their briefing in support of preliminary approval, the Settlement's injunctive provisions, which require *permanent* removal of the "All Natural" and "100% Natural" representations from the labeling of the SVG Products, are an excellent outcome for the Settlement Class Members and for future consumers. The $4.5 million Settlement Fund is also a major victory for the Settlement Class, especially in light of the risks of continued litigation Plaintiffs discussed above. (*See supra* Part IV.C.4–5.) "The substantial amount of the settlement weighs in favor of final approval." *Viafara*, 2014 WL 1777438, at *1, *7 (total settlement of $550,000); *see also Zeltser*, 2014 WL 4816134, at *1, *6 (stating same where parties reached settlement of "up to $6.9 million").

The Settlement's substantial and immediate relief compares favorably to the relief that Plaintiffs would seek—but that would not be guaranteed—were the case to proceed to trial and beyond. For example, Plaintiffs' ability to achieve a permanent injunction in the litigation context is not set in stone, as courts within the Second Circuit have recently held plaintiffs lack standing to seek injunctive relief where they are aware of the misrepresentations at issue. *See, e.g.*, *Hughes v. The Ester C Co.*, No. 12-CV-0041 (PKC), 2016 WL 6092487, at *18 (E.D.N.Y. Sept. 30, 2016); *In re Avon Anti-Aging Skincare Creams & Prod. Mktg. & Sales Practices Litig.*, No. 13-CV-150 JPO, 2015 WL 5730022, at *8 (S.D.N.Y. Sept. 30, 2015) (denying certification of Rule 23(b)(2) class); *but see Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 WL 7044866, at *2–3, *14–15, *15 n.23 (E.D.N.Y. July 18, 2013) (holding plaintiffs had standing to seek injunctive relief). For all of these reasons, the Settlement is within the "range of reasonableness."

In short, the *Grinnell* factors strongly favor final approval.

## V.     THE COURT SHOULD CONFIRM CERTIFICATION OF THE SETTLEMENT CLASS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23

### A.     Legal Standard

The benefits of the proposed Settlement can be realized only through final certification of the Settlement Class for settlement purposes pursuant to Rule 23. *See Meredith Corp.*, 87 F. Supp. 3d at 659 ("Certification of a settlement class 'has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants.'"). The U.S. Supreme Court has emphatically confirmed the viability of settlement classes. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). In *Amchem Products, Inc.*, the Supreme Court reiterated the "dominant concern" governing analysis under Rule 23: "whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Id.* at 621.

Here, the proposed Settlement Class satisfies this dominant concern; indeed, as Plaintiffs set forth in their preliminary approval brief (Mem. Supp. Pls.' Unopposed Mot. Prelim. Approval 18–23, ECF No. 43), the Settlement Class satisfies all prerequisites of Rule 23(a), as well as all requirements of Rule 23(b)(3). Fed. R. Civ. P. 23(a)(1)–(4), (b)(3). Furthermore, no one has challenged the Court's preliminary certification of the Settlement Class (Decl. Weisbrot ¶ 17), and nothing has occurred subsequently to cast doubt on whether the Settlement Class meets the applicable requirements of Rule 23. The Court should now finally certify the Settlement Class for purposes of effectuating the Settlement.

### B.     The Settlement Class Satisfies Federal Rule of Civil Procedure 23(a)

"Under Federal Rule of Civil Procedure 23(a), plaintiffs must meet the four requirements of numerosity, commonality, typicality, and adequacy of representation." *Meredith Corp.*, 87 F. Supp. 3d at 659; *see* Fed. R. Civ. P. 23(a)(1)–(4). The Settlement Class meets each requirement.

**Numerosity:** The proposed Settlement Class is sufficiently numerous to satisfy Rule 23(a)(1), since there is no dispute that thousands of people nationwide purchased the SVG Products after November 14, 2008. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members.").

**Commonality:** Under Rule 23(a)(2)'s commonality requirement, what matters is "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Courts in the Second Circuit construe commonality liberally. *See, e.g.*, *Sykes v. Mel Harris & Associates, LLC*, 285 F.R.D. 279, 286 (S.D.N.Y. 2012) ("The Rule does not require all questions of law or fact to be common."); *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418, 429 (S.D.N.Y. 2009). "[E]ven a single common question will suffice." *Sykes*, 285 F.R.D. at 286.

Here, the commonality requirement is met because there are common contentions for which determination of their truth or falsity will resolve issues that are central to the validity of each one of the claims in one stroke. Common questions include: (i) whether Defendant's representations that the SVG Products are "natural" are likely to deceive reasonable consumers and (ii) whether Defendant's alleged misrepresentations and omissions are material to reasonable consumers. These common questions have common answers because the reasonable consumer standard that governs their resolution is objective. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Segedie v. Hain Celestial Grp., Inc.*, No. 14-CV-5029 NSR, 2015 WL 2168374, at *10–11 (S.D.N.Y. May 7, 2015).

**Typicality:** "Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d

Cir. 1993). The typicality requirement "ensures that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Manley v. Midan Rest. Inc.*, No. 14 CIV. 1693 (HBP), 2016 WL 1274577, at *4 (S.D.N.Y. Mar. 30, 2016). "The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).

Here, the named Plaintiffs' claims are typical of the Settlement Class Members' claims because the named Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Settlement Class Members' claims. Specifically, the named Plaintiffs and the Settlement Class Members all claim the marketing of the SVG Products as "natural" is false and misleading and deceives reasonable consumers. *See Saldana v. Middletown Car-G-Cam Uni Corp.*, No. 15 CIV. 3651 (NSR), 2015 WL 12591678, at *3 (S.D.N.Y. Sept. 23, 2015) (finding typicality met where plaintiffs' claims arose from the same factual and legal circumstances that formed the bases of the class members' claims).

**Adequacy of Representation:** "Adequate representation is a twofold requirement: class counsel must be qualified and able to conduct the proposed litigation, and the class representatives must not have interests antagonistic to those of the other class members." *Manley*, 2016 WL 1274577, at *4; *accord In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc.*, 521 U.S. at 625; *see also Charron*, 731 F.3d at 249.

Here, all Settlement Class Members, including the named Plaintiffs, share a common

interest in showing that SVG's marketing of the SVG Products as "natural" violated the state laws at issue, and all Settlement Class Members similarly wish to obtain the highest possible recovery. *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d at 291. There is no evidence of any conflict between the interests of the named Plaintiffs and the members of the proposed Settlement Class. *Meredith Corp.*, 87 F. Supp. 3d at 660. Furthermore, the Court-appointed Class Counsel are experienced complex litigation firms with significant resources and class action experience, and they have vigorously prosecuted the Action. (Decl. Reese ¶¶ 34–36; Decl. Reese, Ex. A; Decl. Wolchansky ¶¶ 2–4 (filed concurrently herewith); Decl. Wolchanksy, Ex. A; Decl. Kaliel, Ex. A (filed concurrently herewith); Decl. Sultzer ¶ 6 (filed concurrently herewith); Decl. Sultzer, Ex. A.) For all of these reasons, adequacy is satisfied.

### C.      The Settlement Class Meets the Requirements of Federal Rule of Civil Procedure 23(b)(3)

"To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'"[6] *Amchem Prods., Inc.*, 521 U.S. at 615. Rule 23(b)(3) "is designed to 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Meredith Corp.*, 87 F. Supp. 3d at 661. The Settlement Class satisfies both requirements.

**Predominance:** The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v.*

---

[6] Manageability under Rule 23(b)(3)(D) is "not relevant for class action settlements," *Tart v. Lions Gate Entm't Corp.*, No. 14-CV-8004 AJN, 2015 WL 5945846, at *4 (S.D.N.Y. Oct. 13, 2015), "for the proposal is that there be no trial," *Amchem Prods., Inc.*, 521 U.S. at 620.

*Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Manley*, 2016 WL 1274577, at *5. "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson*, 136 S. Ct. at 1045. "Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Shahriar v. Smith & Wollensky Rest. Grp.*, 659 F.3d 234 (2d Cir. 2011).

Here, for settlement purposes, predominance is satisfied. The questions of whether Defendant's representations that the SVG Products are "natural" are likely to deceive reasonable consumers and whether the foregoing representations are material to reasonable consumers are common, objective questions for which the same evidence would suffice for each Settlement Class Member, if the case were to proceed to trial. *See Tyson Foods, Inc.*, 136 S. Ct. at 1045. These common questions are more substantial than any individualized issues that may exist, meeting Rule 23(b)(3)'s predominance requirement. *See Manley*, 2016 WL 1274577, at *5.

**Superiority:** Class certification "is superior to other methods available for a fair and efficient adjudication of the controversy" where "the class device will achieve economies of scale, conserve judicial resources, preserve public confidence in the integrity of the judicial system by avoiding the waste and delay of repetitive proceedings, and prevent inconsistent adjudications of similar claims." *Bravo v. Palm W. Corp.*, No. 14 9193 SN, 2015 WL 5826715, at *3 (S.D.N.Y. Sept. 30, 2015).

A class action is the superior method for resolving Plaintiffs' claims. The prosecution of separate actions by individual Settlement Class Members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for SVG and would lead to repetitive trials of the predominant common questions of fact and law. *See Saldana*, 2015 WL 12591678, at *4. Further, absent a class action, Settlement Class Members would be left to bring individual claims for damages amounts that often would be too small to provide an economic justification for individually bringing suit, in light of the costs of litigation. *Meredith Corp.*, 87 F. Supp. 3d at 661 (finding superiority met where "the price-tag for an individual [plaintiff] to bring this suit would have almost certainly dwarfed even the highest realistically imaginable recovery for that [plaintiff]"). Consequently, the superiority requirement is satisfied. *Tart*, 2015 WL 5945846, at *5.

For the preceding reasons, the Settlement Class satisfies Rule 23(a) and (b)(3), and the Court should finally certify the Settlement Class for settlement purposes only.

## VI. THE CLASS NOTICE SATISFIES THE REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE 23 AND OF DUE PROCESS

As Plaintiffs detail below, the Notice Plan meets the requirements of the Federal Rules of Civil Procedure and of due process under the U.S. Constitution.

### A. The Distribution and Timing of the Notice Satisfy Federal Rule of Civil Procedure 23 and the U.S. Constitution

The threshold requirement concerning class notice is that the means employed to distribute the notice must be reasonably calculated to apprise the class of the pendency of the action, of the proposed settlement, and of the class members' rights to opt out or object. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218,

224 (2d Cir. 2012) ("To comport with due process, the notice provided to absent class members must be the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (citation and internal quotation marks omitted)); *see also* FED. R. CIV. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the [proposed judgment]."). The due process requirements of the U.S. Constitution may be satisfied by sending a copy of the notice by first class mail to each class member whose address can be located with reasonable effort, along with publication notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–77 (1974).

Because Plaintiffs seek final certification of the Settlement Class under Rule 23(b)(3), the notice must be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R CIV. P. 23(c)(2)(B). "The Second Circuit has stated that 'Rule 23 . . . accords considerable discretion to a district court in fashioning notice to a class.'" *In re Scotts EZ Seed Litig.*, No. 12 CV 4727 VB, 2015 WL 5502053, at *1 (S.D.N.Y. July 7, 2015) (quoting *In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145, 168 (2d Cir. 1987)).

Dissemination of class notice based on Defendant's customer data plus distribution via Internet websites and regional publication amply satisfies the procedural requirements for class notice under Rules 23(c)(2) and (e)(1), as well as the constitutional requirements. As discussed above (*see* Part III.C), in accordance with the Preliminary Approval Order, on October 26, 2016, Angeion provided notice to the Settlement Class Members by means of direct mailing and email. (*See* Order Preliminarily Approving Class Action Settlement ¶ 9.d; Decl. Weisbrot ¶¶ 5–7.) In addition, during the four-week time period beginning on October 26, 2016, Angeion provided

Internet banner notice that served 90,150,502 impressions. (Decl. Weisbrot ¶ 8.) Commencing on October 31, 2016, Angeion also ran a four-week digital plan in *Organic Life* that served 508,385 impressions. (*Id.* at ¶ 10.) The notice program incorporated publications of the Short Form Notice in the California regional edition of *USA Today* on October 31, November 7, November 14, and November 21, 2016. (*Id.* at ¶ 9.) Additionally, as the Preliminary Approval Order required, on October 17, 2016, Angeion published the Settlement Website, which provided Settlement Class Members with, *inter alia*, access to key case documents. (Order Preliminarily Approving Class Action Settlement ¶ 9.b; Decl. Weisbrot ¶ 12.) Finally, in accordance with the Preliminary Approval Order, on October 17, 2016, Angeion set up, and it subsequently maintained, a toll-free telephone number devoted to the case and available 24 hours a day, 7 days a week, which provided Settlement-related information to the Settlement Class Members. (Order Preliminarily Approving Class Action Settlement ¶ 9.c; Decl. Weisbrot ¶ 13.)

Timing of the notice was also sound. Settlement Class Members have approximately 160 days following publication of the class notice to submit Claims (*see* Decl. Weisbrot ¶¶ 6–8, 15) and approximately 60 days following publication of the class notice to determine whether to object to, or opt out of, the Settlement (*see* Order Preliminarily Approving Class Action Settlement at ¶¶ 9.d, 11, 14.a, 21.c, 21.d). These periods are longer than those deemed adequate in other class action settlements. *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *23 (S.D.N.Y. Dec. 23, 2009) (30 days between notice mailings and deadline to submit objections sufficient); *see also Miller v. Republic Nat. Life Ins. Co.*, 559 F.2d 426, 430 (5th Cir. 1977) (four weeks between notice mailings and settlement hearing sufficient); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975) (19 days); *Greenspun v. Bogan*, 492 F.2d 375, 378 (1st Cir. 1974) (four weeks).

**B.** **The Content of the Notice and the Opportunity to Opt Out Satisfy Federal Rule of Civil Procedure 23 and the U.S. Constitution**

"The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Visa*, 396 F.3d at 114. "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Id.* at 114. "Notice is 'adequate if it may be understood by the average class member.'" *Id.*

Under Rule 23(c)(2)(B), "[t]he notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." FED. R. CIV. P. 23(c)(2)(B).

Here, the Settlement notice more than satisfies these standards. The Summary Settlement Notice contained a summary of the Action and the Settlement and informed Settlement Class Members (i) that they must file a claim to receive a Settlement payment; (ii) of their right to object to the proposed Settlement and the date by which they must do so; (iii) of their right to exclude themselves if they do not want to be bound by the proposed Settlement and the date by which they must do so; and (iv) that the Settlement will bind all Settlement Class Members who do not request exclusion. (Decl. Weisbrot, Ex. 3.) The Summary Settlement Notice also directed recipients to the dedicated Settlement Website, where additional information with respect to the Action is posted, including the more detailed Long-Form Notice. (*See id.*)

The Long-Form Notice includes a description of the terms of the Settlement (including notice of the opportunity to opt out or object, a short and plain statement of the background of the Action, an explanation of the reasons for the Settlement, and notice of the amount of Class Counsel's Attorneys' Fees and Expenses to be submitted for approval by the Court). (Class Settlement Agreement, Ex. B, ECF No. 48-1.) The Long-Form Notice advises Settlement Class Members that they will be bound by the judgment and orders of the Court if they do not request exclusion by December 27, 2016, and that any Settlement Class Member may enter an appearance. (*See id.*) The Long-Form Notice advises that the Court will conduct a Fairness Hearing on January 26, 2017, at 2:00 p.m., at which time Settlement Class Members may be heard, and it states the benefits of the Settlement. (*See id.*) If there are any remaining questions, the Long-Form Notice contains the toll-free number and an email address for Angeion. (*See id.*)

Unquestionably, the class notice was adequate, comprehensive, and timely, and it provides Settlement Class Members with sufficient information to make an informed and intelligent decision with respect to whether to participate in the Settlement.

## VII.   CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully apply to this Court for entry of an order (i) confirming certification of the Settlement Class and continuing the appointment of Tziva Rapoport-Hecht, Maggie Tsan, and Erica Wildstein as representatives of the Settlement Class and Reese LLP, Tycko & Zavareei LLP, Halunen Law, and The Sultzer Law Group as Class Counsel; (ii) granting Final Approval of the Settlement; and (iii) entering the Order and Final Judgment in this Action.

Date: December 13, 2016

Respectfully submitted,

**REESE LLP**

By: _/s/ Michael R. Reese_
Michael R. Reese
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**THE SULTZER LAW GROUP**
Jason P. Sultzer
*sultzerj@thesultzerlawgroup.com*
85 Civic Center Plaza, Suite 104
Poughkeepsie, New York 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747

**TYCKO & ZAVAREEI LLP**
Jeffrey D. Kaliel
*jkaliel@tzlegal.com*
2000 L Street, Northwest, Suite 808
Washington, District of Columbia 20036
Telephone: (202) 973-0900
Facsimile: (202) 973- 0950

**HALUNEN LAW**
Melissa Wolchansky
*wolchansky@halunenlaw.com*
1650 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099

*Court Appoint Class Counsel*

## CERTIFICATE OF SERVICE

I, Michael R. Reese, hereby certify that on December 13, 2016, I caused an electronic copy of the foregoing document to be served on all counsel of record via the Court's CM/ECF system.

_/s/ Michael R. Reese_
Michael R. Reese