**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TZIVA RAPOPORT-HECHT, MAGGIE TSAN, and ERICA WILDSTEIN, individually and on behalf of all others similarly situated, | No. 7:14-cv-09087-KMK |
| Plaintiffs, | |
| v. | **DECLARATION OF MICHAEL R. REESE IN SUPPORT OF: (1) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND (2) PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES TO CLASS COUNSEL AND SERVICE AWARDS TO CLASS <u>REPRESENTATIVES</u>** |
| SEVENTH GENERATION, INC., | |
| Defendant. | |

I, Michael R. Reese, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, hereby declare as follows:

1.       I am the founding partner of Reese LLP, a law firm established in 2008 that specializes in class action litigation on behalf of consumers in both federal and state courts throughout the United States.  I am a member in good standing of the bar of the Southern District of New York and am a member in good standing of the state bars of New York and California as well as numerous other federal district and appellate courts.  I am one of the court-appointed co-lead class counsel in the above-captioned action.

2.       I also am currently serving as an adjunct law professor at Brooklyn Law School, where I teach a class entitled *The Law of Class Actions and Other Aggregate Litigation*.

3.       I also am a frequent lecturer on class actions and litigation that focuses on allegedly misleading use of the term "natural" in the labelling and marketing of products, and I have spoken recently as a guest speaker on this subject at the Food and Drug Law Institute conference in Washington, D.C.; the Resnick Food Law and Policy symposium held at the law school of the University of California, Los Angeles; and, the American Bar Association Health Summit in Washington, D.C.  I also have been published on "natural" litigation, most recently in the April, 2016 edition of The American Bar Association Health Lawyer, which includes my article "*Typical Claims and Defenses in Class Action Food Litigation*". I also am an executive committee member of the Plaintiffs' Class Action Forum, where I recently presented at class action seminars in Palm Beach, Florida and Palos Verdes, California.   I am also on the advisory board for the non-profit Wellness in the Schools (WITS).  Prior to litigating class actions, I was a prosecutor at the Manhattan District Attorney's Office in New York, New York, where I served as trial counsel in prosecuting white-collar and violent felony crimes.

1

4.      I respectfully submit this declaration in support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Request for Entry of Final Judgment and Plaintiffs' Motion for Approval of Attorneys' Fees, Reimbursement of Costs and Incentive Awards for the Class Representatives.  Except as otherwise noted, I have personal knowledge of the facts set forth herein and could testify competently to them if called upon to do so.

## INTRODUCTION

5.      I am one of the lead attorneys representing plaintiffs in the above-captioned matter. The court has appointed my firm Reese LLP as co-lead counsel to represent the class in this case.

6.      Reese LLP, along with our court appointed co-lead counsel ("Class Counsel"), has been responsible for the prosecution of this action from its inception in 2013, including the initial investigation and drafting of the complaint; an in-person settlement meeting with Defendant and its counsel in Irvine, California in March 2014; motion practice (including, but not limited to a motion to dismiss); extensive discovery; and, several mediations in San Francisco and New York, New York that ultimately resulted in the Settlement.  Class Counsel has vigorously represented the interests of the Settlement Class Members throughout the course of the litigation and settlement process.

7.      As described below, Class Counsel performed extensive work identifying and investigating potential claims, drafting and filing the complaint; opposing motions to dismiss and motions to strike; extensive discovery; and, several mediation sessions with private mediators – the Honorable Edward A. Infante (Ret.) in San Francisco, California and Jed D. Melnick, Esq. in New York, New York. Class Counsel's hard work, tenacity, reputation, and experience resulted in an excellent Settlement for the Class that is fair, reasonable, and adequate.

8. Based on my extensive experience both as a practitioner and a professor and lecturer regarding federal class action law and "natural" litigation, I believe the Settlement to be an outstanding outcome for consumers, and I believe it is fair, reasonable, and adequate under Federal Rule of Civil Procedure 23.

## SERVICE OF COMPLAINT, DISCOVERY, NEGOTIATION, AND MEDIATION

### A.   Pre-Litigation Investigation,  Service of the Complaint, Negotiations with Defendant

9. This matter arises out of Defendant's manufacturing, advertising, selling, and distributing of a number of its household products ("Products"), which are alleged to have misled consumers due to representation on the Products' labeling that the Products were "natural", when, in fact, the Products are alleged to contain non-natural ingredients.

10. Based on my experience at the Manhattan District Attorney's Office and my work in its Early Case Assessment Bureau ("ECAB"); before the grand jury; and in the New York County felony trial courts, where I tried more than twenty-five cases before judge and juries, I believe the best way to litigate a matter is to conduct a thorough investigation and gather all the facts before proceeding with any matter either through a civil complaint or an indictment (in the case of my criminal prosecution work at the District Attorneys' Office).  My firm implements that philosophy in the litigation of its cases and did so in this matter.

11. In accordance with the above, starting in 2013, my firm, along with co-counsel Halunen Law (formerly known as Halunen & Associates and hereafter referred to as "Halunen Law"), conducted a thorough investigation of the claims and ingredients of the Products, including scientific and factual research.

12.     In addition, we thoroughly analyzed the legal landscape to determine if the Products' labeling was false or misleading and, if so, how to approach remedying the deception. In particular, we researched and examined the role of the federal government regarding the term natural, including, but not limited to, USDA and FDA regulations; primary jurisdiction arguments; preemption arguments; the "reasonable consumer" standard, as well as various other intricacies associated with consumer class action litigation.   We also examined scientific literature regarding the ingredients at issue as well as the Natural Products Association standards. We undertook all of this to assess the merits of the potential case, to determine the strength of both the claims and defenses in this matter, and to determine the best manner to pursue this case on behalf of consumers.

13.     After completing our initial research and investigation, on October 15, 2013 my firm and co-counsel Halunen Law, on behalf of our California client Maggie Tsan, served a draft complaint for violation of California's consumer protection laws and a pre-suit demand letter on Defendant as is required by the California Consumer Legal Remedies Act ("CRLA").   My firm and Halunen Law then engaged in a number of in-person meetings with opposing counsel and senior executives from Seventh Generation to explore the issues and determine if the matter could be resolved prior to litigation.   As part of this process, numerous documents and other information was provided to my firm and Halunen Law by Defendant.

14.     On March 6, 2014, I and Melissa Wolchansky from Halunen Law met with opposing counsel and a senior executive of Seventh Generation in Irvine, California.   Soon thereafter, the parties agreed to engage a professional mediator to determine if the matter could be settled and scheduled the matter for June 18, 2014 for mediation before the Hon. Edward A. Infante (Ret.) in San Francisco, California.

15.     In the intervening period between scheduling the mediation and conducting the mediation, the parties were informed by the law firm of Tycko & Zavareei LLP ("Tycko") that they independently had been investigating Seventh Generation on behalf of its client Erica Wildstein for its "natural" claims and intended to file a class action complaint.  The parties then informed Tycko of the upcoming mediation and invited Tycko to be involved in the hopes of reaching a global resolution.

16.      On June 18, 2014, the parties met with Judge Infante (Ret.) in San Francisco, who mediated the matter for a full day. While significant progress towards a settlement was made, the parties did not reach agreement at that time.  However, the parties agreed to a second day of mediation, which took place before Judge Infante on September 8, 2014 in San Francisco.

17.     On November 14, 2014, The Sultzer Law Group, who independently had been investigating Seventh Generation for its "natural" representations, filed an action on behalf of its client Tziva Rapoport-Hecht in the Southern District of New York (hereafter "Rapoport-Hecht Action").

18.     After further negotiations with Defendant, it became apparent that the matter would not settle at that juncture.  Accordingly, on January 14, 2015, plaintiffs Maggie Tsan and Erica Wildstein filed their complaint (hereafter "Tsan Action") in the Northern District of California for violation of California consumer protection claims, among others.

**B.**     **Multiple Motions to Dismiss and Strike**

19.     On February 27, 2015, Defendant filed a letter in the Rapoport-Hecht Action requesting a pre-motion conference with the Court in order to file a motion to dismiss and a motion to strike in the Rapoport-Hecht Action.  (ECF No. 13).  On April 17, 2015, this Court held a pre-motion conference and granted Defendant's request to file a motion to dismiss and motion to strike. On May 15, 2015, Defendant filed a motion to dismiss (ECF No. 23, 24) and a motion to strike (ECF No. 25, 26) in the Rapoport-Hecht Action.  Plaintiff Rapoport-Hecht filed oppositions to these motions on June 19, 2015. (ECF No. 28, 29).  On July 7, 2015, Defendant filed its reply to the motion to strike in the Rapoport-Hecht Action (ECF No. 30).  On July 9, 2015, Defendant filed its reply to its motion to dismiss the Rapoport-Hecht Action (ECF No. 31).

20.     Almost simultaneously in the Tsan Action, Defendant filed a motion to dismiss and a motion to strike on June 6, 2015. (Tsan ECF No.  36, 37).  Tsan filed oppositions to these motions on August 4, 2015 (Tsan ECF No. 47).  Defendant filed its reply in the Tsan Action on August 18, 2015 (Tsan ECF No. 49).  On November 13, 2015, the Court in the Tsan Action denied in part the motion to dismiss and denied the motion to strike.  (Tsan ECF No. 54)

21.     On January 28, 2016, this Court held oral argument on the motions filed by Defendant in the Rapoport-Hecht Action.  On March 30, 2016, the parties in the Rapoport-Hecht Action requested that the Court hold in abeyance its decision on the pending motion to dismiss and motion to strike given that the parties had reached a settlement.  On March 30, 2016, the Court granted the requested, ordering the Clerk of the Court to "terminate the pending motions…without prejudice to later renewal if the settlement does not occur."

If Final Approval is not granted here, the Court will have to render a decision on the motion to dismiss and motion to strike.

**C.**     **Discovery**

22.     The parties engaged in extensive discovery in this matter.  Both parties served and responded to lengthy document requests and interrogatories.  We received and reviewed 193,218 pages of documents in this matter from Defendant, many of which were highly technical in nature, and we reviewed Defendant's interrogatory responses.  We also deposed Defendant pursuant to Federal Rule of Civil Procedure 30(b)(6) in Burlington, Vermont, near where Defendant is headquartered.

**D.**     **Multiple Mediations and Ultimate Settlement of the Above-Captioned Action**

23.     The parties mediated this matter on several occasions throughout the duration of this litigation.

24.     As mentioned above, on March 6, 2014, I and Melissa Wolchansky from Halunen Law met with opposing counsel and a senior executive of Seventh Generation in Irvine, California.

25.     As a result of the March 6, 2014 meeting in Irvine, California, the parties  - at that time comprised of counsel for Tsan (Reese LLP and Halunen Law) and Defendant (through both its outside counsel and executives)  engaged in settlement discussions with assistance of the Hon. Edward A. Infante (Ret.), a professional mediator located in San Francisco, California.  These parties (along with counsel for Wildstein (Tycko & Zavareei LLP)), held two mediation sessions before Judge Infante in San Francisco - one on June 18, 2014, and one on September 8, 2014.  While progress was made through the two sessions led by Judge Infante, the parties did not reach a settlement at the conclusion of the second session.  Nonetheless, counsel for Tsan, Wildstein and Defendant continued to negotiate, while at the same time engage in litigation.

26.     On October 14, 2015, the parties mediated the matter before Jed Melnick, a highly respected mediator with JAMS based in New York, New York.  While the matter did not settle at the conclusion of the mediation session with Mr. Melnick, the parties continued to engage in settlement discussion while continuing to litigate.  After several further rounds of settlement discussions over the next several months, on March 19, 2016, the parties were able to reach agreement on the terms of the settlement, which are fully elaborated, finalized, and formalized in the Class Action Settlement that the parties executed on June 30, 2016, and filed with the Court on July 5, 2016. (ECF No. 48-1).

27.     We only negotiated an amount for fees and costs after agreement as to the injunctive relief and monetary relief for the class. At all times during the settlement process, the parties negotiated on an arm's-length basis.

28.     We prepared the motion papers for preliminary approval, which were filed on July 5, 2016 (ECF No. 42-48).  The Court granted preliminary approval of the settlement on October 12, 2016 (ECF No. 52).

## TERMS OF THE SETTLEMENT AGREEMENT AND RECOGNITION OF THE DIFFICULTIES ASSOCIATED WITH LITIGATION

29.     The Settlement is an excellent result, as it provides the comprehensive relief Plaintiffs sought in their complaints.    Specifically, the settlement has a monetary component of $4,500,000.00, from which is paid: (1) any necessary taxes and tax expenses; (2) all costs and expenses associated with disseminating notice to the Settlement Class; (3) all costs and expenses associated with administration of the Settlement; (4) any attorneys' fees and expenses award by the Court pursuant to the Settlement Agreement; (5) any Incentive Awards by the Court to the named Plaintiffs pursuant to the Settlement Agreement; (6) full refunds to Settlement Class Members who submit timely, valid, and approved Claims with proofs of purchase, with no cap or

8

limit; (7) reimbursement for 50% of the average purchase price of each SVG Product, up to 10 SVG Products, for Settlement Class Members who submit timely, valid, and approved Claims without proofs of purchase[1]; and (8) any residual funds pursuant to the terms of the Settlement Agreement. The Settlement also provides comprehensive injunctive relief, in that Defendant will no longer be able to use the contested terms "All Natural" or "100% Natural" on the labels of its Products.

30.     Plaintiffs and Class Counsel continue to believe in the merits and strength of the case and believe we would prevail if the case continued in litigation and were heard by the trier of fact.  However, there is always the possibility that the matter would not prevail or that the law (either common or statutory) would change in a way that would adversely impact the litigation. Based on my experience in litigating class actions, I also realize the expense and length of continued litigation necessary to see the matter through to trial.  Indeed, I am currently involved in similar cases that have been pending for eight (8) years or more and that have yet to have a trial date set.  I have also been involved in class action litigation that was on the eve of trial, with considerable expenditures made for discovery and experts, only to have the litigation dismissed due to a change in the law.

31.     In accordance with the above, we recognize the expense and length of continued proceedings necessary to prosecute the claims through trial and appeal.  We have taken into account the uncertain outcome and risk of litigation, as well as the difficulties and delays inherent in litigation.  Litigation to date has been costly, and, certainly, further litigation would be costly, complex, and time-consuming. Extensive discovery, including costly expert discovery

---

[1] Monetary relief for Settlement Class Members who submit timely, valid, and approved Claims is subject to *pro rata* increase or decrease if there are excess funds or insufficient funds in the Settlement Fund.

concerning calculation of class-wide damages, would likely be required to support certification of a litigation class, along with intense, exhaustive briefing. Even if Plaintiffs succeeded on a motion for class certification (and a probable appeal of certification under Federal Rule of Civil Procedure 23(f)), Defendant would likely move for summary judgment. If the Court denied the motion, a fact-intensive trial would be necessary to resolve Plaintiffs' and the Settlement Class Members' claims. A trial would be lengthy and complex and would consume tremendous time and resources for the parties and the Court. Any final judgment would likely be appealed, further extending the litigation. In sum, the costs and risks associated with continuing to litigate this action would require extensive resources and Court time.  Class Counsel believes that the Settlement confers substantial benefits upon the Settlement Class Members and have determined the Settlement is fair, reasonable, and adequate and in the best interest of the Settlement Class.

32.     Defendant has denied, and continues to deny, any liability and maintain that the labeling is truthful and not misleading.    Indeed, Defendant has denied, and continues to deny, any and all fault, wrongdoing, and liability for Plaintiffs' claims.

### CLASS COUNSEL AND THE NAMED PLAINTIFFS HAVE INVESTED SIGNIFICANT TIME IN THE PROSECUTION OF THIS ACTION AND ARE ADEQUATE REPRESENTATIVES OF THE CLASS

33.     Throughout the course of investigation and litigation, all Plaintiffs met, conferred, and corresponded with Class Counsel as needed for the efficient prosecution of this litigation. Furthermore, all Plaintiffs actively participated in discussions related to the Settlement.

34.     Reese LLP is a nationally recognized law firm headquartered in New York, New York, that litigates class actions throughout the United States.  This vast experience is detailed in the Reese LLP Firm résumé attached hereto as Exhibit A.

35.     Reese LLP is a leader in litigation based upon products allegedly misleadingly labeled and marketed as "natural" and has been appointed by the courts in numerous actions as class counsel to represent consumers in "natural" litigation, as well as other class actions. *See e.g., Frohberg v. Cumberland Packing Corp.*, case no. 14-cv-00748-RLM (E.D.N.Y.) (appointing Reese LLP as class counsel in action based upon allegedly misleadingly labeled "natural" products); *Barron v. Snyder's-Lance, Inc.*, case no. 13-cv-62496-JAL (S.D. Fla.)(same); *Howerton v. Cargill, Inc.,* case no. 13-cv-0336-LEK (D. Hawaii)(same); *In re Frito-Lay North America, Inc. All Natural Litig.*, case no. 1:12-md-02413-RRM-RLM (E.D.N.Y.) (same); *In re General Mills, Inc. Kix Cereal Litig.*, case no. 2:12-cv-00249-KM-MCA (D.N.J.) (same); *See also*; *In re Glaceau Vitaminwater Sales and Marketing Practices Litig.,* case no. 11-md-02215-DLI-RML (E.D.N.Y.) (appointing Reese LLP as co-lead counsel in class action food litigation); *Rosen v. Unilever United States Inc.*, case no. 09-02563-JW (N.D. Cal.) (same); and, *Yoo v. Wendy's Int'l Inc.*, case no. 07-CV-04515-FMC (C.D. Cal.) (same).

36.     Reese LLP has been responsible through its litigation efforts for remedying consumer deception with respect to product labeling and misleading marketing, and works closely with non-profit groups such as the Center for Science in the Public Interest ("CSPI") and Public Justice - both based in Washington, D.C. - to accomplish such goals.  For example, in *Green v. Dr Pepper/Seven Up, Inc.*, Case No. 2:12-cv-9567 FMO (C.D. Cal.) and *Lam v. General Mills, Inc.*, Case No. 11-cv-5056 SC (N.D. Cal.), Reese LLP worked with CSPI to successfully achieve changes to the labeling and marketing of popular food products that previously had caused consumer confusion.  Additionally, the litigation efforts of Reese LLP have resulted in companies removing from popular items ingredients that are harmful to consumers' health.  For example, in both *Rosen v. Unilever United States Inc.*, Case No. 09-

02563 JW (N.D. Cal.) and *Yoo v. Wendy's Int'l Inc.*, No. 07-CV-04515-FMC (JCx) (C.D. Cal.),

Reese LLP achieved success on behalf of consumers by having *trans* fat removed from popular

food items.  *See Yoo v. Wendy's Int'l Inc.*, No. 07-CV-04515-FMC (JCx) (C.D. Cal. 2009)

(stating that Reese LLP "has conducted the litigation and achieved the Settlement with skill,

perseverance and diligent advocacy").

**TIME AND EXPENSE INCURRED IN THE PROSECUTION**
**OF THE ACTION**

37.     Listed below in Table 1 is the time expended by Reese LLP on this matter over

the past three years. The information that follow is based on information collected from Reese

LLP's books and records, and from information provided to me from employees working under

my supervision and control.

38.     Reese LLP has spent 635.75 hours litigating this Action and its lodestar, as set

forth below, is based on its current hourly rates, which are usual and customary in an Action of

this type.  The lodestar totals $513,937.50.

**TABLE 1**

| REESE LLP - Seventh Generation | | | | |
|---|---|---|---|---|
| **Name of Professional (Last, First)** | **Title of Professional** | **Rate** | **Hours** | **Lodestar** |
| Reese, Michael | Managing Partner | $850 | 503.50 | $427,975.00 |
| Granade, George | Partner | $650 | 132.25 | $85,962.50 |
| | | | | |
| TOTAL | | | 635.75 | $513,937.50 |

39.     Based on my experience, the hourly rates my firm charges are within the range of

rates that attorneys of equivalent experience and skill charge.  In determining the firm's hourly

rates from year to year, the partners consider rates that counsel at other firms seek, and we

appropriately and thoughtfully set our hourly rates.  The hourly rates for the partners, attorneys, and professional staff are the same as the regular rates charged for these services, and they have been accepted and approved in other recent class action litigation.  Such cases include:

- *In re Glaceau Vitaminwater Sales and Marketing Litig*, case no. 11-md-2214- DLI-RML  (E.D.N.Y. 2016);

- *Berkson v. Gogo, LLC.*, case no. 14-cv-1199 JBW-LB (E.D.N.Y. 2016);

- *Huyer v. Wells Fargo & Co.*, Case No. 08-cv-00507-RP-CFB (S.D. Iowa 2016);

- *Wong v. Alacer Corporation*, Case No. CGC-12-519221 (San Francisco Super. Ct. 2014);

- *Denning v. Clearwire Corp.*, Case No. 010-cv-01859 (W.D. Wash. 2013);

- *Finley v. CVS Pharmacies, Inc.*, Case No. 08-L-616 (Madison Co. Super. Ct. 2012);

- *Chin v. RCN Corp.*, Case No. 08-cv-0749 (S.D.N.Y. 2011); and

- *Yoo v. Wendy's Corp.*, Case No. 07-4515 (C.D. Cal. 2009).

40.	Based on the high degree of experience of Reese LLP in the area of consumer and class action litigation and the nationwide nature of the resolution in this case, I believe it is appropriate to apply the market rates for the home market for each attorney at the firm.

41.     Listed below in Table 2 are the out-of-pocket costs my firm incurred in this litigation, none of which have been reimbursed to date.  The expenses in this Action are supported by vouchers, checks, time records, and other documents:

**TABLE 2**

| REESE LLP - Seventh Generation | |
| --- | --- |
| **Category of Expense** | **Amount** |
| Mediation/Settlement Costs | $11,503.83 |
| Filing Fees | $400.00 |
| Consultants | $2,200 |
| Travel (all travel at coach fare) | $6,484.79 |
| Discovery Costs | $7,205.28 |
| | |
| TOTAL | $27,793.90 |

## DEDICATION TO PURSUIT OF THIS MATTER
## AND THE RISK INVOLVED

42.     In addition to the hours Reese LLP's partners, associates, and staff have expended on this case, we took great financial risk in advancing costs and expenses associated with the prosecution of the action.  My firm took this matter on a contingent basis, agreeing to advance all costs and expenses necessary to prosecute the litigation.  This constituted a considerable risk for my firm, as there was no guarantee we would recoup any of the costs or fees.  Indeed, Reese LLP has lost hundreds of thousands of dollars in fees and expenses in similar actions that did not result in settlement or a plaintiffs' verdict after trial.

43.     The diligent efforts of Plaintiffs and Class Counsel to prosecute this case, as described herein, demonstrate that Plaintiffs and Plaintiffs' Counsel have more than adequately represented and acted for the benefit of the Settlement Class as a whole.  Additionally, apart from an incentive award (if granted), none of the Plaintiffs will receive any benefits beyond those they would receive as ordinary Class Members.  The Named Plaintiffs actively participated in this litigation, with several responding to discovery.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 13th day of December, 2016, in New York, New York.

By: */s/  Michael R. Reese*
Michael R. Reese
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone:  212/643-0500
Fax:  212/253-4272
Email:  *mreese@reesellp.com*

*Court Appointed Co-Lead Class Counsel*

15

# __EXHIBIT A__

Reese LLP Firm Resume
1 of 5

# **REESE LLP**

Reese LLP represents consumers in a wide array of class action litigation throughout the nation. The attorneys of Reese LLP are skilled litigators with years of experience in federal and state courts. Reese LLP is based in New York, New York.

Recent and current cases litigated by the attorneys of Reese LLP on behalf of consumers include the following:

*Yoo v. Wendy's International, Inc.*, 07-CV-04515 FMC (C.D. Cal.): class action for violation of California's consumer protection laws; *Ackerman v. The Coca-Cola Co.*, 09-CV-0395 (JG) (RML) (E.D.N.Y.): class action for violation of California and New York's consumer protection laws; *Chin v. RCN Corporation*, 08-cv-7349 RJS (S.D.N.Y.): class action for violation of Virginia's consumer protection law; *Bodoin v. Impeccable L.L.C.*, Index. No. 601801/08 (N.Y. Sup. Ct.): individual action for conspiracy and fraud; *Young v. Wells Fargo & Co.*, 08-CV-507 (S.D. Iowa): class action for violation of the RICO Act; *Murphy v. DirecTV, Inc.*, 07-CV-06545 FMC (C.D. Cal.): class action for violation of California's consumer protection laws; *Bain v. Silver Point Capital Partnership LLP*, Index No. 114284/06 (N.Y. Sup. Ct.): individual action for breach of contract and fraud; *Siemers v. Wells Fargo & Co.*, C-05-4518 WHA (N.D. Cal.): class action for violation of § 10(b) of the Securities Exchange Act of 1934; *Kastin v. AMR Corporation*, 06-CV-5726 (S.D.N.Y.): class action for violation of the Sherman Antitrust Act; *In re Korean Air Antitrust Litigation*, 07-CV-01891 SJO (C.D. Cal.): class action for violation of the Sherman Antitrust Act; *Dover Capital Ltd. v. Galvex Estonia OU*, Index No. 113485/06 (N.Y. Sup. Ct.): individual action for breach of contract involving an Eastern European steel company; *All-Star Carts and Vehicles Inc. v. BFI Canada Income Fund*, 08-CV-1816 LDW (E.D.N.Y.): class action for violation of the Sherman Antitrust Act; *Petlack v. S.C. Johnson & Son, Inc.*, 08-CV-00820 CNC (E.D. Wisconsin): class action for violation of Wisconsin consumer protection law; *Hill v. Roll International Corporation*, CGC-09-487547 (San Francisco County Superior Court): class action for violation of California's consumer protection laws; *L'Ottavo Ristorante v. Ingomar Packing Co.*, 09-CV-01427 (E.D. Cal.): class action for violation of the Sherman Antirust Act; and *Wong v. Alacer Corp.*, (San Francisco Superior Court): class action for violation of California's consumer protection laws; and, *Howerton v. Cargill, Inc.* (D. Hawaii); class action for violation of various consumer protection laws.

**The Attorneys of Reese LLP**

**Michael R. Reese**

Mr. Reese litigates consumer, and antitrust cases as class actions and on behalf of individual clients.  Prior to entering private practice in 2000, Mr. Reese served as an assistant district attorney at the Manhattan District Attorney's Office where he served as a trial attorney prosecuting both violent and white-collar crime.

Achievements by Mr. Reese on behalf of consumers span a wide array of actions.  For example, in  *Yoo v. Wendy's International Inc.*, Mr. Reese was appointed class counsel by the court and commended on achieving a settlement that eliminated *trans* fat from a popular food source.  *See Yoo v. Wendy's Int'l Inc.*, No. 07-CV-04515-FMC (JCx) (C.D. Cal. 2007) (stating that counsel "*has conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy*").  In *Chin v. RCN Corporation*, Mr. Reese was appointed class counsel and commended by the court for stopping RCN's practice of throttling its Internet customers through adverse network management practices.  *See Chin v. RCN Corp.*, No. 08-CV-7349(RJS)(KNF), 2010 WL 3958794, 2010 U.S. Dist. LEXIS 96302 (S.D.N.Y. Sept. 8, 2010) (stating that "*class counsel  is qualified, experienced, and able to conduct the litigation*").

Recent victories by Mr. Reese and his firm include a $6.1 million class action settlement in the District of Hawaii in the matter of *Howerton v. Cargill, Inc.* for consumers of Truvia branded sweetener and a $6.4 million class action settlement in San Francisco Superior Court in the matter of *Wong v. Alacer Corp.*, for consumers of Emergen-C branded dietary supplement.

Mr. Reese and his firm are currently court appointed class counsel in a number of pending class actions, including, but not limited to, *In re Frito-Lay N.A. "All-Natural" Litigation* pending in the Eastern District of New York and *In re General Mills "Kix" All-Natural Litigation*, also pending in the District of New Jersey.

Mr. Reese is a frequent lecturer on issues of class actions and has recently moderated a panel on food class actions for the California State Bar; presented at the Food and Drug Law Institute annual conference in Washington, D.C.; presented at the American Bar Association in Washington, D.C.; and, presented at the Perrin Annual Conference in Washington, D.C.

Mr. Reese is also an executive committee member of the Plaintiffs' Class Action Forum, where he lecturers on an annual basis and has presented previously on the topics of ascertainability, (c)(4) issue classes; and, the level of proof required for class certification.

Mr. Reese is also an adjunct professor at Brooklyn Law School where he teaches on class actions and other aggregate litigation.

Mr. Reese is a member of the state bars of New York and California as well as numerous federal courts.  Mr. Reese received his juris doctorate from the University of Virginia in 1996 and his bachelor's degree from New College in 1993.

## George V. Granade II

Mr. Granade is partner at Reese LLP who focuses on consumer class actions.  Cases Mr. Granade has worked on include:

- *Barron v. Snyder's-Lance, Inc.*, No. 0:13-cv-62496-JAL (S.D. Fla.) (involving "Snyder's," "Cape Cod," "EatSmart," and "Padrinos" brand food products labeled as "natural" and allegedly containing genetically-modified organisms and other synthetic ingredients);

- *In re: Frito-Lay North America, Inc. "All Natural" Litigation*, No. 1:12-md-02413-RRM-RLM (E.D.N.Y.) (involving "SunChips," "Tostitos," and "Bean Dip" products labeled as "natural" and allegedly containing genetically-modified organisms); and

- *Martin v. Cargill, Inc.*, No. 0:13-cv-02563-RHK-JJG (D. Minn.) (involving "Truvia" sweetener product labeled as "natural" and allegedly containing highly processed ingredients).

Mr. Granade received his juris doctorate from New York University School of Law in 2011.  He received a master's degree from the University of Georgia at Athens in 2005 with distinction and a bachelor's degree from the University of Georgia at Athens in 2003, *magna cum laude* and with High Honors.

Mr. Granade is a member of the state bar of Georgia and the state bar of New York, as well as the bars of the United States District Court for the Eastern District of New York and the United States District Court for the Southern District of New York.

## Sue J. Nam

Ms. Nam is of counsel at Reese LLP where she focuses on consumer class actions.

Prior to joining the firm, Ms. Nam was the General Counsel for NexCen Brands, Inc., a publicly traded company that owned a portfolio of consumer brands in food, fashion and homeware.

Previously, Ms. Nam was Intellectual Property Counsel and Assistant Corporate Secretary at Prudential Financial, Inc., and she was an associate specializing in intellectual property and litigation at the law firms of Brobeck Phleger & Harrison LLP in San Francisco, California and Gibson Dunn & Crutcher LLP in New York, New York.

Ms. Nam clerked for the Second Circuit prior to joining private practice.

Ms. Nam received her juris doctorate from Yale Law School in 1994. She received a bachelor's degree with distinction from Northwestern University in 1991.

**Belinda L. Williams**

Ms. Williams is based in New York, and she focuses her practice on class actions on behalf of defrauded consumers and investors. Ms. Williams has extensive experience in litigating complex commercial cases.

Ms. Williams is admitted to the bars of several federal courts as well as the state bars of New York and Maryland. Ms. Williams received her juris doctorate from the University of Virginia School of Law in 1986 and her undergraduate degree from Harvard University in 1982.

**Kate J. Stoia**

Ms. Stoia is based in San Francisco from where she litigates securities and consumer class actions. Ms. Stoia previously worked at the law firms of Brobeck Phleger & Harrison LLP and Gibson Dunn & Crutcher LLP. Prior to her work as a civil litigator, Ms. Stoia clerked for the Hon. Charles A. Legge of the Northern District of California.

Ms, Stoia is a member of the state bar of California and several federal courts. Ms. Stoia received her juris doctorate from Boalt Hall School of Law, University of California at Berkeley and her bachelor's degree from Columbia University.

**Lance N. Stott**

Mr. Stott is based in Austin, Texas from where he litigates consumer class actions. Previous and current consumer fraud class actions litigated by Mr. Stott include *Davis v. Toshiba America Consumer Products* for allegedly defective DVD players; *Bennight v. Pioneer Electronics (USA) Inc. et al.* for allegedly defective television sets; *Spencer v. Pioneer Electronics (USA) Inc. et al.* for allegedly defective DVD players; and, *Okland v. Travelocity.com, Inc.*, for deceptive pricing for online hotel reservations.

Mr. Stott is a member of the state bar of Texas. Mr. Stott received his juris doctorate from the University of Texas in 1996 and his bachelor's degree from New College in 1993.