**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**THE SULTZER LAW GROUP**
Jason P. Sultzer
*sultzerj@thesultzerlawgroup.com*
85 Civic Center Plaza, Suite 104
Poughkeepsie, New York 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747

**TYCKO & ZAVAREEI LLP**
Jeffrey D. Kaliel
*jkaliel@tzlegal.com*
2000 L Street, Northwest, Suite 808
Washington, District of Columbia 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

**HALUNEN LAW**
Melissa Wolchansky
*wolchansky@halunenlaw.com*
1650 IDS Center, 80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099

*Court Appointed Class Counsel*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TZIVA RAPOPORT-HECHT, MAGGIE TSAN, and ERICA WILDSTEIN, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SEVENTH GENERATION, INC.,<br><br>Defendant. | Case No. 7:14-cv-09087-KMK<br><br>**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT (ECF NO. 57)** |

**Table of Contents**

I. INTRODUCTION ................................................................................................................ 1

II. THE ELIMINATION OF MANAGEABILITY CONCERNS IN THE CLASS SETTLEMENT CONTEXT DRAMATICALLY ALTERS THE CERTIFICATION ANALYSIS. .................................................................................................................... 2

III. EVEN IN THE CONTEXT OF LITIGATED CLASSES, DIFFERENCES IN STATE UNJUST ENRICHMENT LAW DO NOT POSE AN OBSTACLE TO FINDING PREDOMINANCE. ............................................................................................................ 6

IV. THE *GTA* DECISION IS NOT PERSUASIVE. ................................................................ 9

V. ALTERNATIVELY, THERE IS A CONSTITUTIONAL BASIS FOR THE COURT TO CERTIFY A NATIONWIDE SETTLEMENT CLASS UNDER VERMONT LAW. ......... 11

VI. CONCLUSION ................................................................................................................. 11

# Table of Authorities

**Cases**

*In re Am. Int'l Group Secs. Litig.*,
 689 F.3d 229 (2d Cir. 2012) .................................................................. 3, 4, 9

*Amchem Prods. v. Windsor*,
 521 U.S. 591 (1997) ..................................................................................... 2

*In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Practices Litig.*,
 No. 13-CV-150, 2015 U.S. Dist. LEXIS 133484 (S.D.N.Y. Sept. 30, 2015) ........................ 11

*Bergman v. Spruce Peak Realty, L.L.C.*,
 847 F. Supp. 2d 653 (D. Vt. 2012) ............................................................. 12

*Bridge v. Phx. Bond & Indem. Co.*,
 553 U.S. 639 (2008) ................................................................................... 11

*Brown v. Am. Home Prods. Corp.*, MDL No. 1203, 200 U.S. Dist. LEXIS 12275,
 (E.D. Pa. Aug. 28 2000) ............................................................................. 5

*Cassese v. Wash. Mut., Inc.*,
 255 F.R.D. 89 (E.D.N.Y. 2008) .................................................................. 6

*In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Practices Litig.*, Case No. 12-md-2320-PB,
 2015 U.S. Dist. LEXIS 154602 (D.N.H. Nov. 16, 2015) ............................. 5

*Davis v. J.P. Morgan Chase & Co.*,
 775 F. Supp. 2d 601 (W.D.N.Y. 2011) ..................................................... 3, 4

*Denney v. Jenkens & Gilchrist*,
 230 F.R.D. 317 (S.D.N.Y. 2005) ................................................................ 3

*Dupler v. Costco Wholesale Corp.*,
 705 F. Supp. 2d 231 (E.D.N.Y. 2010) ........................................................ 5

*Ebin v. Kangadis Food Inc.*,
 297 F.R.D. 561 (S.D.N.Y. 2014) ................................................................ 6

*Ersler v. Toshiba Am., Inc.*,
 No. CV-07-2304 (SMG), 2009 U.S. Dist. LEXIS 14374 (E.D.N.Y. Feb. 24, 2009) ......... 2, 10

*In re Global Tel*Link Corp. ICS Litig.*, Case No. 14-cv-5275,
 2017 WL 471571 (D. Ark. Feb. 3, 2017) .................................................... 1, 7

*In re Grand Theft Auto Video Game Consumer Litig.*,
 251 F.R.D. 139 (S.D.N.Y. 2008) ............................................................. 9, 10, 13

*Howerton v. Cargill, Inc.*, Nos. 13-00336 LEK-BMK, 13-00685 LEK-BMK, 14-00218 LEK-BMK, 2014 U.S. Dist. LEXIS 165967 (D. Haw. Nov. 26, 2014) .......................................... 5

*Hughes v. Ester C Co.*,
    317 F.R.D. 333 (E.D.N.Y. 2016) ............................................................................... 9, 10

*In re Initial Pub. Offering Sec. Litig.*,
    226 F.R.D. 186 (S.D.N.Y. 2005) ................................................................................ 3, 4

*In re Lilco Sec. Litig.*,
    111 F.R.D. 663 (E.D.N.Y. 1986) ............................................................................. 12, 13

*In re Lupron(R) Mktg. & Sales Practices Litig.*,
    228 F.R.D. 75 (D. Mass. 2005) ........................................................................................ 3

*McLaughlin v. Am. Tobacco Co.*,
    522 F.3d 215 (2d Cir. 2008) ..................................................................................... 10, 11

*In re Mercedes-Benz Tele Aid Contract Litig.*,
    257 F.R.D. 46 (D.N.J. 2009) ...................................................................................... 7, 8-9

*In re Mex. Money Transfer Litig.*,
    267 F.3d 743 (7th Cir. 2001) ........................................................................................ 4-5

*Mirakay v. Dakota Growers Pasta Co.*,
    Civil Action No. 13-cv-4429, 2014 U.S. Dist. LEXIS 148694 (D.N.J. Oct. 20, 2014) ........... 5

*In re Motor Fuel Temperature Sales Practices Litig.*,
    271 F.R.D. 263 (D. Kan. 2010) ..................................................................................... 10

*In re Nissan Radiator, 10 CV 7493*,
    2013 U.S. Dist. LEXIS 116720 (S.D.N.Y. May 30, 2013) ................................................ 5

*Pecover v. Elec. Arts Inc.*,
    No. C 08-2820 VRW, 2010 U.S. Dist. LEXIS 140632 (N.D. Cal. Dec. 21, 2010) ............... 10

*Phillips Petrol. Co. v. Shutts*,
    472 U.S. 797 (1985) ...................................................................................................... 12

*Powell v. H.E.F. P'ship*,
    793 F. Supp. 91 (D. Vt. 1992) ....................................................................................... 12

*Reynolds v. Lifewatch, Inc.*,
    136 F. Supp. 3d 503 (S.D.N.Y. 2015) ............................................................................. 6

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015) ............................................................................................ 2

*Rodriguez v. It's Just Lunch, Int'l*,
    300 F.R.D. 125 (S.D.N.Y. 2014) ................................................................................. 6, 9

*Simon v. Philip Morris*,
 124 F. Supp. 2d 46 (E.D.N.Y. 2000) ................................................................................... 12

*In re Sony SXRD Rear Projection TV Class Action Litig.*,
 No. 06 Civ. 5173, 2008 U.S. Dist. LEXIS 36093 (S.D.N.Y. May 1, 2008) ............................ 5

*Sullivan v. DB Invs., Inc.*,
 667 F.3d 273 (3d Cir. 2011) ............................................................................................. 3, 4

*Turner v. NFL* (*In re NFL Players' Concussion Injury Litig.*),
 307 F.R.D. 351 (E.D. Pa. 2015) ........................................................................................... 4

*Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*,
 246 F.R.D. 349 (D.D.C. 2007) ............................................................................................. 5

*In re Warfarin Sodium Antitrust Litig.*,
 391 F.3d 516 (3d Cir. 2004) ................................................................................................. 3

*Wershba v. Apple Comput., Inc.*,
 91 Cal. App. 4th 224 (2001) .............................................................................................. 12

*Wilson v. DirectBuy, Inc.*,
 No. CIVIL ACTION NO. 3:09-CV-590 (JCH), 2011 U.S. Dist. LEXIS 51874 (D. Conn. May 16, 2011) ............................................................................................................................ 10

*Ysbrand v. DaimlerChrysler Corp.*,
 81 P.3d 618 (Okla. 2003) .................................................................................................. 12

**Other**

*Newberg on Class Actions* § 4:63 (5th ed.) ................................................................................ 3

## I. INTRODUCTION

At the January 26, 2017, fairness hearing concerning the proposed national class action settlement in this case, the Court requested supplemental briefing on the predominance requirement set forth in Rule 23(b)(3) of the Federal Rules of Civil Procedure. Specifically, the Court asked Plaintiffs' counsel to address how, or whether, the potential applicability of laws from various states could affect its ability to certify a nationwide class. (*See* Transcript of 1/26/17 Hearing ("Tr.") p. 41.) For the reasons explained below, the settlement Class here easily satisfies Rule 23's predominance requirement.

First, because trial manageability concerns are absent when considering class certification in the settlement context, potential variations in state law are much less of an obstacle to nationwide certification than they are in a litigated class certification motion.

Second, even were this a litigated class certification motion, ample authority supports the propriety of certifying a nationwide unjust enrichment class, or, alternatively, certifying a nationwide class using the law of the Defendant's home state, Vermont. Indeed, since the hearing, at least one court has certified a similar nationwide class for unjust enrichment claims, noting that: "[n]o matter which state's elements are used, the pertinent facts as alleged by Plaintiffs, and the evidence they intend to offer, are the same for every putative class member." *In re Global Tel\*Link Corp. ICS Litig.*, Case No. 14-cv-5275, 2017 WL 471571 (D. Ark. Feb. 3, 2017) ("*In re Global*") (certifying nationwide class, over defendant's opposition, based on unjust enrichment claims).

Following the logic of *In re Global* and other cases cited below, Plaintiffs respectfully request the Court affirm its previous certification of the nationwide class and now grant final certification of the class so that the settlement can be consummated and consumers can receive the millions of dollars in settlement benefits.

1

## II. THE ELIMINATION OF MANAGEABILITY CONCERNS IN THE CLASS SETTLEMENT CONTEXT DRAMATICALLY ALTERS THE CERTIFICATION ANALYSIS.

Each of the requirements of Rule 23 must be met in connection with a request for settlement approval, except that "the Court doesn't have to evaluate the manageability of the proceeding should the case go to trial, because that's the whole point of settlement." (Tr. p. 57.) When "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also Ersler v. Toshiba Am., Inc.*, No. CV-07-2304 (SMG), 2009 U.S. Dist. LEXIS 14374, at *13 (E.D.N.Y. Feb. 24, 2009) (explaining that "the concern for manageability that is a central tenant in the certification of a litigation class is removed from the equation" when considering a settlement class). When manageability concerns are removed, predominance is easily satisfied in cases where the defendant has engaged in a common course of conduct, as Defendant has in this case.[1] Indeed, courts are "more inclined to find the predominance test met" in that context, "even when there are differences in applicable state laws." *Ersler*, 2009 U.S. Dist. LEXIS 14374, at *13.

Some courts, and many litigants, have treated the predominance and manageability factors of Rule 23(b)(3) and 23(b)(3)(D) as separate requirements. This is incorrect, as the U.S. Court of Appeals for the Second Circuit confirmed in *In re American International Group Securities Litigation*, where it reversed the denial of certification of a settlement class when the district court committed that exact error, explaining that "[t]he district court also appears to have viewed

---

[1] "Predominance is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015).

manageability and predominance as two independent inquiries under Rule 23(b)(3)." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 242 (2d Cir. 2012) ("*AIG*"). Thus, "although litigants frequently conceive of 'predominance' and 'manageability' as separate requirements of Rule 23(b)(3), they are not." *In re Initial Public Offering Securities Litigation*, 226 F.R.D. 186, 195 n.51 (S.D.N.Y. 2005) ("*In re IPO*"). Instead, "manageability is a *factor* in the court's required findings of predominance and superiority, rather than a separate element of the class certification inquiry." *Id.* (emphasis in original). This is critical because the courts have consistently held that differences in state laws are relevant primarily to the manageability analysis. *See, e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) (approving settlement and noting that state law differences impact manageability concerns); *Davis v. J.P Morgan Chase & Co.*, 775 F. Supp. 2d 601, 609 (W.D.N.Y. 2011) ("[S]tate-law distinctions impact trial manageability[.]" (citation omitted)); *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 335 (S.D.N.Y. 2005) (finding variations in the state laws to be an issue of manageability); *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 92 (D. Mass. 2005) (finding that "differences in the state consumer protection laws" implicate manageability concerns and do not pose an obstacle to certification of a settlement class); *Newberg on Class Actions* § 4:63 (5th ed.) (stating that in class settlements, predominance "recedes in importance. . . . Thus, many courts have held that individualized issues may bar certification for adjudication because of predominance-related manageability concerns but that these same problems do not bar certification for settlement").

When manageability, and thus variations in state law, are removed from the equation by a settlement, concerns about predominance recede. Indeed, "state law variations are largely irrelevant to certification of a settlement class." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 304 (3d Cir. 2011); *see also AIG*, 689 F.3d at 242 (explaining that "the existence of a settlement that

eliminates manageability problems can alter the outcome of the predominance analysis"); *In re IPO*, 226 F.R.D. at 195 n.51 (holding that removal of the manageability issue "alleviates the predominance defect"); *Turner v. NFL (In re NFL Players' Concussion Injury Litig.*), 307 F.R.D. 351, 381 (E.D. Pa. 2015) ("[S]ettlement itself allows common issues to predominate.") (citing *Newberg on Class Actions* § 4:63 (5th ed.)). In *Sullivan v. DB Investments, Inc.*, the Third Circuit surveyed the law on predominance and concluded:

> From our case law, we can distill at least three guideposts that direct the predominance inquiry: first, that commonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members; second, that variations in state law do not necessarily defeat predominance; and ***third, that concerns regarding variations in state law largely dissipate when a court is considering the certification of a settlement class***.

*Sullivan*, 667 F.3d at 297 (emphasis added).

In recognition of the foregoing principles, courts across the country have recognized that "variations in the rights and remedies available to injured class members under the various laws of the fifty states [do] not defeat commonality and predominance" in the context of settlement-only class certification, and have held that therefore "where a defendant's singular conduct gives rise to one cause of action in one state, while providing for a different cause of action in another jurisdiction, the courts may group both claims in a single class action." *Sullivan*, 667 F.3d at 301-02;[2] *see also Davis*, 775 F. Supp. 2d at 609 (recognizing that "variations in the states' laws did not defeat the commonality and predominance requirements in the settlement context because the state-law distinctions impact trial manageability, which is relevant principally with respect to litigation at trial"); *In re Mexico Money Transfer Litig.*, 267 F.3d 743, 746-47 (7th Cir. 2001) (recognizing that while certification of ***litigation*** classes arising under varying state consumer

---

[2] The Second Circuit has cited *Sullivan* with approval. *See, e.g.*, *AIG*, 689 F.3d at 239.

4

fraud statutes might be inappropriate, the same is not true for *settlement* classes where "no one need draw fine lines among state-law theories of relief"); *Brown v. Am. Home Prods. Corp.*, MDL No. 1203, 200 U.S. Dist. LEXIS 12275, at *129-30 (E.D. Pa. Aug. 28, 2000) (explaining that "when taking the settlement into consideration for purposes of determining class certification, individual issues which are normally present . . . become irrelevant, allowing common issues to predominate").

During the hearing, the discussion centered on Plaintiffs' unjust enrichment claims (*see* Tr. p. 41-52), which courts within this Circuit and elsewhere have not hesitated to certify for settlement. *See*, *e.g.*, *In re Nissan Radiator*, 10 CV 7493, 2013 U.S. Dist. LEXIS 116720, at *16 (S.D.N.Y. May 30, 2013); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 235 (E.D.N.Y. 2010); *In re Sony SXRD Rear Projection TV Class Action Litig.*, No. 06 Civ. 5173 2008 U.S. Dist. LEXIS 36093, at *3-4 (S.D.N.Y. May 1, 2008); *see also In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Practices Litig.*, Case No. 12-md-2320-PB, 2015 U.S. Dist. LEXIS 154602, at *6-7 (D.N.H. Nov. 16, 2015); *Howerton v. Cargill, Inc.*, Nos. 13-00336 LEK-BMK, 13-00685 LEK-BMK, 14-00218 LEK-BMK, 2014 U.S. Dist. LEXIS 165967, at *7-8 (D. Haw. Nov. 26, 2014); *Mirakay v. Dakota Growers Pasta Co.*, Civil Action No. 13-cv-4429, 2014 U.S. Dist. LEXIS 148694, at *16-17 (D.N.J. Oct. 20, 2014); *Vista Healthplan v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349, 359 (D.D.C. 2007).

Plaintiffs respectfully submit that the Court should follow the foregoing ample authority. Variations in state law are of little importance in the settlement context, and the Court need go no further in its analysis to determine that predominance is satisfied in this case.

## III. EVEN IN THE CONTEXT OF LITIGATED CLASSES, DIFFERENCES IN STATE UNJUST ENRICHMENT LAW DO NOT POSE AN OBSTACLE TO FINDING PREDOMINANCE.

Even in the litigation context, differences in state laws frequently do not predominate over common issues where the defendant's wrongdoing can be traced to a common practice or misrepresentation(s) that affects all class members. In *Rodriguez v. It's Just Lunch, International*, for example, the court certified the state law fraud claims of a national class, explaining that such claims "can implicate common issues and be litigated collectively, despite the existence of state law variations, so long as the elements of the claim . . . are substantially similar and any differences fall into a limited number of predictable patterns which can be readily handled by special interrogatories or special verdict forms." 300 F.R.D. 125, 140-41 (S.D.N.Y. 2014); *see also Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 518 (S.D.N.Y. 2015) (noting that where common conduct might establish liability under a number of state laws, predominance might be satisfied); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 569 (S.D.N.Y. 2014) (finding that plaintiffs had satisfied the predominance test for nationwide litigation class despite the need to apply the laws of numerous states, explaining that "because Defendant uniformly misrepresented [its product] to all class members, this action with its standardized misrepresentations established by generalized proof is appropriate for class certification").

Courts have held similarly with respect to unjust enrichment claims, finding that state laws do not vary enough to defeat manageability, even in the context of certifying litigation classes. *See Cassese v. Washington Mutual, Inc.*, 255 F.R.D. 89, 97-98 (E.D.N.Y. 2008) (certifying national class including unjust enrichment claims, and explaining that "variations present in state common law of contracts, unjust enrichment, and fraud, as well as potential variations among state consumer protection laws do not preclude certification"). Indeed, "[w]hile there are minor

variations in the elements of unjust enrichment under the laws of the various states, those differences "are not material and do not create an actual conflict." *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. 2009).

The very recent case of *In re Global Tel*Link Corp. ICS Litigation* is directly on point. In that case, the plaintiff moved for certification of a nationwide class based on each of the states' unjust enrichment claims. The defendant opposed class certification and argued that variations in the unjust enrichment laws of each state defeated class certification. The court rejected the defendant's argument and certified a nationwide class, explaining that:

> Defendant argues that variations from state to state in the elements of unjust enrichment defeat predominance. The Court disagrees, because the critical issue here for purposes of predominance is not whether the elements vary, but rather whether common evidence can be used to satisfy them in a prima facie case. Here, common evidence can suffice, because none of the variances in elements that GTL has pointed to requires individualized inquiry into the unique circumstances of particular class members….No matter which state's elements are used, the pertinent facts as alleged by Plaintiffs, and the evidence they intend to offer, are the same for every putative class member. . .

*In re Global*, 2017 WL 471571, at *8.

If plaintiffs were to litigate their unjust enrichment claim in this case, state unjust enrichment laws could easily be grouped into four categories:

1. States in which the elements of an unjust enrichment claim are: (1) a benefit conferred on the defendant; (2) at the plaintiff's expense; (3) under circumstances that would make retention of the benefit unjust. Twelve states are in this category: California, Colorado, Connecticut, Georgia, Illinois, Iowa, Kansas, Michigan, New Mexico, New York, Pennsylvania, and Washington.

2. States that use five elements: (1) an enrichment; (2) an economic detriment or loss; (3) a connection between the enrichment and the impoverishment; (4) an absence of justification for the enrichment and the impoverishment; (5) the absence of a legal remedy. Four states are in this category: Arizona, Delaware, Louisiana and North Dakota.

3. States that add an "appreciation" element, or that the defendant understood they were receiving a benefit to the factors in No. 2, above. Twenty-two states can be grouped in this category: Alabama, Alaska, Florida, Idaho, Kansas, Maine, Maryland, Missouri, New

7

Mexico, North Carolina, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Wisconsin and Wyoming. Alabama and Texas require intentional conduct such as fraud.

4. States that do not clearly delineate the elements of the claim and tend to use the Restatement elements from No. 1, above. States in this category are: Arkansas, Georgia, Hawaii, Kentucky, Massachusetts, Minnesota, Mississippi, Montana, Oklahoma, Vermont, Washington, and West Virginia.

As an initial matter, claims in forty-five states could be grouped together for disposition on common evidence. The common questions would be: (1) whether a benefit was conferred on defendant; (2) whether it was at plaintiffs' expense; (3) whether defendant's conduct was intentional; and (4) whether it would be unjust for defendant to retain the benefit. Answers to those questions would be reached with a single evaluation of Defendant's conduct based on common evidence, which would dispose of the claims in groups one and three in their entirety.

With respect to the four states in group four, a single additional question would have to be asked; *i.e.*, whether a legal remedy was available. This answer too would be based on common evidence and would dispose of all claims in those four states.

In sum, three subclasses could be created (if necessary), with one asking only a single additional question, which would probably be answered as a matter of law and would not reach a jury. Accordingly, an unjust enrichment claim would not be unmanageable if the case proceeded in litigation. Indeed:

> In ***all states***, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched. At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff. The focus of the inquiry is the same in each state. Application of another variation of the cause of action than that subscribed to by a state will not frustrate or infringe upon that state's interests. In other words, ***regardless of which state's unjust enrichment elements are applied, the result is the same***. Thus, there is no real conflict surrounding the elements of the cause of action.

*In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. at 58 (citation omitted) (emphasis

added).

Where courts have declined to certify unjust enrichment claims for a national class, it is virtually always because the parties have made no attempt to show how the differences in state laws might be managed in litigation. *See, e.g.*, *Hughes v. Ester C Co.*, 317 F.R.D. 333, 353 (E.D.N.Y. 2016) ("Without explanation, Plaintiffs indiscriminately cite cases finding that the unjust enrichment laws in relevant States do not vary. But this selective and incomplete citation of cases is insufficient to meet their burden."); *Rodriguez*, 300 F.R.D. at 143 (certifying fraud claim but declining to certify unjust enrichment claim where plaintiff had not made "*any*" argument as to how differences in the States' unjust enrichment laws would be managed) (emphasis in original). No such issue is present here. Thus, predominance has been established, certification is warranted, and final approval is justified.

## IV. THE *GTA* DECISION IS NOT PERSUASIVE.

At the hearing, the Court inquired as to the potential application of *In re Grand Theft Auto Video Game Consumer Litigation*, 251 F.R.D. 139 (S.D.N.Y. 2008) ("*GTA*"). (*See* Tr. P. 42.) That case is inapposite for several reasons. First, in addition to being factually distinguishable, the court in *GTA* treated the manageability and predominance analyses as distinct, which constitutes the same legal error the Second Circuit reversed in *AIG* (689 F.3d at 242). While the court in *GTA* acknowledged that manageability was not a consideration in its decision because the case was settling, it went on to analyze predominance as if it were an entirely separate issue, stating, "nevertheless, the predominance inquiry—as distinguished from the trial manageability inquiry—should not be watered down merely because the parties have entered a proposed settlement." *GTA*, 251 F.R.D. at 159. The Court then undertook a thorough review of differences in state law claims and concluded that those differences predominated over common issues. *Id*. at 159-62.

Second, courts have criticized *GTA*'s failure to distinguish between a litigation class and a

9

settlement class in its predominance inquiry:

> As noted in a recent Southern District decision, courts are divided over whether "differences in the underlying state laws applicable to individual putative class members' consumer-protection claims preclude a finding of predominance." *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 158 (S.D.N.Y. 2008) . . . . ***When considering certification for purposes of settlement, though, courts are more inclined to find the predominance test met, even when there are differences in applicable state laws.***

*Ersler*, 2009 U.S. Dist. LEXIS 14374, at *12-13 (emphasis added); *see also Pecover v. Elec. Arts Inc.*, No. C 08-2820 VRW, 2010 U.S. Dist. LEXIS 140632, at *54 (N.D. Cal. Dec. 21, 2010) (explicitly rejecting *GTA*'s analysis and certifying litigation class).

Third, although *GTA* has been cited by some courts denying certification of ***litigated*** classes where plaintiffs have failed to address potential differences in state laws,[3] it has never been cited in support of a lack of predominance in the denial of a ***settlement*** class. *Cf. Wilson v. DirectBuy, Inc.*, No. 3:09-CV-590 (JCH), 2011 U.S. Dist. LEXIS 51874, at *43 (D. Conn. May 16, 2011) (rejecting settlement as not fair, reasonable and adequate without discussing class certification, and citing GTA for the proposition that state consumer protections statutes may not be suitable for national ***litigation*** class).

Finally, the *GTA* decision relied heavily on the Second Circuit's decision in *McLaughlin v. American Tobacco*, 522 F.3d 215 (2d Cir. 2008). In *McLaughlin*, the Second Circuit reversed the certification of a huge, sprawling class of purchasers of light cigarettes seeking recovery under the federal RICO statute. There are three reasons why the *McLaughlin* decision is inapplicable here.

First, *McLaughlin* involved a ***litigation*** class of light cigarette purchasers pursing an $800

---

[3] *See, e.g.*, *Hughes*, 317 F.R.D. at 352; *In re Motor Fuel Temperature Sales Practices Litig.*, 271 F.R.D. 263, 283 (D. Kan. 2010).

billion RICO claim. The profound complexity of that case implicated manageability and predominance concerns that simply are not present here. Second, *McLaughlin* involved implicit representations over time, not the type of explicit and uniform "natural" representations that are at issue here, and thus presented far more individualized reliance issues that, again, do not exist here.[4] *See, e.g.*, *In re Avon Anti-Aging Skincare Creams and Prods. Mktg. & Sales Practices Litigation*, No. 13-CV-150, 2015 U.S. Dist. LEXIS 133484 (S.D.N.Y. Sept. 30, 2015) (denying certification where misrepresentations were not common to the class and explicitly distinguishing that case from cases with "a uniform product label" such as the one at issue here). And third, at that time the elements of a RICO claim differed from those of state consumer protection statutes. Specifically, when *McLaughlin* was decided, plaintiffs in RICO cases were obliged to show individualized reliance.[5] Given the critical differences between the facts presented in *GTA* and those presented here, and in light of the fact that the *GTA* court's reasoning has not been adopted by other courts in the context of certifying settlement classes, it is inapposite and it neither provides insight into the Court's decision, nor stands as a barrier to certifying a nationwide settlement class.

V. **ALTERNATIVELY, THERE IS A CONSTITUTIONAL BASIS FOR THE COURT TO CERTIFY A NATIONWIDE SETTLEMENT CLASS UNDER VERMONT LAW.**

At the hearing, the Court and the parties also discussed the possibility of applying the law of a single state to the claims of the national class. (Tr. p. 53.) In 1985, Justice Rehnquist wrote in

---

[4] In *McLaughlin*, the Second Circuit noted that individuals may have purchased light cigarettes for many different reasons other than their alleged health benefits, such as "if a Lights smoker was unaware of that representation, preferred the taste of Lights, or chose Lights as an expression of personal style." *McLaughlin*, 522 F.3d at 223.
[5] On June 9, 2008 – between the Second Circuit's decision in *McLaughlin* on April 3, 2008 and the *GTA* decision on July 30, 2008 – the United States Supreme Court eliminated the primary substantive rationale for McLaughlin by unanimously holding that a RICO plaintiff need not show that he or she relied on the alleged misrepresentations. *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008).

that "for a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary or fundamentally unfair." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985). Thereafter, courts have certified nationwide classes applying the law of the defendant's residence. *See, e.g.*, *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 243 (Cal. Ct. App. 2001) (holding that California law could be applied extraterritorially "to non-California members of a nationwide class where the defendant is a California corporation and some or all of the challenged conduct emanates from California"); *In re LILCO Securities Litigation*, 111 F.R.D. 663, 670 (E.D.N.Y. 1986) ("*Shutts* does not require us to apply the law of each state in which the plaintiffs reside nor does it prohibit the application of one state's law to all Plaintiffs, regardless of residence"); *Ysbrand v. DaimlerChrysler*, 81 P.3d 618, 625-26 (Okla. 2003) (Oklahoma Supreme Court applied warranty law of car manufacturer defendant's Michigan residence to claims of national class, noting "Michigan is the only state where conduct relevant to all class members occurred"); *Simon v. Philip Morris, Inc.*, 124 F.Supp.2d 46, 78 (E.D.N.Y. 2000) (law of Philip Morris' home state of New York applied to national class).

In this case, Defendant has its principal place of business in Vermont,[6] a significant number of its customers are Vermont residents, and the uniform misrepresentations forming the basis of each class member's claims emanated from Vermont. Because these connections constitute a sufficient "aggregation of contacts" under *Phillips* to permit applying Vermont law to the claims

---

[6] It is also important to note that Vermont law itself does not prohibit non-residents from availing themselves of its protections where the defendant is in Vermont. *See Bergman v. Spruce Peak Realty, LLC*, 847 F. Supp. 2d 653, 671 (D. Vt. 2012); *Powell v. H.E.F. Partnership*, 793 F. Supp. 91, 96 (D. Vt. 1992).

of nonresident plaintiffs, it is constitutionally permissible to do.[7]

**VI.    CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully apply to this Court for entry of an Order: (i) confirming certification of the Settlement Class and continuing the appointment of Tziva Rapoport-Hecht, Maggie Tsan, and Erica Wildstein as representatives of the Settlement Class and Reese LLP, Tycko & Zavareei LLP, Halunen Law, and The Sultzer Law Group as Class Counsel; (ii) granting Final Approval of the Settlement; and (iii) entering the Order and Final Judgment in this Action.


Date: February 17, 2017

Respectfully submitted,

**REESE LLP**
By:  */s/ Michael R. Reese*
Michael R. Reese
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

**THE SULTZER LAW GROUP**
Jason P. Sultzer
*sultzerj@thesultzerlawgroup.com*
85 Civic Center Plaza, Suite 104
Poughkeepsie, New York 12601
Telephone: (845) 483-7100

**TYCKO & ZAVAREEI LLP**
Jeffrey D. Kaliel
*jkaliel@tzlegal.com*
2000 L Street, Northwest, Suite 808
Washington, District of Columbia 20036
Telephone: (202) 973-0900

---

[7] The usual obstacle to applying the law of a single state is the conflict/choice of law rules of the forum. *See GTA*, 251 F.R.D. at 147-49, *In re Lilico Sec. Litig.*, 111 F.R.D. at 670 (explaining that even "if New York choice of law rules require us to apply the law of all fifty states, this does not render the trial *per se* unmanageable").

                    **HALUNEN LAW**
                    Melissa Wolchansky
                    *wolchansky@halunenlaw.com*
                    80 South Eighth Street
                    Minneapolis, Minnesota 55402
                    Telephone: (612) 605-4098

                    *Court Appoint Class Counsel*

## **CERTIFICATE OF SERVICE**

      I, Michael R. Reese, hereby certify that on February 17, 2017, I caused an electronic copy of the foregoing document to be served on all counsel of record via the Court's CM/ECF system.

                                  */s/ Michael R. Reese*
                                  Michael R. Reese